## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**LAFAYETTE DESHAWN UPSHAW,**

      Petitioner,                      Case No. 2:20-cv-12560
                                            Hon. Linda V. Parker

v.

**O'BELL WINN,**

      Respondent.
_____/

## PETITIONER LAFAYETTE DESHAWN UPSHAW'S MEMORANDUM OF LAW IN SUPPORT OF PETITION UNDER 28 U.S.C. 2254 FOR A WRIT OF HABEAS CORPUS

# TABLE OF CONTENTS

Statement of Facts ................................................................................................ 1

Statement Regarding Timeliness ...................................................................... 7

Statement Regarding Exhaustion ..................................................................... 9

Statement Regarding Procedural Default ..................................................... 11

Statement Regarding Standard of Review .................................................... 19

Argument ............................................................................................................ 24

## I.

**TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO INVESTIGATE POTENTIAL ALIBLI WITNESSES AND FAILING TO FILE AN ALIBI NOTICE, EVEN THOUGH THIS WOULD HAVE BEEN CONSISTENT WITH HIS OWN DEFENSE** ................................ 24

## II.

**THE TRIAL COURT DENIED PETITIONER'S MOTION FOR A BRIEF ADJOURNMENT SO THAT NEWLY-RETAINED COUNSEL COULD BECOME PREPARED FOR TRIAL, IN VIOLATION OF DUE PROCESS** ................................................................................. 39

## III.

**THE PROSECUTOR DISMISSED AFRICAN-AMERICAN POTENTIAL JURORS IN A DISCRIMINATORY MANNER, IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE CONSTITUTION** .......................... 45

A. The first *Batson* factor: Petitioner established a prima facie case of discrimination ............................................................................................ 51

B. The second *Batson* factor: The prosecutor failed to give a race-neutral explanation for all of the dismissed black jurors .................................... 55

C. The third *Batson* factor: The prosecutor engaged in intentional discrimination ........................................................................................57

**IV.**

**THE TRIAL COURT FOUND FACTS THAT WERE NOT FOUND BY THE JURY TO SCORE OFFENSE VARIABLE 14, WHICH INCREASED THE MANDATORY MINIMUM SENTENCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS** ...............................................................68

**V.**

**APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO REQUEST A "*CROSBY* REMAND" AS THE REMEDY FOR HIS CLAIM THAT THE TRIAL COURT FOUND FACTS TO SCORE OV 14 TO INCREASE PETITIONER'S MANDATORY MINIMUM SENTENCE** ....72

**VI.**

**THE TRIAL COURT FOUND FACTS THAT WERE NOT FOUND BY THE JURY TO SCORE OFFENSE VARIABLES 1, 4, AND 9, WHICH INCREASED THE MANDATORY MINIMUM SENTENCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS, AND APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM ON DIRECT APPEAL** ......................................................77

A. Judicial factfinding scored OV 1 at 25 points, increasing the mandatory minimum sentencing guidelines range ..................................79

B. Judicial factfinding scored OV 4 at 10 points, increasing the mandatory minimum sentencing guidelines range ..................................82

C. Judicial factfinding scored OV 9 at 10 points, increasing the mandatory minimum sentencing guidelines range ..................................83

D. Appellate counsel was constitutionally ineffective for failing to raise this claim on appeal.................................................................................84

E. The state court's ruling on this claim is contrary to or involves an unreasonable application of clearly-established Supreme Court precedent under 28 U.S.C. § 2254(d)(1)..................................................................86

**VII.**

**TRIAL AND APPELLATE COUNSEL WERE CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO ARGUE THAT PRIOR RECORD VARIABLE 5 WAS MISSCORED**..........................................................................88

Relief Requested ..........................................................................................98

# INDEX OF AUTHORITIES

## CASES

*Abdul-Kabir v. Quarterman*, 550 U.S. 233, 127 S.Ct. 1654, 167 L.Ed.2d 585 (2007) ......................................................................22

*Abela v. Martin,* 348 F.3d 164 (6th Cir. 2003) ..............................................7

*Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 134 (2013) ...........................................................*passim*

*Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) ......................9

*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)............*passim*

*Bigelow v. Haviland*, 576 F.3d 284 (6th Cir. 2009) .....................................37

*Bigelow v. Williams*, 367 F.3d 562 (6th Cir. 2004)(.....................................25

*Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987) ......................................35

*Brumfield v. Cain*, 576 U.S. 305, 135 S.Ct. 2269, 192 L.Ed.2d 356 (2015)...21, 22, 94

*Buck v Davis*, 576 U.S. 305; 137 S.Ct. 759, 776; 197 L.Ed.2d 1 (2017) ....................35

*Caldwell v. Lewis*, 414 F. App'x 809 (6th Cir. 2011).....................................36

*Caldwell v. Maloney*, 159 F.3d 639 (1st Cir. 1998) .....................................65

*Clinkscale v. Carter*, 375 F.3d 430 (6th Cir. 2004)........................................27, 29, 35

*Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) .......12

*Davila v. Davis*, ___ U.S. ___; 137 S.Ct. 2058; 197 L.Ed.2d 1 (2017) .....................89

*English v. Romanowski*, 602 F.3d 714 (6th Cir. 2010).................................35

*Gentry v. Deuth*, 381 F.Supp.2d 634 (W.D. Ky. 2005)................................59

*Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010)...................................11, 12, 14, 17

*Haliym v. Mitchell*, 492 F.3d 480 (6th Cir. 2007) ......................................................25

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).......19, 20

*Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ...................13

*Henderson v. Palmer*, 730 F.3d 554 (6th Cir. 2013) ...................................................16

*Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859,
          114 L.Ed.2d 395 (1991) ...............................................................................45, 57

*Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 213, 95 L.Ed.2d 724 (1987)...............58

*Hinton v. Alabama*, 571 U.S. 263; 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014)...........73, 90

*Holbrook v. Curtin*, 833 F.3d 612 (6th Cir. 2016).......................................................7

*Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014) ....................................................19, 20

*Johnson v. California*, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005)...52, 60

*Johnson v. Williams*, 568 U.S. 289, 133 S.Ct. 1088,
          185 L.Ed.2d 105 (2013)................................................................19, 20, 22, 70

*Jones v. Barnes*, 463 U.S. 745; 103 S.Ct. 3308; 77 L.Ed.2d 987 (1983)...................88

*Kimmelman v. Morrison*, 477 U.S. 365; 106 S.Ct. 2574;
          91 L.Ed.2d 305 (1986)...............................................................................73, 90

*Lafayette Deshawn Upshaw v. State of Michigan*, U.S. Sup. Ct. No. 17-5215.........4, 8

*Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012)................22

*Lancaster v. Adams*, 324 F.3d 423 (6th Cir. 2003) ............................................*passim*

*Landrum v. Mitchell*, 625 F.3d 905 (6th Cir. 2010) ....................................................41

*Lawrence v. Florida,* 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2006)............7

*McCurdy v. Montgomery County*, 240 F.3d 512 (6th Cir. 2001) ...............................58

*McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005) ................................................66

*McWilliams v. Dunn*, ___ U.S. ___, 137 S.Ct. 1790, 198 L.Ed.2d 341 (2017) ..........22

*Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)......*passim*

*Missouri v. Frye*, 566 U.S. 134, 132 S.Ct. 1399, 1882 L.Ed.2d 398 (2012)..............93

*Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610; 75 L.Ed.2d 610 (1983)................41, 44

*Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) ...............12

*O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 172, 144 L.Ed.2d 1 (1999) ..............9

*Panetti v. Quarterman*, 561 U.S. 930, 127 S.Ct. 2842,
     168 L.Ed.2d 662 (2007).................................................................20, 22, 31, 34

*Pellegrino v. Ampco System Parking*, 486 Mich. 330, 785 N.W.2d 45 (2010) ..........58

*Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001)...................22

*People v. Anderson*, 389 Mich. 155; 205 NW2d 461 (1973) ...............................35, 36

*People v. Barnes*, 502 Mich. 265, 917 N.W.2d 577 ..............................................69, 78

*People v Francisco*, 474 Mich 82; 177 NW2d 44 (2006) ..........................................93

*People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 325195 ..................*passim*

*People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 349127 .....................5, 17

*People v. Lafayette Deshawn Upshaw*, Mich. Sup. Ct. No. 160230 ..................5, 8, 17

*People v. Lafayette Deshawn Upshaw*, Wayne Cir. Ct. No. 14-006199-01-FC ...1, 5, 8

*Peoples v. Lafler*, 734 F.3d 503 (6th Cir. 2013) ....................................................15, 16

*People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015) ...........................*passim*

*People v. Maben*, 313 Mich. App. 545; 884 N.W.2d 314 (2015) ..............................89

*Porter v. McCollum*, 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) ..............22

*Pouncy v. Palmer*, 846 F.3d 144 (6th Cir. 2017).........................................................21

*Powell v. Collins*, 332 F.3d 376 (6th Cir. 2003)..........................................................43

*Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)..................45

*Ramonez v. Berghuis*, 490 F.3d 482 (6th Cir. 2007) .................................29, 30, 34, 37

*Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018) ...............................................*passim*

*Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) .........24

*Rompilla v. Beard*, 545 U.S. 374, 125 S Ct 2456,
        162 L Ed 2d 259 (2005)................................................................22, 25, 26, 91

*Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) ...............................................59

*Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994) .....................................................................9

*Sims v. Berghuis*, 494 F.Supp.2d 575 (E.D. Mich. 2007)...........................................51

*Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) ......72, 84, 88

*Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) .....56, 59

*Stewart v. Wolfenbarger*, 468 F.3d 338 (6th Cir. 2006).................................26, 29, 36

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052,
        80 L.Ed.2d 674 (1984).......................................................................*passim*

*Thaler v. Haynes*, 559 U.S. 43, 130 S.Ct. 1171, (2010).............................................20

*Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)............53

*Towns v. Smith*, 395 F.3d 251 (6th Cir. 2005) ............................................................ 35

*Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) ..................... 41

*United States v. Cecil*, 615 F.3d 678 (6th Cir. 2010) ................................................... 58

*United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005) ......................... 5, 72, 73, 75, 85

*United States v. Kimbrel*, 532 F.3d 461 (6th Cir. 2008) ........................................ 51, 58

*United States v. Mahan*, 190 F.3d 416 (6th Cir. 1999) ................................................ 63

*United States v. McAllister*, 693 F.3d 572 (6th Cir. 2012) .......................................... 67

*United States v. Murillo*, No. 07-20417; 2011 U.S. Dist. LEXIS 122541, (E.D. Mich. Oct. 24, 2011) ......................................................................... 35, 37

*United States v. Torres-Ramos*, 536 F.3d 542 (6th Cir. 2008) ............................... 58, 61

*United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) .... 35, 36

*Walker v. Martin*, 562 U.S. 307, 131 S.Ct. 1120, 179 L.Ed.2d 62 (2011) ................. 11

*Ward v. Wolfenbarger*, 323 F.Supp.2d 818 (E.D. Mich. 2004) .................................. 59

*Whiting v. Burt*, 395 F.3d 602 (6th Cir. 2003) .............................................................. 9

*Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) .... 22, 25, 91

*Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ........ 20, 22

*Wilson v. Cowen*, 578 F.2d 166 (6th Cir. 1978) .......................................................... 35

*Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 175 L.Ed.2d 1003 (2010) ..................... 21

*Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ...... 11, 12

**STATUTES**

28 U.S.C. § 2244(d) ..........................................................................................7, 19

28 U.S.C. § 2244(d)(1)(A) ........................................................................................7

28 U.S.C. § 2244(d)(2) .............................................................................................7

28 U.S.C. § 2254(b) .............................................................................................9, 10

28 U.S.C. § 2254(c) .............................................................................................9, 10

28 U.S.C. § 2254(d) ....................................................................23, 25, 26, 34, 44

28 U.S.C. § 2254(d)(1) .....................................................................................*passim*

28 U.S.C. § 2254(d)(2) ...........................................................................21, 33, 97

Mich. Comp. Laws § 750.226........................................................................................1

Mich. Comp. Laws § 750.227b ...............................................................................1, 97

Mich. Comp. Laws § 750.529........................................................................................1, 80

Mich. Comp. Laws § 750.530(1) ...............................................................................79

Mich. Comp. Laws § 768.20(1) ...............................................................................29

Mich. Comp. Laws § 777.31(1)(a) ...........................................................................79

Mich. Comp. Laws § 777.31(1)(c) ...........................................................................79

Mich. Comp. Laws § 777.31(1)(e) ...........................................................................80

Mich. Comp. Laws § 777.34(1)(A) ...........................................................................82

Mich. Comp. Laws § 777.39(1)(c) ...........................................................................83

Mich. Comp. Laws § 777.44........................................................................................69

Mich. Comp. Laws § 777.53(1)(b) ...........................................................................97

Mich. Comp. Laws § 777.53(2)....................................................................97

Mich. Comp. Laws § 777.55(1)....................................................................89

Mich. Comp. Laws § 777.55(1)(d)...............................................................89

Mich. Comp. Laws § 777.55(1)(e)................................................................89

Mich. Comp. Laws § 777.55(2)(a) ..........................................................89, 90

Mich. Comp. Laws § 777.62.................................................................*passim*

## COURT RULES

MCR 2.119(B) ...............................................................................................32

Mich. Ct. Rule 2.119(B)(1)(b)................................................................32, 33

Mich. Ct. Rule 6.500....................................................................................93

MCR 6.501 *et seq.* .........................................................................................5

Mich. Ct. Rule 6.504(B)(1)..........................................................................14

Mich. Ct. Rule 6.504(B)(2)....................................................................14, 16

Mich. Ct. Rule 6.508....................................................................................16

Mich. Ct. Rule 6.508(D)(2) .........................................................................15

Mich. Ct. Rule 6.508(D)(3) ......................................................13, 14, 15, 16

Mich. Ct. Rule 7.212(C)(8)....................................................................12, 73

## OTHER

Brooke, Whisonant, Otterson, *The Tyranny of the Eyewitness*,
    28 Law and Psychol. Rev. (Spring 2004)........................................35
Gorpha, *Showing Prisoners to Witnesses for Identification*,
    1 Am J. Police Sci. (1930) ...............................................................36

Scheck, Nefeld, Dwyer, *Actual Innocence* (Doubleday, 2000)...................................36

## STATEMENT OF FACTS

On October 16, 2014, Petitioner Lafayette Deshawn Upshaw was convicted by a jury of armed robbery, Mich. Comp. Laws § 750.529, carrying a dangerous weapon with unlawful intent, Mich. Comp. Laws § 750.226, and felony-firearm, Mich. Comp. Laws § 750.227b, before Judge Michael J. Callahan of the Wayne County Circuit Court. *People v. Lafayette Deshawn Upshaw*, Wayne Cir. Ct. No. 14-006199-01-FC.

The jury acquitted Petitioner of the charges of assault with intent to murder and assault with intent to do great bodily harm less than murder.

On November 14, 2014, Petitioner was sentenced for the above convictions to imprisonment for 18 to 40 years concurrent to 1 to 5 years, consecutive to 2 years, respectively.

Petitioner is currently serving the above prison sentences in the custody of Respondent O.T. Winn, Warden of Saginaw Correctional Facility at 9625 Pierce Road, Freeland, Michigan, 48623.

The Michigan Court of Appeals found the facts as follows, which are presumed correct on habeas review. *People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 325195 (May 19, 2016), slip op. 1-2.

This case stems from the armed robbery of a gas station. In that business establishment, the cashier's work station was enclosed by a wall that had bullet proof glass built into it and a door, which the cashier could utilize to access the customer area of the gas station. [Codefendant Miles] Walker entered the gas station around 3:30 a.m. on May 28, 2014, and asked the cashier for help locating the coffee machine. The cashier testified that Walker was behaving strangely and that he did not go straight to the coffee machine when she pointed to its location; instead, Walker circled around some coolers and then made his way to the coffee machine. According to the cashier, Walker then just stood at the coffee machine, so the cashier opened her access door, stepped out into the customer area, and asked Walker if he needed assistance. Walker stood there silently, and the cashier explained to him how to use the coffee machine. She then went back to her work station, closing and locking the access door behind her.

The cashier testified that two women were also in the gas station at the time and that one of them came up to the counter, as Walker remained at the coffee machine. The cashier next heard a man's voice demanding money. The man, later identified as [Petitioner] Upshaw, robbed the female customer, who proceeded to run and hide behind some shelving. Upshaw then turned his attention to the cashier, yelling at her to give him the money from the cash register, but she did not comply. During the next few moments, Upshaw discharged his firearm six times in the direction of the cashier and the enclosure and tried to knock and kick open the access door. The cashier was shielded by the bullet proof glass, and Upshaw was unsuccessful in his attempt to break into the cashier's work station. The cashier noticed that during this intense altercation, Walker remained standing at the coffee machine. She further observed that when Upshaw pointed his gun in Walker's general direction, Walker did not run. The cashier testified that Walker shouted at her to open the access door, indicating that the cashier should

2

do so in order to simply end the situation and get Upshaw out of the gas station. The cashier, however, stood her ground and did not comply. Upshaw gave up and ran out of the gas station. Walker then ran up to the counter, told the cashier that she needed to call the police, and then fled in the same direction as the shooter.

A few hours later, Walker and Upshaw were arrested in the process of committing a home invasion at a residence in Detroit. The pair were caught as they exited separate windows of the house. Walker and Upshaw had attempted to steal several items of jewelry. The cashier later identified both Walker and Upshaw in separate photographic lineups, indicating that Walker had been the man standing at the coffee machine and that Upshaw had been the person who brandished and discharged the firearm in the gas station. The gas station's surveillance cameras produced footage of the armed robbery, which was displayed to the jury. Defendants were charged with the armed robbery and related crimes, but were not charged in these proceedings with the home invasion offense. Evidence of defendants' participation in the home invasion, however, was presented at trial. At the trial, Walker's defense was that he had merely been present at the gas station during the armed robbery and thus was not guilty as an aider and abettor, while Upshaw's defense challenged the evidence placing him at the gas station during the armed robbery.

On December 17, 2014, Petitioner filed a timely claim of appeal and raised the following claims in the Michigan Court of Appeals: (1) The trial court abused its discretion in granting the prosecutor's request to endorse a key witness (the owner of the house involved in the home invasion) on the second day of trial, (2) the trial court's admission of irrelevant and unfairly prejudicial testimony that Petitioner refused to participate in a live lineup violated Petitioner's right to a fair

trial, in violation of due process, (3) trial counsel was constitutionally ineffective for failing to investigate potential alibi witnesses, failing to file an alibi notice, and failing to present the alibi witnesses, which would have been consistent with counsel's theory of misidentification, (4) the trial court abused its discretion by denying Petitioner's request for a brief adjournment to allow newly-retained defense counsel to become prepared, (5) the prosecutor exercised peremptory challenges to dismiss African-American potential jurors, in violation of the Equal Protection Clause of the Fourteenth Amendment, and (6) the trial court found a fact not found by the jury, that Petitioner was a leader in a multiple-offender situation, which was used to score Offense Variable 14 at 10 points, resulting both in a sentence based on inaccurate information and an increase in the mandatory minimum sentencing guidelines range, in violation of the Sixth Amendment.

On May 19, 2016, the Michigan Court of Appeals affirmed the convictions and sentences. *People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 325195.

On April 4, 2017, the Michigan Supreme Court denied leave to appeal. *People v. Lafayette Deshawn Upshaw*, Mich. Sup. Ct. No. 154101.

On November 6, 2017, the United States Supreme Court denied certiorari. *Lafayette Deshawn Upshaw v. State of Michigan*, U.S. Sup. Ct. No. 17-5215.

On July 10, 2018, Petitioner filed a pro se motion for relief from judgment under Mich. Ct. Rule 6.501 *et seq.* with the Wayne County Circuit Court, raising the following claims: (1) Trial counsel was constitutionally ineffective for failing to object to the scoring of Prior Record Variable 5 and appellate counsel was constitutionally ineffective for failing to raise this claim, (2) appellate counsel was constitutionally ineffective for failing to file a motion to remand for a "*Crosby*" hearing, and (3) the trial court scored Offense Variables 1, 4, and 9 based on facts that were not admitted by Petitioner or found by the jury, which increased his mandatory minimum sentencing guidelines range, in violation of the Sixth Amendment, and appellate counsel was constitutionally ineffective for failing to raise this claim.

On November 27, 2018, the Wayne County Circuit Court denied the motion for relief from judgment. *People v. Lafayette Deshawn Upshaw*, Wayne Cir. Ct. No. 14-006199-01-FC.

The Michigan Court of Appeals and Supreme Court denied leave to appeal from that decision. *People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 349127 (July 22, 2019); *People v. Lafayette Deshawn Upshaw*, Mich. Sup. Ct. No. 160230 (May 26, 2020).

Petitioner has filed no other appeals, motions, or petitions, state or federal, challenging the convictions or sentences being challenged in this case.

Petitioner now seeks habeas relief. Additional relevant facts are set forth below.

## STATEMENT REGARDING TIMELINESS

Petitioner had one year to file his federal habeas corpus petition. 28 U.S.C. § 2244(d). The one-year period started on "the latest of" the four triggering events listed in Section 2244(d)(1)(A)-(D). In this case, the latest of those events is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A).

Direct review concludes when the United States Supreme Court denies certiorari. *Abela v. Martin*, 348 F.3d 164, 172-173 (6th Cir. 2003)(*en banc*) overruled on other grounds by *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2006). If the habeas petitioner did not file a petition for certiorari, then the one-year period starts on "the expiration of the time for seeking such review," which is 90 days after the state's highest court disposed of the case on direct review. *Id.*

The one-year period is tolled (paused) if and when the petitioner properly files a state postconviction petition within the one-year period; it remains tolled until the state's highest court disposes of the postconviction petition. 28 U.S.C. § 2244(d)(2); *Lawrence*, 549 U.S. at 331; *Holbrook v. Curtin*, 833 F.3d 612, n.3 (6th Cir. 2016).

7

In this case, direct review concluded -- and the one-year period began -- when the United States Supreme Court denied certiorari on November 6, 2017. *Lafayette Deshawn Upshaw v. Michigan*, U.S.S.C. No. 17-5215.

Petitioner properly filed a state postconviction petition, a motion for relief from judgment under Mich. Ct. Rule 6.500, on July 10, 2018, which was 246 days after the one-year period began, leaving 119 days on the habeas clock (365 - 246 = 119). *People v. Lafayette Deshawn Upshaw*, Wayne Cir. Ct. No. 14-006199-01-FC.

The state's highest court disposed of the postconviction motion when the Michigan Supreme Court denied leave to appeal on May 26, 2020. *People v. Lafayette Deshawn Upshaw*, M.S.C. No. 160230. Therefore, Petitioner had 119 days from May 26, 2020 to file his habeas petition, that is, until September 22, 2020.

Petitioner filed his habeas petition before September 22, 2020. Therefore, the petition is timely under 28 U.S.C. § 2244(d).

## STATEMENT REGARDING EXHAUSTION

Petitioner has the burden of proving that he has exhausted his state-court remedies with respect to his habeas claims. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); 28 U.S.C. § 2254(b) & (c). To satisfy the exhaustion requirement, a habeas petitioner must "fairly present" each of his federal claims to the state courts through their established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 172, 144 L.Ed.2d 1 (1999). A petitioner fairly presents his federal claims by making clear their factual and federal-law basis. *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). A petitioner may make the federal-law basis of his claims clear by either (1) citing federal cases employing federal constitutional analysis, (2) citing state cases employing federal constitutional analysis, (3) phrasing his claims in terms of federal constitutional law, or (4) alleging facts that are well within the mainstream of federal constitutional law. *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2003).

In this case, Petitioner exhausted all of his habeas claims by presenting the same factual and federal law basis of those claims through at least one of the methods set forth above, through one complete round of the state's established appellate review process.

Specifically, Petitioner raised the same federal-law and factual basis of Habeas Claims I- IV on direct appeal in the Michigan Court of Appeals and the Michigan Supreme Court. And he raised the same federal-law and factual basis of Habeas Claims V - VII in his motion for relief from judgment in the state trial court and on appeal therefrom in both the Michigan Court of Appeals and Michigan Supreme Court.

Therefore, Petitioner has complied with the exhaustion requirement of 28 U.S.C. § 2254(b) & (c).

## STATEMENT REGARDING PROCEDURAL DEFAULT

"A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315, 131 S.Ct. 1120, 179 L.Ed.2d 62 (2011). This is known as the "procedural default" doctrine.

As the Sixth Circuit explained in *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*)(quotation marks omitted),

> A habeas petitioner procedurally defaults a claim if (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state law ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

"We must . . . look to the last reasoned state court opinion to determine the basis for the state court's rejection of [the habeas petitioner's] claim." *Guilmette*, 624 F.3d at 291. "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" *Id.*, at 291-292 (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)). Where "an earlier opinion fairly appears to rest primarily on federal law, we will presume

that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place." *Guilmette*, 624 F.3d at 292 (quoting *Ylst*, 501 U.S. at 803, quoting *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)(internal quotation marks omitted).

"Cause" for failure to comply with a state's procedural rules is established by showing that counsel was constitutionally ineffective for failing to comply with the rule. *Murray v. Carrier*, 477 U.S. 478, 495-496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

In this case, Petitioner raised Habeas Claims I - III on direct appeal and neither the Michigan Supreme Court nor Court of Appeals relied on a state procedural rule, such as the contemporaneous-objection rule, to reject Habeas Claims I - III. Therefore, Habeas Claims I - III are not procedurally barred.

Petitioner also raised Habeas Claim IV on direct appeal. The Michigan Court of Appeals denied relief on Habeas Claim IV (the trial court found facts not found by the jury to score OV 14) by relying on a state procedural rule, *i.e.*, the rule requiring litigants to specify the relief requested in their briefs. *See People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 325195 (May 19, 2016); Mich. Ct. Rule 7.212(C)(8)("The appellant's brief ***must*** contain . . . The relief, stating in a distinct, concluding section the order or judgment requested")(emphasis added).

However, Petitioner can overcome this rule by showing "cause" for his failure to follow the rule in the form of the constitutionally ineffective assistance of appellate counsel in failing to comply with that basic procedural rule. Petitioner has made this showing in Habeas Claim V, below. Therefore, Habeas Claim IV is not procedurally barred.

Petitioner raised Habeas Claims V - VII for the first time in his state postconviction motion for relief from judgment under Mich. Ct. Rule 6.500. Thus, Petitioner failed to comply with the state procedural rule that requires all claims to be raised for the first time on direct appeal. Mich. Ct. Rule 6.508(D)(3). However, the state court did not "clearly and expressly" or "[un]ambiguously" rely on this state procedural rule. *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

The state trial court's Opinion denying Petitioner's motion for relief from judgment proceeds in the following manner. *See* Opinion of Nov 27, 2018. First, it states a history of the case (the convictions and sentences and results on appeal). *Id.*, at 1-2. Then it lists the claims Petitioner raised in his motion for relief from judgment, the first three of which were ineffective-assistance-of-counsel claims, and the fourth was a *Brady* claim. *Id.*, at 2-3. Next, the opinion addresses the merits of the first ineffective-assistance claim, explaining why counsel was not ineffective for failing to object to the scoring of PRV 5. *Id.*, at 3-4. Then the

opinion quotes Mich. Ct. Rule 6.504(B)(1)&(2), which says that a court deciding a motion for relief from judgment must review the record and summarily deny the motion if it "plainly appears" that the defendant is not entitled to relief. Opinion of Nov 27, 2018, p 4. Next, the opinion sets forth the legal standard for assessing an ineffective-assistance claim. *Id.*, at 4-5. Then, the opinion says, "Defendant is not entitled to relief pursuant to MCR 6.504(B)(1)&(2), and fails to establish entitlement to relief pursuant to MCR 6.508(D)." Opinion of Nov 27, 2018, p.5. Compare *Guilmette*, 624 F.3d at 291 (holding that "orders . . . citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits" and therefore do not invoke a state procedural rule).

Immediately following that, the state court's opinion says, "MCR 6.508(D)(3) provides, in pertinent part: . . . [quoting that rule]." Opinion of Nov 27, 2018, p 5. Rule 6.508(D)(3) is a procedural rule, but the opinion never clearly and expressly relies on the rule but, rather, merely quotes it and then, immediately after quoting it, discusses the ***merits*** of another one of Petitioner's claims, as it did earlier in the opinion.

Finally, and immediately after that discussion of the merits, the opinion says, "The balance of Defendant's argument relies heavily upon his entitlement to relief under *Lockridge*, *supra*." Opinion of Nov 27, 2018, p.5. The remainder of the opinion says *Lockridge* does not apply to Petitioner and then that appellate counsel

is not ineffective for failing to raise meritless arguments -- which does not make much sense because appellate counsel did raise the *Lockridge* argument; Petitioner's claim is that appellate counsel did not raise it properly, *i.e.*, did not request the proper relief for the claim, which was why the Court of Appeals denied the claim.

The final sentence of the opinion is: "Therefore, pursuant to MCR 6.508, Defendant's Motion for Relief from Judgment must be *denied*." Opinion of Nov 27, 2018, p.6 (emphasis in original).

In similar circumstances, the Sixth Circuit has held that Michigan trial court opinions denying motions for relief from judgment did not "clearly and expressly" or "unambiguously" invoke the procedural rule of MCR 6.508(D)(3). *See*, *e.g.*, *Peoples v. Lafler*, 734 F.3d 503, 511 (6th Cir. 2013)(holding that the Michigan trial court's citation of 6.508(D)(3) was ambiguous and therefore not an invocation of a procedural rule because the order began by stating the rule of 6.508(D)(2) and (D)(3), and then proceeded to deny the claims under rule (D)(2), which bars claims that were already raised and decided on direct appeal and therefore is not a procedural rule that would bar habeas relief. "In a somewhat inexplicable final paragraph, the order states: 'Defendant was afforded a fair trial and full appeal. Therefore, pursuant to MCR 6.508(D)(3)(b), defendant has failed to establish good cause and actual prejudice to support his claim.' . . . [which] does not make sense

15

given the previous analysis. The trial court could not have simultaneously concluded both that Peoples's claims had already been litigated on appeal *and* that Peoples lost his claims by failing to raise them on direct appeal. . . . At most, the order is ambiguous, and, as we know from *Guilmette*, ambiguous orders do not provide adequate and independent state grounds.")(emphasis in original); *Henderson v. Palmer*, 730 F.3d 554, 562 (6th Cir. 2013)(holding that a Michigan trial court did not clearly and expressly rely on a procedural rule where it did not cite Mich. Ct. Rule 6.508(D)(3) but only cited Mich. Ct. Rule 6.504(B)(2) and "although the trial court stated that the 'Defendant cannot establish cause for failing to present these issues in earlier proceedings,' it proceeded to address the merits of those claims." Thus, "the decision is ambiguous as to whether Henderson's claims were found to be procedurally defaulted or denied on the merits.").

Here, similar to *Peoples*, the state trial court cited both Mich. Ct. Rule 6.508(D)(3) and Mich. Ct. Rule 6.504(B)(2), but it only addressed the merits of the claims under the latter rule and never clearly, expressly, or unambiguously relied on the former (procedural) rule to deny relief. The state trial court merely stated the procedural rule but did not rely on it in any of its reasoning for denying the motion. In its actual reasoning, it only relied on the merits of Petitioner's claims. Indeed, in its concluding sentence, it cited only Rule 6.508, *not* 6.508(D)(3), and as the Sixth Circuit has clearly held, such a citation to the overall rule is not a clear, express, or

16

unambiguous invocation of a state procedural rule because "Rule 6.508(D) has both a procedural and a substantive component, and . . . can refer to a defendant's failure to meet that burden on the merits." *Guilmette*, 624 F.3d at 291.

The orders of the Michigan Court of Appeals and Supreme Court upholding the trial court's orders also failed to clearly and expressly rely on a state procedural rule. The Michigan Court of Appeals said only, "defendant has failed to establish that the trial court erred in denying the motion for relief from judgment", *People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 349127 (July 22, 2019), and the Michigan Supreme Court issued a standard order identical to the one that the Sixth Circuit held in *Guilmette* did not clearly and unambiguously rely on a state procedural rule. *People v. Lafayette Deshawn Upshaw*, Mich. Sup. Ct. No. 160230 (May 26, 2020).

Therefore Habeas Claims V - VII are not procedurally barred.

Assuming, *arguendo*, that the state court did clearly, expressly, and unambiguously rely on a state procedural rule, Petitioner can show cause and prejudice to overcome the rule from the constitutionally ineffective assistance of appellate counsel in failing to raise the claims on direct appeal, which Petitioner shows in the body of Habeas Claims V - VII, below, which Petitioner hereby fully adopts and incorporates by reference.

Therefore Habeas Claims V - VII are not procedurally barred.

In sum, there is no state procedural rule that bars habeas relief on any of Petitioner's claims.

## STATEMENT REGARDING STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA) of

1996, a federal court may not grant habeas relief on a claim

> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceedings. [28
> U.S.C. § 2254(d)]

"The language of 28 U.S.C. § 2254(d) makes it clear that this provision only

applies when a federal claim was 'adjudicated *on the merits* in State court.'"

*Johnson v. Williams*, 568 U.S. 289, 303, 133 S.Ct. 1088, 185 L.Ed.2d 105

(2013)(emphasis in original). "'When a federal claim has been presented to a state

court and the state court has denied relief, it may be presumed that the state court

adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary.'" *Jackson v. Smith*, 745 F.3d 206, 210 (6th

Cir. 2014)(quoting *Harrington v. Richter*, 562 U.S. 86, 99, 131 S.Ct. 770, 178

L.Ed.2d 624 (2011)). "And this rule applies, whether the state court denied relief

summarily, expressly addressed some of the claims but not the one advanced on

federal habeas review, or confined the analysis to state-law authorities." *Jackson*, 745 F.3d at 210 (citations omitted).

"Under § 2254(d)(1), a habeas petitioner may obtain relief (1) 'if the state court arrives at a conclusion opposite that reached by [the Supreme] Court on a matter of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts'; or (2) 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S.Ct. 1171, (2010)(quoting *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

Section "2254 does not preclude relief if either the reasoning or the result of the state-court decision contradicts our cases." *Panetti v. Quarterman*, 561 U.S. 930, 954, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007)(quotation marks and brackets omitted).

This standard requires "an error well understood in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. If this standard is "difficult to meet, that is because it was meant to be." *Id.*, at 102.

However, it is still an "objective" standard. *Williams*, 529 U.S. at 409-410. "The federal habeas court should not transform the inquiry into a subjective one by

20

resting its determination instead on the simple fact that at least one of the nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case." *Id.*, at 409-410.

In addition, under Section 2254(d)(2), "habeas relief may also be warranted where the state-court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts.'" *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)(quoting 28 U.S.C. § 2254(d)(2)). "To show that a state court's determination of the facts was 'unreasonable,' it is not enough that the 'federal habeas court would have reached a different conclusion in the first instance.'" *Pouncy*, *supra* (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 1003 (2010)). "Instead, § 2254(d)(2) requires that [federal courts] accord the state court substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 135 S.Ct. 2269, 2277, 192 L.Ed.2d 356 (2015).

"[H]owever, even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review, and does not by definition preclude relief." *Brumfield*, 135 S.Ct. at 2277 (quotation marks omitted). For example, in *Brumfield*, the Supreme Court held that the state court's finding that there was no possibility that Brumfield was intellectually disabled was unreasonable under § 2254(d)(2) even though "there was other evidence in the record that may have cut against Brumfield's claim of intellectual disability." *Brumfield*, 135 S.Ct. at 2280.

Further, although AEDPA's standard is difficult to meet, the Supreme Court has found it met in several cases. *See*, *e.g.*, *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 156 L.Ed.2d 471 (2000)(ineffective assistance of counsel); *Penry v. Johnson*, 532 U.S. 782, 803-804, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001)(jury instructions); *Wiggins v. Smith*, 539 U.S. 510, 527-528, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(ineffective assistance of counsel); *Rompilla v. Beard*, 545 U.S. 374, 388, 125 S Ct 2456, 162 L Ed 2d 259 (2005)(ineffective assistance of counsel); *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 258, 127 S.Ct. 1654, 167 L.Ed.2d 585 (2007)(jury instructions); *Panetti v. Quarterman*, 561 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007)(competency); *Porter v. McCollum*, 558 U.S. 30, 42, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009)(ineffective assistance of counsel); *Lafler v. Cooper*, 566 U.S. 156, 173, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012)(ineffective assistance of counsel); *Brumfield v. Cain*, 576 U.S. 305, 135 S.Ct. 2269, 192 L.Ed.2d 356 (2015)(mental disability); *McWilliams v. Dunn*, ___ U.S. ___, 137 S.Ct. 1790, 198 L.Ed.2d 341 (2017)(appointment of expert).

Once a federal habeas court has determined that the state court's ruling is either (1) contrary to or involves an unreasonable application of clearly-established Supreme Court precedent or (2) involves an unreasonable determination of the facts, the federal habeas court must review the petitioner's federal claim *de novo*. *Johnson*, 568 U.S. at 303.

Petitioner has satisfied AEDPA's standard of review on each of his habeas claims, as shown in the argument on those claims below. Therefore, Section 2254(d) does not bar habeas relief in this case.

## ARGUMENT

## I.

**TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO INVESTIGATE POTENTIAL ALIBLI WITNESSES AND FAILING TO FILE AN ALIBI NOTICE, EVEN THOUGH THIS WOULD HAVE BEEN CONSISTENT WITH HIS OWN DEFENSE.**

To demonstrate that counsel was constitutionally ineffective, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984).

Under the first part of this test, "[t]he proper measure of performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. There is a presumption that counsel's performance was born from a sound trial strategy. *Id.*, 689. Yet, "[t]he relevant question is not whether counsel's choices were strategic but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 482, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

In this case, Petitioner argues that counsel failed to conduct a reasonable investigation of known alibi witnesses. Counsel has the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-691. Indeed, "*Strickland* imposes a duty upon counsel to conduct a 'thorough investigation of the law and facts.'" *Halim v. Mitchell*, 492 F.3d 480, 712 (6th Cir. 2007)(quoting *Strickland*, 466 U.S. at 690). Therefore, "it does not invariably suffice that a lawyer made *some* efforts to investigate the case; the proper inquiry is whether the known evidence would lead a reasonable attorney to investigate further.'" *Bigelow v. Williams*, 367 F.3d 562, 574 (6th Cir. 2004)(emphasis by *Bigelow* Court)(quoting *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)).

A reviewing court must "conduct an assessment of whether [counsel's] decision to cease all investigation actually demonstrated reasonable professional judgment." *Wiggins*, 539 U.S. at 527.

In both *Wiggins* and *Rompilla v. Beard*, 545 U.S. 374 (2005), the Supreme Court granted habeas relief under 28 U.S.C. § 2254(d), where counsel failed to conduct a reasonable investigation into mitigating evidence at capital sentencing hearings. In *Wiggins*, the Court held that counsel was unreasonable for ceasing all investigation upon obtaining a presentence investigation report and Department of Social Services records. *See Wiggins*, 539 U.S. at 527-528 ("[C]ounsel chose to

25

abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentencing strategy impossible. . . . As a result, the [state] court's subsequent deference to counsel's strategic decision not to present any conceivable mitigation defense, despite the fact that counsel based this alleged choice on what we have made clear was an unreasonable investigation, was also objectively unreasonable.")(citation and quotation marks omitted).

In *Rompilla*, the Supreme Court held that counsel was unreasonable for failing to look for mitigating evidence in the defendant's prior conviction file, even though counsel did look for mitigating evidence elsewhere. *Rompilla*, 545 U.S. at 388 ("[A] defense lawyer should try to look at a file he knows the prosecution will cull for aggravating evidence . . . . No reasonable lawyer would forego examination of the file thinking he could do as well by asking the defendant or family relations whether they recalled anything helpful or damaging in the prior victim's testimony.")

Based on these cases, the Sixth Circuit has granted habeas relief under § 2254(d) where counsel failed to conduct a reasonable investigation into alibi and other witnesses who could have potentially aided the defense during the guilt phase of the trial. *See*, *e.g.*, *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2006)("Where counsel fails to investigate and interview promising witnesses, and therefore has no reason to believe they would not be valuable in securing

26

defendant's release, counsel's inaction constitutes negligence, not trial strategy.")(quotation marks and citations omitted); *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004).

In this case, counsel proceeded to trial on a misidentification defense. He argued that Defendant was not the person who committed the alleged offenses but was misidentified by the victim. However, counsel presented no evidence in support of that defense. He merely called a witness who testified as to Petitioner's whereabouts 15 minutes before the offense, Jeffery Haugabook, the manager of the restaurant where Petitioner worked. TT 10/16/14, 6-10. Haugabook testified that he drove Petitioner home at the end of his shift and dropped him off about 15 minutes before the robbery. *Id.* Haugabook, however, did not know Petitioner's whereabouts at the time of the robbery. *Id.*

Counsel failed to present any evidence of an alibi, that is, that Petitioner was elsewhere at the actual time of the robbery.

This was objectively unreasonable because Petitioner told trial counsel about two alibi witnesses, his grandmother, JoAnn Green, and his aunt, Crystal Holloway, who would have testified that Petitioner stayed at home with them at 6390 Colfax, Detroit, after his boss dropped him off between 3:20 and 3:30 a.m. on May 28, 2014, that he was still there at the time of the offense (which occurred

around 3:30 a.m. on May 28, 2014), and that he did not leave the house for "several hours" after arriving.

On direct appeal, Petitioner presented affidavits from himself and these witnesses to this effect. Defendant swore, "Prior to trial [I] informed [my] trial counsel of several potential witnesses, including Crystal Holloway and JoAnn Green, who both could have testified that on May 28, 2014, from about 3:20 A.M. - 3:30 A.M. [I] arrived at home at 6390 Colfax, in Detroit, and [I] stayed there for several hours." Affidavit of Petitioner.

JoAnn Green's affidavit confirms, "I lived at 6390 Colfax, Detroit., Mich. . . . Lafayette Shawn Upshaw Jr.[,] [o]n the 28th of May 2014 . . . could not have been anywhere else, because at between 3:20 and 3:30 he was getting blessed out by me [because] he'd woke[n] me again. . . . [L]ater when he left at around 7:45 I was still upset . . ." Affidavit of JoAnn Green.

Crystal Holloway's affidavit says, in full, the following.

> My name is Crystal Holloway. I am writing this letter in a plea for my nephew Upshaw. I was a[n] alibi witness to some events that happened on May 28. His lawyer knew about me being a witness but he choose not to call on me to give my testimony. That is why I am writing this letter in hopes that he will be granted a new trial in which he will be able to have his witness called to the stand to testify on his behalf.

No reasonable defense attorney, proceeding to trial on a misidentification defense and knowing, from his client, that there were two potential alibi witnesses, would have failed to at least speak to those witnesses to find out whether they could provide testimony helpful to the defense. *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007)("[A] lawyer's *Strickland* duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.")(quotation marks omitted); *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2006)("Where counsel fails to investigate and interview promising witnesses, and therefore has no reason to believe they would not be valuable in securing defendant's release, counsel's inaction constitutes negligence, not trial strategy.")(quotation marks and citations omitted).

Therefore, counsel was objectively unreasonable for failing to investigate and interview JoAnn Green and Crystal Holloway.

Further, counsel unreasonably failed to file a notice of alibi defense that is required under Michigan law. *See* Mich. Comp. Laws § 768.20(1). *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004)(finding counsel objectively unreasonable for failing to file a timely alibi notice where alibi was a critical aspect of the defense).

Therefore, counsel's performance was objectively unreasonable.

The Michigan Court of Appeals rejected this claim by finding that the affidavits of JoAnn Green and Crystal Holloway were "flawed" and "defective" because they "did not meet the requirements of an affidavit, MCR 2.119(B)," in some unspecified way. *People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 325195 (May 19, 2016) slip op., pp.7-8. Further, the court held, "Assuming that it is even proper to consider these flawed documents, Upshaw has simply failed to show that counsel's performance fell below an objective standard of reasonableness relative to alibi witnesses and a notice of alibi, and he has not established the requisite prejudice." *Id.*, at 8.

First, assuming, arguendo, that the Michigan Court of Appeals correctly found the affidavits of JoAnn Green and Crystal Holloway to be "defective" and setting those affidavits aside, Petitioner's own affidavit (which the Michigan Court of Appeals did not find to be "defective") sets forth sufficient facts to show that trial counsel was objectively unreasonable. Petitioner swore that he told counsel that JoAnn Green and Crystal Holloway could provide an alibi -- that he was at home with them at the time of the offense -- and that counsel failed to investigate them. See Petitioner's Affidavit. That is all that is necessary to find counsel's performance objectively unreasonable under *Strickland*. *See Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007)("[A] lawyer's *Strickland* duty includes the obligation to investigate all witnesses who may have information concerning his or

her client's guilt or innocence.")(quotation marks omitted). Therefore, the state court's holding that counsel was not unreasonable in failing to investigate the potential alibi witnesses, based solely on Petitioner's non-defective affidavit, is an unreasonable application of Supreme Court precedent, especially where, as here, counsel's own trial strategy was consistent with alibi witnesses, *i.e.*, a misidentification defense.

When the state court's adjudication of one prong of *Strickland*'s test contravenes AEDPA's standard of review in Section 2254(d), the federal court reviews both *Strickland* prongs *de novo*. *Panetti v. Quarterman*, 561 U.S. 930, 953-954, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). But, even assuming the state court's adjudication of the performance prong did not contravene AEDPA's standard, its adjudication of the prejudice prong did.

As to prejudice, the Michigan Court of Appeals' ruling involved an unreasonable determination of the facts in light of the evidence presented under Section 2254(d)(2). The Michigan Court of Appeals found that the affidavits of Petitioner's alibi witnesses were "defective" or otherwise did not provide sufficient evidence that, if believed by a reasonable jury, would create a reasonable probability of a different result. *Upshaw*, at pp.7-8. This may have been a reasonable determination of the facts with respect to the affidavit of Crystal

Holloway, but it is an unreasonable determination of the facts with respect to the affidavit of JoAnn Green.

The Michigan Court of Appeals found that the affidavits "did not meet the requirements of an affidavit, MCR 2.119(B)," but did not explain what it meant by that statement. *Upshaw*, at pp. 7-8. Michigan Court Rule 2.119(B) provides as follows.

> (B) Form of Affidavits.
>
> (1) If an affidavit is filed in support of or in opposition to a motion, it must;
>
> (a) be made on personal knowledge;
>
> (b) state with particularity the facts admissible as evidence establishing or denying the grounds stated in the motion; and
>
> (c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit.
>
> (2) Sworn or certified copies of all documents or parts of documents referred to in an affidavit must be attached to the affidavit . . . [going on to list requirements for attachments; there were no attachments in this case]

Petitioner concedes that Crystal Holloway's affidavit was defective under this rule because her affidavit does not "state with particularity the *facts* admissible as evidence establishing or denying the grounds stated in the motion". Mich. Ct. Rule 2.119(B)(1)(b)(emphasis added). Rather, it merely states a conclusion, "I was

a[n] alibi witness to some events that happened on May 28." Plainly, this is insufficient under the rule.

The same, however, is not true of JoAnn Green's affidavit. Ms. Green does "state with particularity the facts admissible as evidence establishing or denying the grounds stated in the motion". Mich. Ct. Rule 2.119(B)(1)(b). In her affidavit, she says, "I lived at 6390 Colfax, Detroit., Mich. . . . Lafayette Shawn Upshaw Jr.[,] [o]n the 28th of May 2014 . . . could not have been anywhere else, because at between 3:20 and 3:30 he was getting blessed out by me [because] he'd woke[n] me again. . . . [L]ater when he left at around 7:45 I was still upset . . ." Affidavit of JoAnn Green. While not in the usual form, as it lacks distinctly-stated facts set forth in numbered paragraphs and, while not a paragon of clarity, this does set forth particular facts that, if believed, would establish an alibi -- that Petitioner was elsewhere when the crime occurred, *i.e.*, "at 6390 Colfax, Detroit., Mich. . . . [o]n the 28th of May 2014", which Ms. Green had on personal knowledge because, as the affidavit says, she lived at that address and, "at between 3:20 and 3:30 [Petitioner] was getting blessed out by me [because] he'd woke[n] me again. . . . [L]ater when he left at around 7:45 I was still upset . . ." Such facts are admissible because they were witnessed by the affiant, JoAnn Green, herself and they are relevant to whether Petitioner committed the charged offense somewhere other

than where JoAnn Green's affidavit says he was between 3:20 and 3:30 a.m. on May 28, 2014.

Thus, the Michigan Court of Appeals' finding that this affidavit was not "made on personal knowledge" or did not "state with particularity the facts admissible as evidence establishing or denying the grounds stated in the motion" is an unreasonable determination of the facts under Section 2254(d)(2).

If the state court's adjudication of either the performance or the prejudice prong contravened AEDPA's standard of review in Section 2254(d), this Court reviews both *Strickland* prongs *de novo*. *Panetti*, 561 U.S. at 953-954.

Under the prejudice prong of the *Strickland* test, Petitioner must show that, but for counsel's unreasonable performance, there is a reasonable probability that the outcome of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A defendant may meet this burden "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland,* 466 U.S. at 694. In other words, "a defendant need ***not*** show that counsel's deficient performance more likely than not altered the outcome in the case." *Id.*, at 693 (emphasis added). "All it would have taken is for 'one juror [to] have struck a different balance[.]'" *Ramonez v Berghuis*, 490

34

F.3d 482, 491 (6th Cir. 2007)(quoting *Wiggins*, 539 U.S. at 537). *See also Buck v Davis*, 576 U.S. 305; 137 S.Ct. 759, 776; 197 L.Ed.2d 1 (2017).

"[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 US at 696. *See also English v. Romanowski*, 602 F.3d 714, 731 (6th Cir. 2010); *Towns v. Smith*, 395 F.3d 251, 260 (6th Cir. 2005); *Clinkscale*, 375 F.3d at 445.

In this case, the verdict was only weakly supported by the evidence because the only evidence linking Defendant to the offense was the eyewitness identification of the victim. *See Upshaw*, *supra*, at 2. "[T]he Sixth Circuit has repeatedly expressed 'grave reservations concerning the reliability of eyewitness testimony.'" *United States v. Murillo*, No. 07-20417; 2011 U.S. Dist. LEXIS 122541, at 34 (E.D. Mich. Oct. 24, 2011)(quoting *Clinkscale*, 375 F.3d at 445, quoting *Blackburn v. Foltz*, 828 F.2d 1177, 1186 (6th Cir. 1987)). This is because eyewitness identifications are notoriously unreliable. *See United States v. Wade*, 388 U.S. 218, 229, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Wilson v. Cowen*, 578 F.2d 166 (6th Cir. 1978)("[T]he identification of strangers in violent crime situations is fraught with the hazard of mistake."); *People v. Anderson*, 389 Mich. 155, 174; 205 NW2d 461 (1973)("[I]dentification of individuals -- however earnest -- is often unreliable."); Brooke, Whisonant, Otterson, *The Tyranny of the*

35

*Eyewitness*, 28 Law and Psychol. Rev. 195, 202 n.77 (Spring 2004)("The vagaries of eyewitness identification are well known, the annals of criminal law are rife with instances of mistaken identifications.")(citing, *inter alia*, *Wade*, *supra*, and *Anderson*, *supra*); Scheck, Nefeld, Dwyer, *Actual Innocence* (Doubleday, 2000), p.76 (discussing DNA exonerations that have disproven eyewitness identifications previously believed to be "reliable"); Gorpha, *Showing Prisoners to Witnesses for Identification*, 1 Am J. Police Sci. 79, 82 (1930).

In addition to the general unreliability of eyewitness identifications, the eyewitness identification in this case was particularly weak. The witness testified that the assailant wore a hoodie, had a t-shirt pulled over his face, and that she could only see his eyes and nose for less than ten seconds and never saw his mouth or lips and then she purported to identify Petitioner in a lineup on June 3, which was a full six days after the May 28 armed robbery. TT 10/14/14, 38-39, 49. Thus, the only evidence linking Petitioner to this crime -- this uncertain, inherently unreliable eyewitness identification -- was weak.

Further, "when trial counsel fails to present an alibi witness, '[t]he difference between the case that was and the case that should have been is undeniable.'" *Caldwell v. Lewis*, 414 F. App'x 809 (6th Cir. 2011)(quoting *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir. 2006)). Indeed, the Sixth Circuit has found that counsel's failure to call alibi witnesses was prejudicial under *Strickland*

even where the state postconviction court found that the witnesses would have been "unconvincing." *Bigelow v. Haviland*, 576 F.3d 284, 291 (6th Cir. 2009). This is because it is not for the court to make ultimate credibility determinations but to ask whether a reasonable jury could have found the witness credible and, if so, whether there is a reasonable probability that the outcome would have been different. *Id.*

Thus, what the district court said in *Murillo*, *supra*, about a similar ineffective-assistance claim is equally applicable here: "If Petitioner's alibi witnesses are to be believed, they present a complete defense to the crime. There is at least a reasonable probability that the result of the trial would have been different had counsel presented Petitioner's alibi witnesses." *Murillo*, at 35. *See Ramonez*, 490 F.3d at 491 ("Even though the jury could have discredited the potential witnesses here based on factors such as bias and inconsistencies in their respective stories, there certainly remained a reasonable probability that the jury would not have. Ramonez's case was therefore prejudiced where their testimony would have helped corroborate his testimony and contradict that of [the] complaining witness").

Therefore, but for counsel's failure to investigate the potential alibi witnesses, there is a "reasonable probability" that the outcome of the trial would have been different, and the state court's conclusion to the contrary involves an

unreasonable application of clearly-established Supreme Court precedent under Section 2254(d)(1).

Accordingly, Petitioner is entitled to habeas relief on this claim.

## II.

## THE TRIAL COURT DENIED PETITIONER'S MOTION FOR A BRIEF ADJOURNMENT SO THAT NEWLY-RETAINED COUNSEL COULD BECOME PREPARED FOR TRIAL, IN VIOLATION OF DUE PROCESS.

The standard that applies on habeas review of a claim that a state trial court violated due process by denying a motion for continuance is as follows.

A trial court's decision to grant or deny a continuance is a matter of discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *Bennett v. Scroggy*, 793 F.2d 72, 774-75 (6th Cir. 1986). As we held in *Powell v. Collins*, "[a]bsent proof of a violation of a specific constitutional protection, a habeas petitioner must show that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process." 332 F.3d 376, 396 (6th Cir. 2003)(citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)). The denial of a continuance constitutes a constitutional violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'. . . ." *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 775 L.Ed.2d 610 (1983)(quoting *Ungar*, 376 U.S. at 589)). As *Morris* and *Ungar* indicate, the denial of a continuance will rarely give rise to a constitutional violation and "[t]he circumstances of a particular case determine whether the denial of a continuance is so arbitrary as to violate due process." *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004)(citing *Ungar*, 376 U.S. at 589). In addition, "[t]o demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997)(internal quotation marks and

39

citation omitted). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense." *Powell*, 332 F.3d at 396.

The relevant factors in determining whether a continuance was properly denied include: (1) the length of the requested delay; (2) whether other continuances had been requested and granted; (3) whether the delay was for legitimate reasons; (4) the inconvenience to the parties, witnesses, counsel, and the court; (5) whether the defendant contributed to the circumstances giving rise to the request; (6) whether denying the continuance resulted in prejudice to the defendant; and (7) the complexity of the case. *See id.* (citing *United States v. Burton*, 584 F.2d 485, 490-91, 189 U.S. App. D.C. 327 (D.C. Cir. 1978)).

In this case, Petitioner retained trial counsel, Wright Blake, approximately 2-1/2 weeks before trial commenced on October 9, 2014. At a status conference held on October 2, 2014, which lasted only a few minutes, defense counsel told the trial court that Petitioner wanted an adjournment so that newly-appointed counsel could be brought up to speed on the case. HT 10/2/14, 3. Counsel then asked Petitioner if that was the case. *Id.*, at 3-4.

MR. UPSHAW: Yes, but as you can see, your Honor, I have retained a new lawyer because of my insufficient counsel for not showing up and not coming and telling me the information. So I feel like my lawyer hasn't, my lawyer hasn't saw the DVD. He hasn't retained the transcript or anything and I feel like it's best grounds of adjournment right there, your Honor, just to get him caught up on what's going on with the case cause I just retained him like a week and a half ago, probably not even that.

40

> THE COURT: Well, I'm not granting an
> adjournment at this point. We'll see what happens. Okay.

Nothing further was said on the matter.

Applying the seven "relevant factors in determining whether a continuance was properly denied," *Landrum*, 625 F.3d at 928, there was a constitutional violation, that is, "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'. . . ." *Morris*, 461 U.S. at 11-12 (quoting *Ungar*, 376 U.S. at 589).

First, the length of the delay requested was not long, only enough time to get newly-retained counsel "caught up on what's going on with the case", *i.e.*, to review the evidence and the preliminary examination transcript and to contact and interview the alibi witnesses and file an alibi notice, which, under Michigan law, must be filled at least ten days before trial. HT 10/2/14, 4; Mich. Comp. Laws § 768.20(1).

Second, no other adjournments had been requested or received.

Third, the delay was clearly for legitimate reasons, *i.e.*, to get newly-retained counsel "caught up on what's going on with the case", *i.e.*, to review the evidence and the preliminary examination transcript and to contact and interview the alibi witnesses and file an alibi notice, which, under Michigan law, must be filled at least ten days before trial. HT 10/2/14, 4; Mich. Comp. Laws § 768.20(1).

41

Fourth, there is no evidence that a short adjournment to allow counsel to get caught up on the evidence and record and to investigate Petitioner's potential alibi witnesses would have caused any inconvenience to the parties, witnesses, counsel, or court. Petitioner was arraigned on the charges in the trial court on June 17, 2014. He started trial less than four months later, on October 9, 2014. That is a very short time to start a trial in a capital case. A short delay of a few weeks to allow newly-retained defense counsel to adequately prepare, interview alibi witnesses, and file an alibi notice would have therefore likely caused little inconvenience.

Fifth, Petitioner did not contribute to the circumstances that gave rise to the request for the adjournment. Although Petitioner retained new counsel only 2-1/2 weeks before trial, his undisputed reason for doing so was his "insufficient counsel for not showing up and not coming and telling [Petitioner] the information." HT 10/2/14, 4. Petitioner was arraigned on June 17, 2014. It is not unreasonable that he gave his appointed counsel nearly three months to prove that he was not diligently working the case before retaining his own attorney. Therefore, there is no evidence that Petitioner contributed to the need for an adjournment. It is undisputed that the fault lay only with appointed counsel who, it is also undisputed, failed to represent Petitioner with sufficient diligence by failing to interview Petitioner's alibi witnesses and failing to consult with his client. Therefore, there is no evidence or

42

indication that Petitioner contributed to the circumstances that gave rise to the request for the adjournment.

Sixth, denying the continuance prejudiced Petitioner because it prevented trial counsel from conducting the reasonable investigation he was required to conduct by the Sixth Amendment by failing to interview potential alibi witnesses, as set forth in Habeas Claim I, above. "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense." *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). Additional time would have allowed counsel to investigate Petitioner's known alibi witnesses and file the required alibi notice in a timely manner. Without that time, counsel was unable to perform this basic duty, and Petitioner was therefore denied his constitutional right to the effective assistance of counsel for his defense, as shown in Habeas Claim I, above.

Seventh, and finally, although this was not the most complex case, it was legally not the most simple either. It involved a codefendant, a subsequent, uncharged offense that occurred only a few hours after the first offense that was used to identify the codefendant, who was jointly tried with Petitioner, a tenuous photo-lineup identification by the complainant (a stranger to Petitioner and his codefendant), and an alibi -- and alibi witnesses -- asserted by Petitioner but never investigated by his first attorney or his second one. As stated above the trial was

43

scheduled to commence fewer than four months after arraignment. That is a very short period of time to prepare for such a case.

In sum, Petitioner's right to a fair trial was violated by the state trial court's "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay", *Morris*, 461 US at 11-12, which violated Petitioner's constitutional right to the effective assistance of counsel. Therefore, the state trial court's denial of a continuance violated the constitution.

The Michigan Court of Appeals' adjudication of this claim contravenes AEDPA's standard of review under Section 2254(d). The Michigan Court of Appeals rejected this claim by saying that it "is premised on the claimed need for time so that new counsel could have investigated and properly presented an alibi defense. Given our previous discussion, the alibi claim is unavailing." *Upshaw*, slip op., p.8. However, as shown in Habeas Claim I, above, that previous discussion regarding Petitioner's Habeas Claim I itself contravenes AEDPA's standard of review under Section 2254(d). Therefore, the state court's adoption of the same reasoning to reject this claim also contravenes Section 2254(d).

Accordingly, the trial court's denial of a continuance violated Petitioner's right to due process. He is therefore entitled to habeas relief.

44

## III.

## THE PROSECUTOR DISMISSED AFRICAN-AMERICAN POTENTIAL JURORS IN A DISCRIMINATORY MANNER, IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE CONSTITUTION.

"[T]he Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race[.]" *Powers v. Ohio*, 499 U.S. 400, 409, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." *Batson v. Kentucky*, 476 U.S. 79, 87, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Although a *Batson* claim "presents a mixed question of law and fact, . . . the question of 'whether a prosecutor intended to discriminate on the basis of race in challenging potential jurors is, as *Batson* recognized, a question of historical fact.'" *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003)(quoting *Hernandez v. New York*, 500 U.S. 352, 367, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). "Under AEDPA, primary or historical facts found by state courts are presumed correct and

are rebuttable only by clear and convincing evidence." *Lancaster*, *supra* (internal quotation marks omitted).

The Sixth Circuit described the standard that applies to *Batson* claims on habeas review as follows. *Lancaster*, 324 F.3d at 429 (some quotation marks and citations omitted).

> It is clearly established that a prosecutor may not exercise his peremptory challenges to exclude potential jurors on the basis of race. In *Baston* [*supra*], the Supreme Court articulated a three-step analysis to be applied to an Equal Protection Clause claim that purposeful discrimination occurred in the selection of the petit jury based solely on the prosecutor's exercise of his peremptory challenges at trial. First, the defendant must establish a prima facie case of racial discrimination. This requires an initial showing that "the defendant . . . is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendants race." *Batson*, 476 U.S. at 96 (citation omitted). "The defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 97 L. Ed. 1244 (1953)). Ultimately, the defendant, relying on this presumption and other facts, must "raise an inference that the prosecutor used [the practice of peremptory challenges] to exclude the veniremen from the petit jury on account of their race." *Id.*
>
> Second, once the defendant has raised the necessary inference, "the burden shifts to the state to come forward with a neutral explanation for challenging the [potential] jurors." *Id.*, at 97. The government is not required to persuade the court that its reasons for

dismissing the juror were well-founded; rather it need only demonstrate that its reasons were race-neutral. More specifically, "The second step of this process does not demand an explanation that is persuasive or even plausible. At this . . . step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." [*Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)] (quoting *Hernandez*, 500 U.S. at 360).

Third, the party opposing the strike must demonstrate that the prosecutor's purported explanation is merely a pretext for racial motivation. Ultimately, the court must determine "whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359. In making this determination, the court presumes that the facially valid reasons proffered by the prosecution are true. Id. at 359-60. Racially discriminatory purpose or intent must be affirmatively shown by the opponent of the strike. Id. at 360. The ultimate burden of persuasion always remains with the opponent of the strike.

In this case, trial counsel (Mr. Blake) objected to the prosecutor (Ms. Towns) exercising six of her first eight peremptory challenges against African Americans. TT1 97-101. The trial court then requested a race-neutral explanation, which the prosecutor gave with respect to only three of the six African-American jurors whom she peremptorily challenged. The trial court then cut her off and ruled in her favor on the entire *Batson* objection, saying, "the Prosecutor has given some explanation other than race". TT1 99. The trial court then refused to hear any

47

further argument on the issue. TT1 100-101. The entire exchange follows. TT1 97-101.

> MR. BLAKE: Your Honor, at this time we have a *Batson* motion on the Prosecution [who] has elected to take off 8 perspective [sic] members of the jury. My count has 6 of them being African American and 2 of them white. Obviously, it's detrimental to my client to get a jury of his peers considering he's African American. Some of the individuals, there was absolutely no reason whatsoever for excluding them or for taking them [off] such as, I believe, it was Kim Jones, the student. There was also previously Ms. Jones. All of them had neutral responses that they could be fair and impartial and yet the Prosecution elected within her first 1, 2, 3, 4, 5, 6, and 7 peremptory's, out of the 7, 6 were African American, judge.

> MR. GOZE [Codefendant's counsel]: I would so join that motion on behalf of Mr. Walker.

> MS. TOWNS: So, Judge, I believe the standards they have to show [are] a pattern or proof that they were excused purely for race. I think that that burden has not been established to the Court pursuant to the *Batson* case.

> THE COURT: Do you have any response to why they were challenged?

> MS. TOWNS: Well, do you want me to go specifically one by one, Judge?

> THE COURT: Go ahead.

> MS. TOWNS: Ms. Stinson, I dismissed recently because she seemed to have very delayed responses to questions as if she really wasn't focused or paying attention and she's an older female. As relates to Ms.

Williams, Ms. Williams is convicted of a CCW. Mr. Smith was in seat #6, I believe.

THE COURT: He was. He's the jury [sic] with had [sic] the relatives in prison.

MS. TOWNS: Yes, thank you, Judge. That is correct. Ms. Jones, was a student, I believe. I believe she was too young, in my opinion. Too young for this particular case. Not based on her race, but based on her age. I also thought that when I watched her, her demeanor was very distracted. You'd have to repeat questions to her as if she really wasn't listening. That is seat # 13. I think that I've established--

THE COURT: Mr. Blake?

MR. BLAKE: Well, Judge, too young? Apparently she's not too young, Ms. Jones, to be a juror. So, that particular response is--

THE COURT: Yes, but are you saying that's a pretext to get her off the jury because she's black?

MR. BLAKE: Yes, Judge.

THE COURT: Anything else?

MR. BLAKE: No, your Honor.

THE COURT: Mr. Goze?

MR. GOZE: Just joining what the Counsel said.

THE COURT: Well, the Prosecutor has given some explanation other than race being challenged. I don't have any further comments on whether it's good or bad. That's the strategy of a trial. The *Batson* challenge, well, see *Batson* would be to a specific juror. Were you challenging her excusal of the last, of White and Stinson?

49

MR. BLAKE: Of both of the Jones'; Pamela Jones.

THE COURT: No, you can't do it that way. Once you say there's a pattern, then you challenge a specific juror challenge.

MR. BLAKE: Well, Judge, with respect to Ms. Stinson, the fact that she's elderly. She gave direct responses, although they weren't rapid speed, but her answers were clear and concise and we'd ask the Court not to excuse her.

THE COURT: Denied. As to Ms. White? She was challenged in the last challenges by the People. Was she the student? Ms. White has not been challenged?

MS. TOWNS: Ms. White was in seat # 14. She was a white female.

THE COURT: Oh, then it doesn't apply.

MS. TOWNS: Judge, I did want to indicate now that we're off the record, I guess the same challenge can be made -- specifically to Mr. Wright as it relates to--

THE COURT: Mr. Blake? Well, you can't do it that way. It's not a tis [sic] for tat.

MS. TOWNS: No, no, Judge, but I think the Court should be aware of the following: He has kicked off--

THE COURT: Excuse me?

MS. TOWNS: 6 jurors, all of them, white males or females.

THE COURT: I still say it's not tis [sic] for tat. I'm not allowing a *Batson* challenge.

MS. TOWNS: Alright.

## A.

### The first *Batson* factor: Petitioner established a prima facie case of discrimination.

On the first *Batson* factor, Petitioner established a prima facie case of discrimination because he showed that he "is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 476 U.S. at 96. As defense counsel argued, Petitioner is African American, and the prosecutor exercised 6 of her 8 peremptory challenges against African Americans. Such a racial disparity in the exercise of peremptory challenges, by itself, satisfies the first *Batson* factor. *Lancaster*, 324 F.3d at 432. *See also Sims v. Berghuis*, 494 F.Supp.2d 575, 579 (E.D. Mich. 2007)("Petitioner established a prima facie case of racial discrimination during voir dire. As an African American, Petitioner is a member of a cognizable racial group. Second, he is entitled to rely on the fact that prosecutors sometimes use peremptory challenges in a discriminatory manner. Finally, the fact that the prosecutor excused six of seven African Americans from the venire establishes an inference that the prosecutor used his peremptory challenges to exclude prospective jurors on the basis of race."); *United States v. Kimbrel*, 532 F.3d 461 (6th Cir. 2008)(finding the first *Batson* factor met based on

the exercise of peremptory challenges against all but one member of the cognizable racial group).

As the Supreme Court explained in *Johnson v. California*, 545 U.S. 162, 170; 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), "we did not intend the first step to be so onerous that a defendant would have to persuade the judge -- on the basis of all the facts, some of which are impossible for the defendant to know with certainty -- that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirement of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred."

Indeed, the state trial court clearly indicated that Petitioner satisfied the first *Batson* factor. As soon as defense counsel stated his *Batson* objection and pointed out (1) that Petitioner is African American and (2) that the prosecutor exercised 6 of her 8 peremptory challenges against African Americans -- the only two criteria needed to satisfy *Batson*'s first factor -- the trial court did ***not*** find that Petitioner failed to meet his burden on this factor but, instead, moved on to *Batson*'s second factor (which only applies if the defendant has satisfied the first factor), asking the prosecutor, "Do you have any response to why they were challenged?" TT1 98. *See Lancaster*, 324 F.3d at 432 ("[O]nce the defendant has raised the necessary inference [of racial discrimination], the burden shifts to the state to come forward

with a neutral explanation . . .")(quotation marks omitted). *See also Thompson v. Keohane*, 516 U.S. 99, 114; 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)(recognizing the importance of a trial court's "first person vantage" in voir dire).

The only logical conclusion is that the trial court found that Petitioner satisfied the first *Batson* factor, and Petitioner did satisfy the first *Batson* factor, as shown above.

Indeed, the Michigan Court of Appeals recognized that the trial court made an "implied" finding that Petitioner satisfied the first *Batson* factor, but it reversed that finding, stating, "We cannot conclude, on the existing record, that defendants made a prima facie showing or case of racial discrimination." *Upshaw*, *supra*, slip op., p.9. Therefore, the Michigan Court of Appeals, unlike the trial court, rejected the *Batson* challenge on the first *Batson* factor, without addressing the second and third *Batson* factors. *Id.*, at 10.

This is an unreasonable application of clearly-established Supreme Court precedent under Section 2254(d)(1) for two reasons.

First, as shown above, Petitioner plainly satisfied *Batson*'s first factor by showing that he was an African American and that the prosecutor exercised six of her eight peremptory challenges against African Americans. The Michigan Court of Appeals conclusion to the contrary is therefore contrary to or an unreasonable application of Supreme Court precedent.

53

Second, the Michigan Court of Appeals did exactly what the Sixth Circuit found to be an unreasonable application of Supreme Court precedent in *Lancaster*, 324 F.3d at 434-435.

> The decision of the Michigan Court of Appeals to affirm the trial court was an unreasonable application of the Supreme Court's decision in *Batson* and *Hernandez*. . . . [I]t is the Michigan Court of Appeals's finding that the Petitioner failed to establish a prima facie case of discrimination that renders the court's decision unreasonable under Supreme Court precedent. The Supreme Court made clear in *Hernandez* that "once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court had ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." 500 U.S. at 359. Accordingly, because the trial court here had ruled on the ultimate question under *Batson* -- whether Petitioner had established intentional discrimination -- when it concluded that Petitioner had not demonstrated that the reasons for the strike of Bowden proffered by the prosecution were pretextual, the Michigan Court of Appeals acted unreasonably under Supreme Court precedent set out in *Hernandez* when it rested its holding on an issue that had become moot.

The Michigan Court of Appeals did precisely the same thing again here, finding that Petitioner failed to make his showing on the first *Batson* factor even though that factor had become moot once the prosecutor offered race-neutral explanations for striking some of the jurors and the trial court rejected the *Batson* challenge on the third *Batson* factor. Therefore, Petitioner is entitled to habeas relief for the same reason as in *Lancaster*.

**B.**

**The second *Batson* factor: The prosecutor failed to give a race-neutral explanation for all of the dismissed black jurors.**

Assuming, *arguendo*, that Petitioner is not entitled to habeas relief based solely on the above analysis, he is entitled to habeas relief because the prosecutor failed to come forward with a race-neutral explanation for each of the six African American jurors against whom she exercised her peremptory challenges after Petitioner made a prima facie showing that she exercised those peremptory challenges with discriminatory purpose.

The prosecutor gave a race-neutral explanation for only three of her six peremptory challenges of African-American jurors. Defense counsel challenged one of those explanations -- that Ms. Jones was "too young" -- by saying that Ms. Jones was obviously not "too young" because she was old enough to meet the age qualification for being a juror. The trial court then rejected the *Batson* challenge, ***even though the prosecutor failed to come forward with a race-neutral explanation for three of the African American jurors she peremptorily challenged***.

Since the prosecutor failed to satisfy her burden on the second *Batson* factor, the trial court erred in rejecting the *Batson* challenge. The burden was on the prosecutor to come forward with a race-neutral explanation for ***all*** of the African

55

American jurors she peremptorily challenged. *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008)("[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose."); *Batson*, 476 U.S. at 95 ("A single invidiously discriminatory governmental act is not immunized by the absence of such discrimination in the making of other comparable decisions.")(internal quotation marks omitted).

When she failed to come forward with a race-neutral explanation for all of the African-American jurors she excused, the trial court's only option under *Batson* was to find the Equal Protection Clause violated. *Snyder*; *Batson*, *supra*. The trial court's failure to do so and the appellate court's upholding of this failure was therefore contrary to or an unreasonable application of clearly-established Supreme Court precedent. Petitioner is thus entitled to habeas relief for this reason.

## C.

### The third *Batson* factor: The prosecutor engaged in intentional discrimination.

Assuming, for the sake of argument, that the prosecutor did come forward with a race-neutral explanation for all of the stricken African-American jurors, Petitioner is still entitled to habeas relief because the state trial court failed to complete the third step of the *Batson* analysis, *i.e.*, actually determining whether the prosecutor engaged in purposeful discrimination. *Lancaster*, 324 F.3d at 429. The trial court has a duty, under *Batson*, to assess whether the defendant has met his burden of showing purposeful discrimination. *Hernandez*, 500 U.S. at 363. The trial court must assess the plausibility of the prosecution's race-neutral reasons in light of all the evidence. *Miller-El*, 545 U.S. at 251-252.

In this case, the trial court, after hearing the prosecutor's race-neutral explanations for only three of the six excused African American jurors, said only, "Well, the prosecutor has given some explanation other than race being challenged. I don't think the *Batson* motion can be sustained. I don't have any further comments on whether it's good or bad." TT 10/9/14, 99. Thus, the trial court failed to complete the third step of the *Batson* analysis and essentially conflated the second and third steps, which the Sixth Circuit has repeatedly found to be contrary to clearly-established Supreme Court precedent, entitling Petitioner to habeas relief

under 28 U.S.C. § 2254(d)(1). *See United States v. Kimbrel*, 532 F.3d 461, 466 (6th Cir. 2008)(holding that the trial court may not "short circuit the *Batson* analysis, by consolidating any of the two steps"); *United States v. Torres-Ramos*, 536 F.3d 542, 559 (6th Cir. 2008)(holding that the trial court may not merely accept the prosecution's race-neutral explanation on its face); *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001); *United States v. Cecil*, 615 F.3d 678, 686 (6th Cir. 2010).

Therefore, habeas relief should be granted.[1]

---

[1] Although the analysis under 28 U.S.C. § 2254(d)(1) is an objective one, *Williams*, 529 U.S. at 409-410, and therefore does not depend on whether the state court's ruling was ***deliberately*** contrary to or an unreasonable application of clearly-established Supreme Court precedent, it is worth noting that the trial judge in this case, Michael J. Callahan, has a history of ***deliberately*** refusing to properly apply *Batson* due to that particular judge's personal belief that doing so could result in his having to label an attorney's actions as racist and his distaste for affixing such a label. *See Pellegrino v. Ampco System Parking*, 486 Mich. 330, 330, 335-336, 785 N.W.2d 45 (2010).

Although this judge's willfulness in violating *Batson* is irrelevant to deciding whether he actually did violate *Batson*, the fact that he has a history of deliberately refusing to follow *Batson* counsels against allowing him to preside at retrial in this case, assuming the state elects to correct the error through retrial if this Court issues a conditional writ of habeas corpus. Given Judge Callahan's recalcitrance and repeated refusal to follow clearly-established Supreme Court precedent under *Batson*, this Court should issue a conditional writ of habeas corpus that requires any retrial to be conducted by a different judge. *See Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 213, 95 L.Ed.2d 724 (1987)("A federal habeas court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.' . . . [Federal courts have] the largest power to control and direct the form of judgment to be entered in cases brought before it on habeas

Assuming further, for the sake of argument, that Petitioner has not already established entitlement to habeas relief, Petitioner satisfies the third element of the *Batson* test because the prosecutor engaged in purposeful discrimination. In deciding his factor, "the trial judge must consult all of the circumstances that bear upon the issue of racial animosity." *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). The court must decide whether the reasons given for striking the juror are race-neutral, whether they are relevant to the case, and whether they are genuine as opposed to pretextual. *Batson*, 476 U.S. at 93, 95. "In deciding if the defendant has carried his burden of persuasion, a court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.*, at 93. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El*, 545 U.S. at 231, 241.

## DONALD SMITH, JUROR # 43

The trial judge, not the prosecutor, gave the race-neutral reason for striking this juror: "He's the jur[or] w[ho] had the relatives in prison." TT 10/9/14, 99. This

---

corpus."). *See also Ruelas v. Wolfenbarger*, 580 F.3d 403, 410 (6th Cir. 2009)(issuing a conditional writ that required the prisoner's release unless the state provided him with the specific performance of the plea deal he bargained for); *Gentry v. Deuth*, 381 F.Supp.2d 634, 637-638 (W.D. Ky. 2005)("[A] habeas court may grant injunctive, declaratory, and mandatory relief"); *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 830 (E.D. Mich. 2004)(citing cases).

is contrary to clearly-established Supreme Court precedent because the Supreme Court has clearly held that, once the defendant has satisfied the first *Batson* factor, "the burden shifts to **the state** to come forward with a neutral explanation for challenging the [potential] jurors." *Batson*, 476 US at 97 (emphasis added). This is because, as the Supreme Court has explained, "[t]he *Batson* framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process." *Johnson*, 545 U.S. at 172. This "counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question. . . . It does not matter that the prosecutor ***might*** have had good reasons . . . . what matters is the real reason they were stricken." *Id.* (internal quotation marks and citation omitted; emphasis added).

However, even assuming the prosecutor, rather than the judge, gave the reason as required by clearly-established Supreme Court precedent, the reason does not withstand scrutiny because the "prosecutor's proffered reason for striking [the] black panelist applies just as well to an otherwise similar nonblack who [was] permitted to serve[.]" *Miller-El*, 545 U.S. at 231, 241. That is, white potential jurors also had relatives who had criminal convictions, but they were permitted to serve, *i.e.*, Marjorie Redmond (Juror # 39) and Roshni Patel (Juror # 36). TT 10/9/14, 21, 68. This shows that the prosecutor's purported reason for excusing the

black juror was pretextual. As the Sixth Circuit explained in *United States v.*
*Torres-Ramos*, 536 F.3d 542, 559-560 (6th Cir. 2008),

> It is well-established that a *Batson* violation may
> be shown by disparate treatment of white and minority
> jurors -- that is, if a "side-by-side comparison[] of some
> black [potential jurors] who were struck and white ones
> who were not" shows that the only material distinction
> between the removed black and the retained white
> individuals is their race. [*Miller-El*, 545 U.S.] at 241.
> Thus, in *Miller-El v. Dretke*, the prosecution claimed that
> it excluded African-American potential jurors from a jury
> panel because they expressed reservations about
> imposing the death penalty. In holding that the
> prosecution's asserted reason for excluding these
> prospective jurors was pretextual, the Supreme Court
> relied heavily on the fact that, although one of the
> excluded African-Americans had expressed concerns
> about applying the death penalty to persons who could be
> rehabilitated, several non-black jurors had expressed
> similar concerns, yet had not been excluded. *Id.* at 244-
> 45.
>
> * * *
>
> [T]o prove disparate treatment in jury selection, it
> is not necessary to show that the excluded venire panelist
> was similarly situated to a white potential juror in all
> respects. . . . Thus, in *Miller-El*, an African-American
> who expressed particular views about the death penalty
> also had a brother who had previously been convicted of
> a crime. Although the prosecution referred to both the
> prospective juror's view and his brother's conviction as
> race-neutral reasons for excluding him, the Supreme
> Court nonetheless found the prospective juror to be
> similarly situated to the white potential jurors who
> expressed the same views of the death penalty yet were
> allowed to remain on the jury. *Id.* at 246-47.

Likewise, in this case, the prosecutor's stated reason (albeit stated by the judge) for excluding African-American Juror Donald Smith -- that he had relatives in prison -- was a pretext for racial discrimination, as shown by the fact that two white jurors, who also had relatives who had been convicted of crimes, were allowed to remain on the jury.

In sum, the prosecutor engaged in purposeful discrimination against Juror Donald Smith, in violation of *Batson*.

### PAMELA JONES, JUROR #43

The prosecution offered no race-neutral reason for excusing this juror. Therefore, Petitioner's prima facie showing of racial discrimination has not been overcome. Accordingly, Petitioner is entitled to habeas relief.

It is true that Pamela Jones said she had a relative in prison, but the same is true of white jurors who were not excused, as shown above, and Jones said this would not affect her ability to be fair and impartial. TT 10/9/14, 77. She also said her cousin was a police officer. *Id.*, at 78. Thus, she had just as much reason to favor the prosecution as she had to favor the defense.

It should be noted that, at page 79 of the trial transcript of 10/9/14, the court reporter erroneously referred to Juror # 50 (Perrice Williams) as Juror # 20.

**MARGIE STINSON, JUROR # 4 AND KIMBERLY JONES, JUROR # 19**

The prosecutor said she dismissed Stinson "because she seemed to have very delayed responses to questions as if she really wasn't focused or paying attention and she's an older female." TT 10/9/14, 28. The prosecutor said she dismissed Kimberly Jones because, "I believe she was too young, in my opinion. Too young for this particular case. . . . I also thought that when I watched her, her demeanor was very distracted. You'd have to repeat questions to her as if she really wasn't listening." *Id.*, at 29.

But the prosecutor's failure to ask these jurors about their alleged lack of attentiveness undermines this race-neutral explanation. *See Miller-El*, 545 U.S. at 246, 250 n.8 ("[T]he State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination. . . . [T]he failure to ask follow-up questions undermines the persuasiveness of the claimed concern."). *See also United States v. Mahan*, 190 F.3d 416, 425 (6th Cir. 1999)(finding a race-neutral reason pretextual where the prosecution failed to ask the juror about the purported reasons for the strike).

The prosecutor could have easily asked Stinson and Jones about their alleged lack of attentiveness, just as she asked a white, empaneled juror, Carolyn Coker, Juror # 8, why she had her face all twisted up when she was asked questions. TT

10/9/14, 33. The fact that she did not ask such questions indicates that this stated reason was pretextual.

Regarding Margie Stinson, Juror # 44, the prosecutor also justified striking her because "she's an older female." TT 10/9/14, 12. But, although there is no record regarding the exact ages of the potential jurors, it is clear from the record that several white jurors who were empaneled were also "older female[s]." Carolyn Coker, Juror # 8, said she served as a juror 25 years ago. TT 10/9/14, 12. Janis Price, Juror # 33, said she had been a juror twice before and retired from the University of Michigan Medical Center. *Id.*, at 9, 14. Angela Varga, Juror # 46, said she was a retired widow. *Id.*, at 14-15. Marjorie Redmond, Juror # 39, said she had served on a jury "[q]uite a few years ago" and was a retired Michigan Unemployment Agency worker. *Id.*, at 11, 15. All of these white jurors were empaneled to serve on the petit jury despite being "older female[s]." Therefore the available evidence shows that the prosecutor's claim that she struck black juror Stinson because "she's an older female" was a pretext for intentional discrimination.

As to Kimberly Jones, Juror # 19, the prosecutor's statement that "you'd have to repeat questions to her as if she really wasn't listening" is simply not true. See TT 10/9/14, 98-99. And when a prosecutor's stated reasons for striking a juror do not hold up, they are more likely to be pretextual. *Miller-El*, 545 U.S. at 252. *See*

*also Caldwell v. Maloney*, 159 F.3d 639, 651 (1st Cir. 1998)(holding that "when the facts in the record are objectively contrary to the prosecutor's statements, serious questions about the legitimacy of a prosecutor's reason for exercising peremptory challenges are raised").

In sum, the evidence shows that the prosecutor's reasons for striking Jurors ## 19 and 44 were a pretext for intentional discrimination, in violation of *Batson*, which entitles Petitioner to habeas relief.

## LATRICE WILBORN, JUROR # 49

The prosecutor offered no race-neutral reason for excusing Latrice Wilborn, Juror # 49. Therefore, Petitioner's prima facie showing of racial discrimination has not been overcome, and he is entitled to habeas relief.

In addition, Wilborn answered questions, said she understood the instructions provided by the trial court concerning the standard of proof beyond a reasonable doubt, and agreed and followed along with the scenario offered by the prosecution. TT 10/9/14, 64-65.

Compared to white juror Coker, who was empaneled despite saying that it would be difficult for her to find someone guilty, black juror Wilborn was peremptorily stricken by the prosecutor, even though she made no similar statement that would logically be troubling to the prosecution. TT 10/9/14, 33.

Thus, the prosecutor's excusal of Latrice Wilborn, Juror # 49 violated *Batson*, entitling Petitioner to habeas relief.

## PERRICE WILLIAM, JUROR # 50

This is the only one of the African-American jurors for whom the prosecutor's race-neutral explanation holds water. The prosecutor said Ms. Williams was convicted of carrying a concealed weapon, which is a felony, and even a misdemeanor conviction is a race-neutral explanation. *McNair v. Campbell*, 416 F.3d 1291, 1311-12 (11th Cir. 2005).

## GENERAL EVIDENCE OF RACIAL DISCRIMINATION

In addition to the specific evidence of discrimination discussed above, the following are more general indications that the prosecutor engaged in intentional discrimination. First, the prosecutor used 6 out of 8 peremptory challenges to excuse African Americans from the jury pool. Second, it is reasonable to conclude that the prosecutor specifically noted the race of each juror excused based on the fact that, when the trial judge asked her why she dismissed the six African-American jurors, the prosecutor immediately began to list her reasons for striking each of those jurors without having to be told which ones were African Americans. TT 10/9/14, 97-100. *See Miller-El*, 545 U.S. at 249 n.7.

Further, there were valid reasons for the prosecutor to peremptorily strike white jurors Carolyn Coker, Juror # 8, and Angela Varga, Juror # 46, but she did

66

not, and they were both empaneled. Coker said it would be difficult for her to find someone guilty. TT 10/9/14, 33. And Varga said she just had surgery on her eyes and that it would be a problem for her to watch the surveillance footage that was critical evidence in the prosecution's case. *Id.*, at 10, 49. The prosecutor's failure to strike such white jurors, while at the same time striking black jurors who said they could be fair and impartial and who could actually see the surveillance footage that was critical to the prosecution's case, is indicative of a discriminatory motive in exercising peremptory challenges against black jurors.

To conclude, the available evidence shows that the prosecutor engaged in the intentionally discriminatory use of peremptory strikes against African-American potential jurors, in violation of the Equal Protection Clause under *Batson*. Assuming the state court held to the contrary, that holding is contrary to or an unreasonable application of clearly-established Supreme Court precedent for the reasons set forth above.

*Batson* error is structural and therefore cannot be harmless; prejudice is presumed. *See United States v. McAllister*, 693 F.3d 572, n.5 (6th Cir. 2012).

Accordingly, the Court should grant habeas relief and condition any retrial on the trial being conducted before a different judge (*see* footnote 1, above).

**IV.**

**THE TRIAL COURT FOUND FACTS THAT WERE NOT FOUND BY THE JURY TO SCORE OFFENSE VARIABLE 14, WHICH INCREASED THE MANDATORY MINIMUM SENTENCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS.**

"The Supreme Court has interpreted the Sixth Amendment's jury guarantee to mean that '[a]ny fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt.'" *Robinson v. Woods*, 901 F.3d 710, 712 (6th Cir. 2018)(quoting *Alleyne v. United States*, 570 U.S. 99, 103, 133 S.Ct. 2151, 186 L.Ed.2d 134 (2013)).

In *Robinson*, the Sixth Circuit held that Michigan's sentencing guidelines scheme falls within the ambit of *Alleyne*. Specifically, the Sixth Circuit held that Alleyne "clearly established" under 28 U.S.C. § 2254(d)(1) that a Michigan sentencing judge violates the Sixth Amendment by finding facts not found by the jury to score "offense variables" (OVs) that increase a criminal defendant's sentencing guidelines range. *Robinson*, 901 F.3d at 716-717.

The *Robinson* court further held that, because *Alleyne* was decided on June 17, 2013, its holding clearly applies to all Michigan sentences that were imposed on or after June 17, 2013, until July 29, 2015, when the Michigan Supreme Court held that Michigan's sentencing guidelines were thenceforth non-mandatory.

*Robinson*, 901 F.3d at 714-717 (citing *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015)). *See also People v. Barnes*, 502 Mich. 265, 917 N.W.2d 577 (holding that *Lockridge*'s holding that Michigan's sentencing guidelines are non-mandatory does not apply retroactively).

In this case, Petitioner was tried and sentenced in 2014, which was after *Alleyne* was decided and before Michigan's sentencing guidelines were rendered non-mandatory. Therefore, *Alleyne* clearly applies to Petitioner's sentence.

The state trial court scored 10 points on OV 14 by finding that Petitioner was "a leader in a multiple offender situation." Mich. Comp. Laws § 777.44. *See* ST 11/14/14, 8. Being a leader in a multiple offender situation was not an element of any of the offenses of which Petitioner was convicted. *See Robinson*, 901 F.3d at 713 (citing OV 14 as an example of an offense variable that does not constitute an element of an offense and therefore cannot be found by a judge to increase the sentencing guidelines range).

Without OV 14 scored at 10 points, Petitioner's total OV score was 51 points (his total prior record variable (PRV) score was 50 points), making his mandatory minimum sentencing guidelines range 126 to 210 months. Mich. Comp. Laws § 777.62; ST 11/14/14, 7.

With OV 14 scored at 10 points (via judicial factfinding) and Petitioner's total OV score increased to 61 points, Petitioner's mandatory minimum sentencing

guidelines range increased to 135 to 225 months. Mich. Comp. Laws § 777.62; ST 11/14/14, 8.

Petitioner was sentenced within the 135 to 225 month mandatory minimum sentencing guidelines range that was set by judicial factfinding. He was sentenced to a minimum term of 18 years (216 months), which is above the 126- to 210-month range that applied without the judicial factfinding.

Therefore, Petitioner's Sixth Amendment right was violated.

The state court did not adjudicate this Sixth Amendment claim on the merits because it found that Petitioner failed to follow the state procedural rule requiring him to request the proper form of relief. *See People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 325195 (May 19, 2016), p.10. Therefore, the state court refused to adjudicate this claim on the merits, which means that -- if this Court finds the procedural bar to this claim overcome, due to the constitutionally ineffective assistance of appellate counsel in failing to properly raise the claim, as argued in the "Statement Regarding Procedural Default," above and in Habeas Claim V, below -- this Court reviews the claim *de novo*, that is, without AEDPA deference. *Johnson v. Williams*, 568 U.S. 289, 303, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013).

Under *de novo* review, for the reasons set forth above and just as in *Robinson*, Petitioner is entitled to habeas relief. *See Robinson*, 901 F.3d at 718

("[W]e reverse the judgment of the district court and conditionally grant *Robinson*'s petition for a writ of habeas corpus, as it pertains to his Sixth Amendment sentencing claim. We remand this case to the district court with instructions to remand to the state sentencing court for sentencing proceedings consistent with this opinion and the Constitution. The district court shall grant a writ of habeas corpus unless the state initiates, within 180 days, such sentencing proceedings.").

# V.

**APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO REQUEST A "*CROSBY* REMAND" AS THE REMEDY FOR HIS CLAIM THAT THE TRIAL COURT FOUND FACTS TO SCORE OV 14 TO INCREASE PETITIONER'S MANDATORY MINIMUM SENTENCE.**

A defendant "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel." *Smith v. Robbins*, 528 U.S. 259, 285, 289; 120 S.Ct. 746; 145 L.Ed.2d 756 (2000). Under *Strickland*, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984).

In this case, appellate counsel raised Habeas Claim IV on appeal. That is, he argued that the trial court found facts not found by the jury (that Petitioner was a leader in a multiple-offender situation) that were used to score OV 14, which increased Petitioner's mandatory minimum sentencing guidelines range, in violation of the Sixth Amendment. But appellate counsel failed to request the relief appropriate to such a claim under Michigan law, *i.e.*, a so-called "*Crosby* Remand." *See People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502

(2015)(adopting the remand procedure set forth in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), as the proper remedy for such violations).

Appellate counsel's failure to request the remedy appropriate to the *Alleyne*/*Lockridge* claim he raised was objectively unreasonable because the Michigan Court Rules clearly require an appellate brief to include the specific relief requested. *See* Mich. Ct. Rule 7.212(C)(8)("The appellant's brief **must** contain . . . The relief, stating in a distinct, concluding section the order or judgment requested")(emphasis added).

If appellate counsel was ignorant of this clear, unambiguous, and fundamental legal briefing requirement, this ignorance, combined with his failure to perform basic legal research to become aware of this requirement, was itself objectively unreasonable. *See Hinton v. Alabama*, 571 U.S. 263, 274; 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014)("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."); *Kimmelman v. Morrison*, 477 U.S. 365, 385; 106 S.Ct. 2574; 91 L.Ed.2d 305 (1986)(finding counsel's performance objectively unreasonable because it "betray[ed] a startling ignorance of the law").

The unreasonableness of appellate counsel's failure to request a *Crosby* remand is further illustrated by the fact that the prosecution itself admitted that

Petitioner was entitled to a *Crosby* remand in its brief on appeal in the Michigan Court of Appeals.

But for counsel's unreasonable failure to request a *Crosby* remand, there is a reasonable probability that the outcome of the appeal would have been different. The Michigan Court of Appeals explicitly rejected Petitioner's *Alleyne*/*Lockridge* claim regarding OV 14 because appellate counsel failed to request a *Crosby* remand. *See People v. Lafayette Deshawn Upshaw*, Mich. Ct. App. No. 325195, slip op., p.10 ("Although Upshaw alludes to our Supreme Court's ruling in *People v Lockridge*, [*supra*], he ultimately does not contend that he is entitled to a *Crosby* remand under *Lockridge*.").

Further, as mentioned above, the prosecution conceded error on this claim in its brief on appeal, which further increases the "reasonable probability" that, had appellate counsel requested the proper relief, it would have been granted.

Given that the Sixth Amendment was violated by the scoring of OV 14, as shown in Habeas Claim IV, above, given also that the prosecution conceded this error in its brief in the Michigan Court of Appeals, and given that the Michigan Court of Appeals refused to grant relief on that claim merely because appellate counsel failed to request the proper relief, had counsel requested the proper relief, there is a "reasonable probability" that the Michigan Court of Appeals would have granted it. *See Strickland*, 466 U.S. at 695 ("The assessment of prejudice should

proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.").

Therefore, counsel's failure to request a *Crosby* remand for the OV 14 *Alleyne*/*Lockridge* error was objectively unreasonable and, but for that unreasonable performance, there is a reasonable probability that the outcome of the appeal would have been different. Thus, appellate counsel was constitutionally ineffective.

The state trial court's adjudication of this claim in denying Petitioner's motion for relief from judgment was contrary to or involved an unreasonable application of clearly-established Supreme Court precedent under Section 2254(d)(1). The state trial court rejected this claim by finding no merit in Petitioner's underlying *Alleyne*/*Lockridge* claim, *i.e.*, Habeas Claim IV, above. *See* Opinion of November 27, 2018, pp.5-6 ("[A]s *Lockridge* is wholly inapplicable to Defendant's case, this Court shall not impute the ineffective assistance of counsel to appellate counsel . . ."). The Sixth Circuit held that a Michigan court's rejection of an identical *Alleyne*/*Lockridge* claim contravened Section 2254(d)(1). *Robinson v. Woods*, 901 F.3d 710, 712 (6th Cir. 2018). Therefore, the state court's rejection of Petitioner's ineffective-assistance-of-appellate-counsel claim by finding no merit in Petitioner's *Alleyne*/*Lockridge* claim necessarily contravenes Section 2254(d)(1).

75

Accordingly, appellate counsel was constitutionally ineffective, and Petitioner is entitled to habeas relief.

## VI.

**THE TRIAL COURT FOUND FACTS THAT WERE NOT FOUND BY THE JURY TO SCORE OFFENSE VARIABLES 1, 4, AND 9, WHICH INCREASED THE MANDATORY MINIMUM SENTENCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS, AND APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM ON DIRECT APPEAL.**

"The Supreme Court has interpreted the Sixth Amendment's jury guarantee to mean that '[a]ny fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt.'" *Robinson v. Woods*, 901 F.3d 710, 712 (6th Cir. 2018)(quoting *Alleyne v. United States*, 570 U.S. 99, 103, 133 S.Ct. 2151, 186 L.Ed.2d 134 (2013)).

In *Robinson*, the Sixth Circuit held that Michigan's sentencing guidelines scheme falls within the ambit of *Alleyne*. Specifically, the Sixth Circuit held that *Alleyne* "clearly established" under 28 U.S.C. § 2254(d)(1) that a Michigan sentencing judge violates the Sixth Amendment by finding facts not found by the jury to score "offense variables" (OVs) that increase a criminal defendant's sentencing guidelines range. *Robinson*, 901 F.3d at 716-717.

The *Robinson* court further held that, because *Alleyne* was decided on June 17, 2013, its holding clearly applies to all Michigan sentences that were imposed on or after June 17, 2013, until June 29, 2015, when the Michigan Supreme Court

held that Michigan's sentencing guidelines were thenceforth non-mandatory. *Robinson*, 901 F.3d at 714-717 (citing *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015)). *See also People v. Barnes*, 502 Mich. 265, 917 N.W.2d 577 (holding that *Lockridge*'s holding does not apply retroactively).

In this case, Petitioner was tried and sentenced in 2014, which was after *Alleyne* was decided and before Michigan's sentencing guidelines were rendered non-mandatory. Therefore, *Alleyne* clearly applies to Petitioner's sentence.

The state trial court scored OV 1 at 25 points, OV 4 at 10 points, and OV 9 at 10 points on the basis of facts found by the judge but not the jury, each of which, individually and combined, increased the mandatory minimum sentencing guidelines range, in violation of the Sixth Amendment, as clearly established in *Alleyne*, and therefore, each requires habeas relief. *Robinson*, 901 F.3d at 718.

## A.

### Judicial factfinding scored OV 1 at 25 points, increasing the mandatory minimum sentencing guidelines range.

The trial court scored OV 1 at 25 points for "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon". Mich. Comp. Laws § 777.31(1)(a). However, none of the offenses of which Petitioner was convicted (armed robbery, ccw, and felony-firearm) has any of those facts as an element the offense. Therefore, this was a fact found by the judge and not the jury.

Assuming, *arguendo*, that any points could be scored for OV 1 for facts found by the jury, the maximum that could possibly be scored is 15 points for "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon". Mich. Comp. Laws § 777.31(1)(c).[2]

---

[2] However, the jury did not necessarily find the facts required to score OV 1 at 15 points because none of the elements of the offenses of which Petitioner was convicted *requires* the jury to find that "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon". Mich. Comp. Laws § 777.31(1)(c). A conviction for armed robbery is the only one of Petitioner's convictions that comes close. But it requires only a finding that the defendant "use[d] force or violence against any person who is present, *or* . . . assault[ed] *or* put[] the person in fear . . .", Mich. Comp. Laws § 750.530(1)(emphasis added), and "possess[ed] a dangerous weapon *or* an article used or fashioned in a manner

Therefore, at least 10 points too many was scored on OV 1. Without those ten points, Petitioner's total OV score was 51 points, and his total PRV score was 50 points. ST 11/14/14, 7-8. That correlates to a mandatory minimum guidelines range of 126 to 210 months. Mich. Comp. Laws § 777.62. With the additional ten points for OV 1 that was scored by judicial factfinding, Petitioner's total OV score was 61 points, which increased the mandatory minimum guidelines range to 135 to 225 months.

Petitioner was sentenced within the mandatory minimum range set by judicial factfinding to a minimum term of 18 years (216 months), which is above the guidelines range that applied without the judicial factfinding on OV 1.

---

to lead any person present to reasonably believe the article is a dangerous weapon, *or* who represent[ed] orally or otherwise that he or she [wa]s in *possession* of a dangerous weapon." Mich. Comp. Laws § 750.529 (emphasis added).

The jury in this case certainly *could* have found, based on the evidence presented, that "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon" based on one of the disjunctive elements of armed robbery. But, under the Sixth Amendment, that is not enough. Under the Sixth Amendment, "[j]uries *must* find *any* facts that increase either the statutory maximum or minimum . . ." *Alleyne*, 570 U.S. at n. 2 (emphasis added). It simply cannot be said that the jury in this case "must" have found the facts necessary to score OV 1 at 15 points.

The same is true of scoring OV 1 at 5 points for "a weapon was displayed or implied", Mich. Comp. Laws § 777.31(1)(e), because, armed robbery and ccw only *require* a finding that a weapon was "possessed". Mich. Comp. Laws § 750.529.

Therefore, under the facts that *must* have been found by the jury, only zero points could have been scored for OV 1.

Therefore, as in *Robinson*, the Sixth Amendment was violated and Petitioner is entitled to habeas relief. *See Robinson*, 901 F.3d at 718.

## B.

### Judicial factfinding scored OV 4 at 10 points, increasing the mandatory minimum sentencing guidelines range.

The trial court scored OV 4 at 10 points for "[s]erious psychological injury requiring professional treatment occurred to a victim". Mich. Comp. Laws § 777.34(1)(A). However, none of the offenses of which Petitioner was convicted (armed robbery, ccw, and felony-firearm) has that fact as an element the offense. The only other option for scoring OV 4 is zero points.

Without those ten points for OV 4, Petitioner's total OV score was 51 points, and his total PRV score was 50 points. ST 11/14/14, 7-8. That correlates to a mandatory minimum guidelines range of 126 to 210 months. Mich. Comp. Laws § 777.62. With the additional ten points for OV 4 scored by judicial factfinding, Petitioner's total OV score was 61 points, which increased the mandatory minimum guidelines range to 135 to 225 months.

Petitioner was sentenced within the mandatory minimum range set by judicial factfinding to a minimum term of 18 years (216 months), which is above the guidelines range that applied without the judicial factfinding on OV 4.

Therefore, as in *Robinson*, the Sixth Amendment was violated and Petitioner is entitled to habeas relief. *See Robinson*, 901 F.3d at 718.

## C.

**Judicial factfinding scored OV 9 at 10 points, increasing the mandatory minimum sentencing guidelines range.**

The trial court scored OV 9 at 10 points for "2 to 9 victims were placed in danger of injury or loss of life". Mich. Comp. Laws § 777.39(1)(c). However, none of the offenses of which Petitioner was convicted (armed robbery, ccw, and felony-firearm) has that fact as an element the offense.

Without those ten points for OV 9, Petitioner's total OV score was 51 points, and his total PRV score was 50 points. ST 11/14/14, 7-8. That correlates to a mandatory minimum guidelines range of 126 to 210 months. Mich. Comp. Laws § 777.62. With the additional ten points for OV 9 scored by judicial factfinding, Petitioner's total OV score was 61 points, which increased the mandatory minimum guidelines range to 135 to 225 months.

Petitioner was sentenced within the mandatory minimum range set by judicial factfinding to a minimum term of 18 years (216 months), which is above the guidelines range that applied without the judicial factfinding on OV 4.

Therefore, as in *Robinson*, the Sixth Amendment was violated and Petitioner is entitled to habeas relief. *See Robinson*, 901 F.3d at 718.

## D.

## Appellate counsel was constitutionally ineffective for failing to raise this claim on appeal.

A defendant "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel." *Smith v. Robbins*, 528 U.S. 259, 285, 289; 120 S.Ct. 746; 145 L.Ed.2d 756 (2000). Under *Strickland*, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984).

Appellate counsel was objectively unreasonable for failing to argue that OVs 1, 4, and 9 were scored by judicial factfinding in violation of the Sixth Amendment under *Alleyne* and *Lockridge*. Counsel's unreasonableness in this respect is clearly demonstrated by the fact that counsel did raise just such an *Alleyne*/*Lockridge* claim with respect to OV 14 (*see* Habeas Claims IV, above), which is materially indistinguishable from Petitioner's *Alleyne*/*Lockridge* claim with respect to OVs 1, 4, and 9. All these claims identically argue that the sentencing judge found facts that were not found by the jury to score OVs that each increased Petitioner's total OV score by 10 points, each resulting in an increase in the mandatory sentencing

guidelines range. There was simply no reasonable basis for counsel to raise the claim with respect to OV 14 but not with respect to OVs 1, 4, and 9. Counsel was also objectively unreasonable for failing to request a "*Crosby* remand" with respect to OV 14. *See* Habeas Claim V, above, which Petitioner hereby fully adopts and incorporates by reference.

But for counsel's unreasonable performance -- his failure to raise an *Alleyne*/*Lockridge* claim with respect to OVs 1, 4, and 9, and his failure to request a *Crosby* remand on that claim -- there is a reasonable probability that the outcome of the appeal would have been different for the reasons set forth in Habeas Claim V, above, which Petitioner hereby fully adopts and incorporates by reference.

Therefore, appellate counsel was constitutionally ineffective for failing to raise the *Alleyne*/*Lockridge* claims regarding OVs 1, 4, and 9, and for failing to request a *Crosby* remand with respect to those claims.

**E.**

**The state court's ruling on this claim is contrary to or involves an unreasonable application of clearly-established Supreme Court precedent under 28 U.S.C. § 2254(d)(1).**

The state trial court rejected this claim by saying that "as *Lockridge* is wholly inapplicable to Defendant's case, this Court shall not impute the ineffective assistance of counsel to appellate counsel for the apparent failure to file a meritless motion. . . . Counsel is not required to raise frivolous or meritless arguments." Opinion of November 27, 2018, pp.5-6.

The Sixth Circuit held that a Michigan court's rejection of a materially identical *Alleyne/Lockridge* claim was contrary to or involved an unreasonable application of clearly-established Supreme Court precedent under Section 2254(d)(1). *Robinson v. Woods*, 901 F.3d 710, 712 (6th Cir. 2018). Therefore, the state court's finding in this case that Petitioner's materially identical claim regarding OVs 1, 4, and 9, has no merit, and thus that appellate counsel was not constitutionally ineffective for failing to raise it, is likewise contrary to or involves an unreasonable application of clearly-established Supreme Court precedent under Section 2254(d)(1).

Accordingly, just as in *Robinson*, Petitioner is entitled to habeas relief. *See Robinson*, 901 F.3d at 718 ("[W]e reverse the judgment of the district court and

conditionally grant *Robinson*'s petition for a writ of habeas corpus, as it pertains to his Sixth Amendment sentencing claim. We remand this case to the district court with instructions to remand to the state sentencing court for sentencing proceedings consistent with this opinion and the Constitution. The district court shall grant a writ of habeas corpus unless the state initiates, within 180 days, such sentencing proceedings.").

## VII.

## TRIAL AND APPELLATE COUNSEL WERE CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO ARGUE THAT PRIOR RECORD VARIABLE 5 WAS MISSCORED.

To demonstrate that counsel was constitutionally ineffective, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984).

The same standard applies to a claim that appellate counsel was constitutionally ineffective for failing to raise a particular claim on appeal. *Smith v. Robbins*, 528 U.S. 259, 285, 289; 120 S.Ct. 746; 145 L.Ed.2d 756 (2000).

"[A]ppellate counsel who files a merits brief need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745; 103 S.Ct. 3308; 77 L.Ed.2d 987 (1983)).

"Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim . . . when ignored issues are clearly stronger than those presented". *Robbins*, 528 U.S. at 288. *See also Davila v. Davis*,

___ U.S. ___; 137 S.Ct. 2058; 197 L.Ed.2d 1 (2017)("Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court.").

In this case, trial counsel failed to object to the scoring of Prior Record Variable (PRV) 5, and appellate counsel failed to raise the issue on appeal. ST 11/14/14, 7. This was objectively unreasonable because PRV 5 was clearly misscored. PRV5 is scored for "prior misdemeanor convictions or prior misdemeanor juvenile adjudications." Mich. Comp. Laws § 777.55(1). Ten points is scored for PRV 5 when "the offender has 3 or 4 prior misdemeanor convictions or prior misdemeanor juvenile adjudications". Mich. Comp. Laws § 777.55(1)(e). Five points is scored when the offender has two prior misdemeanor convictions or prior misdemeanor juvenile adjudications. Mich. Comp. Laws § 777.55(1)(d).

However, only certain types of misdemeanors may be counted under PRV 5, those that are "an offense against a person or property, a controlled substance offense, or a weapon offense." Mich. Comp. Laws § 777.55(2)(a). Petitioner has three misdemeanors, but only two of them satisfy the above definition. According to Petitioner's Presentence Investigation Report (PSIR), which is presumed to be accurate under Michigan law, *People v. Maben*, 313 Mich. App. 545, 553-554; 884 N.W.2d 314 (2015), Petitioner has prior misdemeanor convictions for operating without a license entered on January 23, 2009, possession of marijuana entered on

December 19, 2009, and possession of marijuana entered on June 2, 2014. The first of these is a traffic offense and therefore, according to the plain language of Mich. Comp. Laws § 777.55(2)(a), cannot be counted under PRV 5.

Correctly scoring PRV 5 at 5 points, instead of 10 points, reduces Petitioner's total PRV score from 50 to 45 points. This reduces Petitioner's PRV level from E to D, which decreases the sentencing guidelines range from the range he was sentenced under, 135 to 225 months, to 126 to 210 months. Mich. Comp. Laws § 777.62.

Trial and appellate counsel were objectively unreasonable for failing to argue that PRV 5 was wrongly scored at 10 points. As shown above, it is clear from a plain reading of the statute governing the scoring of PRV 5 and a plain reading of Petitioner's PSIR that Petitioner should have been scored only 5 points for PRV 5. If counsel were ignorant of this clear statutory requirement and failed to perform basic legal research to cure themselves of this ignorance by simply reading the statute, they were objectively unreasonable for that reason alone. *See Hinton v. Alabama*, 571 U.S. 263, 274; 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014)("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."); *Kimmelman v. Morrison*, 477 U.S. 365, 385; 106 S.Ct. 2574; 91 L.Ed.2d 305 (1986)(finding counsel's

performance objectively unreasonable because it "betray[ed] a startling ignorance of the law").

If counsel were ignorant of the facts of Petitioner's prior criminal history, as clearly set forth in his PSIR, they were objectively unreasonable for failing to read his PSIR. *See Wiggins v. Smith*, 539 U.S. 510, 527-528, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(finding counsel constitutionally ineffective -- and the state court's ruling to the contrary unreasonable under § 2254(d) -- where counsel failed to review the defendant's own case file in preparation for sentencing); *Rompilla v. Beard*, 545 U.S. 374, 388, 125 S Ct 2456, 162 L Ed 2d 259 (2005)(same).

Simply put, a reasonable attorney would have objected at sentencing and raised this issue on appeal because it is an obvious issue and it would have significantly reduced Petitioner's mandatory minimum sentencing guidelines range.

Therefore, counsel was objectively unreasonable for failing to raise this claim.

But for counsels' unreasonable performance, there is a reasonable probability that the outcome of the sentencing proceeding and the direct appeal would have been different. The trial court sentenced Petitioner to a 216-month minimum term under the belief that the applicable mandatory sentencing guidelines range was 135 to 225 months with PRV 5 scored at 10 points. ST 11/14/14, 9. At the time of Petitioner's sentencing in 2014, "Michigan's sentencing guidelines were mandatory

91

. . ." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018)(citing Mich. Comp. Laws § 769.34(2)-(3)). *See also People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015).

Had counsel objected to the scoring of PRV at 10 points, there is a reasonable probability that the court would have sustained the objection, given that the plain language of the statute allowed only 5 points, as shown above. *See Strickland*, 466 US at 695 ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency.").

And with PRV 5 scored at only 5 points, Petitioner's total PRV score would have been 45 points. ST 11/14/14, 7. Assuming the same OV score that was used at sentencing of 61 points, Petitioner's sentencing guidelines then would have been 126 to 210 months (instead of 135 to 225 months), which is at least six months below the actual 216-month sentence imposed. Mich. Comp. Laws § 777.62; ST 1/14/14, 8. Given that the sentencing guidelines were mandatory at the time, there is a reasonable probability that the sentencing judge would have imposed a sentence within the guidelines range of 126 to 210 months, that is, a sentence at least six months shorter than it did impose.

Therefore, but for counsel's unreasonable performance, there is at least a "reasonable probability" that the outcome of the sentencing would have been different. *See Missouri v. Frye*, 566 U.S. 134, 147, 132 S.Ct. 1399, 1882 L.Ed.2d 398 (2012)(holding that "'any amount of additional jail time has Sixth Amendment significance" and therefore satisfies the prejudice prong of an ineffective-assistance-of-counsel claim)(internal quotation marks and brackets omitted).

Likewise, but for appellate counsel's failure to raise the claim on appeal, there is a reasonable probability that the outcome of the appeal would have been different because, under Michigan law, resentencing is required where a sentencing guidelines scoring error results in the defendant being sentenced pursuant to an incorrect sentencing guidelines range and the sentencing judge did not indicate he would have imposed he same sentence regardless of the sentencing guidelines range. *See People v Francisco*, 474 Mich 82; 177 NW2d 44 (2006); Sentencing Transcript 11/14/14, 11-12.

Accordingly, trial and appellate counsel were constitutionally ineffective for failing to raise the issue that PRV 5 was improperly scored at 10 points.

Petitioner raised this claim for the first time in his motion for relief from judgment under Mich. Ct. Rule 6.500. The state trial court, which issued the last reasoned opinion disposing of this claim, first held that trial counsel *did* object to the scoring of PRV 5. Opinion of November 27, 2018, pp.3-4. This adjudication is

an unreasonable determination of the facts in light of the evidence presented to the state court under Section 2254(d)(2).

Page 7 of the sentencing transcript clearly shows that trial counsel did not object to the scoring of PRV 5. *See* ST 11/14/14, 7.

> MS. TOWNS [Prosecutor]: PRV 5 should then be 10 because he does have four prior misdemeanor convictions that should have been scored at OV 5, I'm sorry, PRV 5.

> THE COURT: Any objection?

> MR. BLAKE [Defense counsel]: No, your Honor.

> THE COURT: I'll score it at 10 points.

The state court cited page 4 of the transcript for its finding that trial counsel objected to the scoring of PRV 5. But on page 4 of the transcript, trial counsel objected to the scoring of PRV 3 (prior high severity juvenile adjudications), not PRV 5 (prior misdemeanor convictions/juvenile adjudications). Opinion November 27, 2018, p.4.

Thus, the state court's factual finding that counsel objected to PRV 5's scoring at 10 points is clearly contradicted by the trial court record and thus an unreasonable determination of the facts under Section 2254(d)(2). *See Brumfield v. Cain*, 576 U.S. 305, 135 S.Ct. 2269, 192 L.Ed.2d 356 (2015)(finding a state court's factual findings unreasonable under Section 2254(d)(2), where they were clearly contradicted by the record).

In addition, the state court rejected this claim by saying that Petitioner could not show *Strickland* prejudice from counsel's failure to object to the misscoring of PRV 5 because PRV 3 should have been scored at 50 points instead of 25 points, which would have kept Petitioner in the same sentencing guidelines range regardless of the misscoring of PRV 5. Opinion of November 27, 2018, pp.3-4. This is contrary to or involves an unreasonable application of clearly-established Supreme Court precedent under Section 2254(d)(1) because the Supreme Court clearly held that counsel is ineffective where (1) his performance is unreasonable and (2) "there is a reasonable probability that, ***but for counsel's unprofessional errors***, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694 (emphasis added). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.*, at 694. "Some of the factual findings will have been unaffected by [counsel's] errors . . . . ***taking the unaffected findings as a given***, . . . a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 695-696 (emphasis added).

95

Contrary to *Strickland*, the trial court in this case did not take as a given the factual findings that were unaffected by counsel's error. Instead, the state court made new factual findings on PRV 3, even though PRV 3 was not affected by counsel's error in failing to object to PRV 5. This is contrary to *Strickland* because the Supreme Court clearly held in *Strickland* that the factual findings that are unaffected by counsel's errors must be taken "as a given." *Strickland*, 466 U.S. at 696.

Even assuming, *arguendo*, that the state court properly reassessed the scoring of PRV 3 in assessing *Strickland* prejudice, the state court's determination that PRV 3 should have been scored at 50 instead of 25 points in assessing *Strickland* prejudice is an unreasonable application of *Strickland* in another way. *Strickland* clearly held that "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 U.S. at 695. Had the sentencing court been "reasonably, conscientiously, and impartially applying the standards that govern the decision," it could not have scored PRV 3 at 50 points because the plain language of PRV 3 does not permit at 50-point score given the undisputed facts of this case.

The state court said that PRV 3 should have been scored at 50 points because Petitioner had four prior high-severity juvenile adjudications. Mich.

Comp. Laws § 777.53(1)(b). But the statute governing PRV 3, by its own terms, only allows the counting of Class M2, A, B, C, or D offenses or unclassified offenses punishable by a maximum term of imprisonment of 10 years or more, Mich. Comp. Laws § 777.53(2), and the state court counted two convictions for felony-firearm, which is an unclassified offense punishable by imprisonment for only 2 years. Mich. Comp. Laws § 750.227b. Therefore, those two convictions cannot be counted for PRV 3.

Petitioner is entitled to habeas relief. Trial and appellate counsel were constitutionally ineffective for failing to argue that PRV 5 should have been scored at 5, instead of 10, points, and the state court's adjudication of this claim involves an unreasonable determination of the facts under Section 2254(d)(2) and/or is contrary to or involves an unreasonable application of clearly-established Supreme Court precedent under Section 2254(d)(1).

**RELIEF REQUESTED**

Petitioner asks this Honorable Court to grant the writ of habeas corpus, grant an evidentiary hearing on Petitioner's claims, and grant such other and further relief as justice may require.

Respectfully submitted,

LAW OFFICES OF DAVID L. MOFFITT & ASSOCIATES, PLLC

/s/David L. Moffitt

_____/

By: David L. Moffitt (P30716)
30800 Telegraph Rd., Ste. 1705
Bingham Farms, MI 48025
248.644.0880
dlmoffittassoc@ameritech.net
Attorney for Petitioner
Lafayette Deshawn Upshaw

Dated: September 18, 2020

98

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that on September 18, 2020, he electronically filed the foregoing instrument with the Clerk of the Court using the ECF system, which will send notification of such filing to the ECF participants.

/s/David L. Moffitt

_____/

By: David L. Moffitt (P30716)