UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAFAYETTE DESHAWN UPSHAW,

 Petitioner,      CASE NO. 20-12560

v.          HON. LINDA V. PARKER

O'BELL WINN, Warden,   MAG. JUDGE PATRICIA T. MORRIS

 Respondent.

_____

**ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

Introduction ........................................................................................ 1

    Statements in Compliance with Habeas Rule 5(b) ......................... 4

      A.    Statute of Limitations ................................................... 4

      B.    Exhaustion .................................................................. 4

      C.    Procedural Default ....................................................... 4

      D.    Non-retroactivity Doctrine .......................................... 4

Statement of the Case ....................................................................... 5

      A.    Trial Facts ................................................................... 5

      B.    Procedural History ....................................................... 8

Standard of Review Pursuant to AEDPA ...................................... 12

Argument ......................................................................................... 17

I.     Upshaw's claims related to his alibi witnesses are meritless.
       The state appellate court reasonably determined that
       counsel was not ineffective and that the trial court did not
       deny Upshaw due process by refusing to grant an
       adjournment ........................................................................ 17

      A.    Review of Upshaw's ineffective-assistance claim is
           doubly deferential. ................................................... 17

      B.    The state court's decision was not contrary to or an
           unreasonable application of clearly established federal
           law. .......................................................................... 22

      C.    Upshaw was not denied due process when the trial
           court denied an adjournment request. ....................... 30

II.    Upshaw's *Batson* claim is meritless, and the Michigan Court
       of Appeals' decision denying relief was not contrary to or an
       unreasonable application of clearly established federal law......... 31

       A.    Clearly established law regarding *Batson* claims. ............... 33

       B.    The state court reasonably determined that Upshaw
             did not make a prima facie case of discrimination. ............. 35

       C.    Even if the prima-facie step is moot, Upshaw failed to
             show that the prosecutor's challenges were
             discriminatory. ........................................................................ 42

III.   Upshaw's judicial-factfinding claim with respect to offense
       variable 14 is technically exhausted but procedurally
       defaulted, and appellate counsel was not ineffective for
       failing to request an inapplicable remedy. ..................................... 45

IV.    Upshaw is entitled to partial habeas relief on his judicial
       factfinding claim with respect to offense variables 1, 4, and
       9. ........................................................................................................ 51

       A.    Under *Robinson v. Woods* and *Chase v. MaCauley*,
             Upshaw is entitled to habeas relief on his judicial-
             factfinding claim. .................................................................... 51

       B.    Upshaw is not entitled to a full resentencing. ..................... 54

V.     Upshaw's ineffective-assistance-of-trial-counsel claim with
       respect to prior record variable 5 is procedurally defaulted
       and meritless, and his ineffective-assistance-of-appellate-
       counsel claim is meritless. ............................................................... 62

       A.    Upshaw's ineffective-assistance-of-trial-counsel claim
             is procedurally defaulted. ...................................................... 62

       B.    Both of Upshaw's ineffective-assistance claims are
             meritless. .................................................................................. 67

Conclusion ..................................................................................................... 70

Relief ................................................................................................... 75

Certificate of Service ........................................................................... 76

## INTRODUCTION

Petitioner, Lafayette Deshawn Upshaw, terrorized a gas station. Using a cohort as a distraction, Upshaw first robbed a customer, then he demanded money from the cashier, Tina Williams.  When Williams did not comply, Upshaw fired six shots from a gun at her—luckily, the bullet-proof glass that she was behind prevented the bullets from striking her.  Upshaw also tried to break down a door to get to Williams, but he was unsuccessful and ran away.

As a result of his Wayne County jury-based convictions of armed robbery, Mich. Comp. Laws § 750.529, carrying a concealed weapon with unlawful intent, § 750.226, and possessing a firearm while committing a felony (felony firearm), § 750.227b, the State now holds Upshaw in custody in the Michigan Department of Corrections. Upshaw is currently serving a sentence of 18 to 40 years' imprisonment for his armed-robbery conviction and 1 to 5 years for his carrying-with-unlawful-intent conviction, which are being served concurrent to each other but consecutive to a 2-year term for his felony-firearm conviction.[1]

---

[1] In a separate case arising out of conduct that occurred on the same day, Upshaw was convicted of second-degree home invasion and

Upshaw commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court.  The State understands the petition to be raising the following claims:

I.      Trial counsel was constitutionally ineffective for failing to investigate potential alibi witnesses and failing to file an alibi notice, even though this would have been consistent with his own defense.

II.     The trial court denied petitioner's motion for a brief adjournment so that newly retained counsel could become prepared for trial, in violation of due process.

III.    The prosecutor dismissed African-American potential jurors in a discriminatory manner, in violation of the equal protection clause of the Constitution.

IV.     The trial court found facts that were not found by the jury to score offense variable 14, which increased the mandatory minimum sentence, in violation of the Sixth and Fourteenth Amendments.

V.      Appellate counsel was constitutionally ineffective for failing to request a "*Crosby* remand" as the remedy for his claim that the trial court found facts to score OV 14 to increase petitioner's mandatory minimum sentence.

VI.     The trial court found facts that were not found by the jury to score offense variables 1, 4, and 9, which increased the mandatory minimum sentence, in violation of the Sixth and Fourteenth Amendments, and appellate counsel was constitutionally ineffective for failing to raise this claim on direct appeal.

---

sentenced to 1 to 15 years' imprisonment.  Upshaw does not challenge that conviction in this petition.

VII. Trial and appellate counsel were constitutionally ineffective for failing to argue that prior record variable 5 was misscored.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading. To the extent that Upshaw failed to raise any other claims that he raised in the state courts, those claims are now abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief). Habeas review of abandoned claims is barred.

The State now answers the petition and requests that it be denied.

## STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

The State is not arguing that any of Upshaw's habeas claims are barred by the statute of limitations.

### B.    Exhaustion

The State is not arguing that consideration of any of Upshaw's habeas claims is barred by the failure to exhaust a claim for which a state court remedy *still* exists.

### C.    Procedural Default

The State asserts that Upshaw has procedurally defaulted claims IV and VII as more fully discussed below.

### D.    Non-retroactivity Doctrine

The State is not arguing that consideration of any of Upshaw's claims is barred by the non-retroactivity doctrine.

## STATEMENT OF THE CASE

### A.    Trial Facts

The Michigan Court of Appeals accurately summarized the facts

adduced at trial as follows:

> This case stems from the armed robbery of a gas
> station. In that business establishment, the cashier's work
> station was enclosed by a wall that had bullet proof glass
> built into it and a door, which the cashier could utilize to
> access the customer area of the gas station. Walker entered
> the gas station around 3:30 a.m. on May 28, 2014, and asked
> the cashier for help locating the coffee machine. The cashier
> testified that Walker was behaving strangely and that he did
> not go straight to the coffee machine when she pointed to its
> location; instead, Walker circled around some coolers and
> then made his way to the coffee machine. According to the
> cashier, Walker then just stood at the coffee machine, so the
> cashier opened her access door, stepped out into the
> customer area, and asked Walker if he needed assistance.
> Walker stood there silently, and the cashier explained to him
> how to use the coffee machine. She then went back to her
> work station, closing and locking the access door behind her.
>
> The cashier testified that two women were also in the
> gas station at the time and that one of them came up to the
> counter, as Walker remained at the coffee machine. The
> cashier next heard a man's voice demanding money. The
> man, later identified as Upshaw, robbed the female
> customer, who proceeded to run and hide behind some
> shelving. Upshaw then turned his attention to the cashier,
> yelling at her to give him the money from the cash register,
> but she did not comply. During the next few moments,
> Upshaw discharged his firearm six times in the direction of
> the cashier and the enclosure and tried to knock and kick
> open the access door. The cashier was shielded by the bullet

proof glass, and Upshaw was unsuccessful in his attempt to break into the cashier's work station. The cashier noticed that during this intense altercation, Walker remained standing at the coffee machine. She further observed that when Upshaw pointed his gun in Walker's general direction, Walker did not run. The cashier testified that Walker shouted at her to open the access door, indicating that the cashier should do so in order to simply end the situation and get Upshaw out of the gas station. The cashier, however, stood her ground and did not comply. Upshaw gave up and ran out of the gas station. Walker then ran up to the counter, told the cashier that she needed to call the police, and then fled in the same direction as the shooter.

A few hours later, Walker and Upshaw were arrested in the process of committing a home invasion at a residence in Detroit. The pair were caught as they exited separate windows of the house. Walker and Upshaw had attempted to steal several items of jewelry. The cashier later identified both Walker and Upshaw in separate photographic lineups, indicating that Walker had been the man standing at the coffee machine and that Upshaw had been the person who brandished and discharged the firearm in the gas station. The gas station's surveillance cameras produced footage of the armed robbery, which was displayed to the jury. Defendants were charged with the armed robbery and related crimes, but were not charged in these proceedings with the home invasion offense. Evidence of defendants' participation in the home invasion, however, was presented at trial. At the trial, Walker's defense was that he had merely been present at the gas station during the armed robbery and thus was not guilty as an aider and abettor, while Upshaw's defense challenged the evidence placing him at the gas station during the armed robbery.

*People v. Walker*, No. 325195, 2016 WL 2942215, at *1–2 (Mich. Ct. App. May 19, 2016).[2]  This recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Upshaw has not demonstrated through clear and convincing evidence that this summary is incorrect.

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981)).

The State opposes any factual assertions made by Upshaw that are not directly supported by—or consistent with—the state court record, because Upshaw has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

---

[2] Upshaw and his codefendant, Darrell Miles Walker, were tried together.  Walker was also convicted of armed robbery.  The Michigan Court of Appeals consolidated the appeals.  Walker's convictions were also affirmed, and this Court later denied habeas relief.  *Walker v. Warren*, No. 18-11805, 2020 WL 2320140, at *1, *5 (E.D. Mich. May 11, 2020).

**B.    Procedural History**

Upshaw was convicted of armed robbery, carrying a concealed weapon with unlawful intent, and felony firearm.  The trial court sentenced him to 20 to 42 years in prison.

Following his conviction and sentence, Upshaw, assisted by appointed counsel, filed a claim of appeal in the Michigan Court of Appeals, which raised the following claims:

I.    The trial court abused its discretion in granting the prosecutor's motion to endorse a key witness on the second day of trial over appellant's timely objection.

II.   The trial court denied appellant a fair trial by admitting irrelevant and unduly prejudicial testimony that he refused to participate in a lineup.

III.  Appellant was denied his Sixth Amendment right to the effective assistance of counsel where his trial attorney failed to investigate potential alibi witnesses, and failed to file the required notice of intent to present an alibi defense and present the alibi witnesses, which would have been consistent with the defense theory at trial that appellant was misidentified as the perpetrator of the offenses.

Upshaw then retained new counsel and filed a supplemental brief, which raised the following claims:

I.    The trial court abused its discretion when it denied appellant's request for a brief adjournment of trial so that newly retained trial counsel could become prepared.

8

II.   Mr. Upshaw was denied a fair trial and due process of law where the prosecutor improperly dismissed minority venire members; the prosecutor's race-neutral reasons were insufficient to avoid a finding of purposeful discrimination in the exercise of peremptory challenges.  Further, the trial court's ruling essentially required that the defense show a pattern of purposeful discrimination, a standard contrary to the law, and, where the defense did show a pattern, nevertheless denied the *Batson* challenge.

III.  The trial court's scoring of ten points for offense variable 14 (offender's role) was error which placed Mr. Upshaw in a higher grid than supported by the record.  Further, the resulting imposed minimum sentence constituted an unsupported departure from the guidelines' range, an abuse of discretion, and an unreasonable sentence on inaccurate information necessitating resentencing.

The Michigan Court of Appeals affirmed Upshaw's convictions in an unpublished opinion.  *Walker*, 2016 WL 2942215, at *1, *10.

Upshaw subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims as in the Michigan Court of Appeals.  The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court.  *People v. Upshaw*, 891 N.W.2d 487 (Mich. 2017) (unpublished table decision).  That court also denied Upshaw's motion for reconsideration.  *People v. Upshaw*, 895 N.W.2d 515 (Mich. 2017) (unpublished table decision).  Upshaw also filed a

9

petition for a writ of certiorari in the Supreme Court of the United

States, which was denied. *Upshaw v. Michigan*, 138 S. Ct. 422 (2017).

Upshaw returned to the trial court and filed a motion for relief

from judgment, which contained the following claims:

I.     Mr. Upshaw asserts he was denied his Sixth Amendment right to effective assistance of counsel at sentencing and direct appeal when trial attorney failed to object to the invalid inaccurate scoring of prior record variable (PRV) five—with the addition of appellate counsel further failing to raise the invalid sentence in Upshaw's direct appeal.

II.     Mr. Upshaw was denied his Sixth Amendment right to effective assistance of counsel when his appellate attorney failed to request a *Crosby* hearing in his direct appeal. Further, the Michigan Court of Appeals abused its discretion when it failed to issue a *Crosby* hearing when Mr. Upshaw was entitled to one.

III.     The Michigan sentencing guidelines violated Mr. Upshaw's Sixth Amendment fundamental right to a jury trial when his offense variables (OVs) 1, 4, and 9 were scored by "facts that were not admitted by him or found by a jury beyond a reasonable doubt" increasing his mandatory minimum sentencing. Thus, entitling him to a remand for a *Crosby* hearing. Further, the addition of appellate counsel's failure to raise this issue in Upshaw's direct appeal denied him his Sixth Amendment right to effective assistance of counsel.

IV.     The decision of the Michigan Court of Appeals' finding that defendant failed to establish a prima facie case of discrimination was an unreasonable application of Supreme Court precedent as set forth in *Batson* and its progeny. Further, the failure denied Upshaw his equal protection

10

clause of the Fourteenth Amendment when the appellate courts failed to rectify the trial court's errors.

The trial court denied the first three claims raised in the motion for relief from judgment on their merits, and it denied the motion in general because Upshaw did not meet the requirements outlined in Michigan Court Rule 6.508(D)(3)(a) and (D)(3)(b).  (11/27/18 Wayne Cir. Ct. Op. at 3–6.)

After the trial court denied the motion for relief from judgment, Upshaw filed an application for leave to appeal in the Michigan Court of Appeals.  The court denied the application for leave to appeal because Upshaw "failed to establish that the trial court erred in denying the motion for relief from judgment."  (7/22/19 Mich. Ct. App. Order.)

Upshaw applied for leave to appeal this decision in the Michigan Supreme Court, but he was also denied relief under Michigan Court Rule 6.508(D).  *People v. Upshaw*, 943 N.W.2d 135 (Mich. 2020) (unpublished table decision).

## STANDARD OF REVIEW PURSUANT TO AEDPA

Upshaw's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). AEDPA prevents a federal court from granting habeas corpus relief based on any claim "adjudicated on the merits" in state court, unless the petitioner can establish that the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), the petitioner must establish that "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Metrish v. Lancaster*, 569 U.S. 351, 357 n.2 (2013) (internal quotation marks and citation omitted).

Under the "unreasonable application" clause of § 2254(d)(1), the petitioner must establish that, after "identif[ying] the correct governing

legal principle from the Supreme Court's decisions, [the state court] unreasonably applie[d] that principle to the facts of [his] case." *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (alteration omitted). "[T]he state court's decision must have been more than incorrect or erroneous[;]" rather, it must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)). "[E]ven 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014). Again, the state court's determinations of law and fact must be "so lacking in justification" as to give rise to error "beyond any possibility for fairminded disagreement." *Dunn v. Madison*, 138 S. Ct. 9, 12 (2017) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Moreover, not just any Supreme Court decision will do under § 2254(d)(1). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (internal quotations and citations omitted). Where no Supreme Court case has confronted "the specific question presented" by the

13

habeas petitioner, "the state court's decision [cannot] be contrary to any holding from this Court." *Id.* at 317 (internal quotation marks and citation omitted). Moreover, the Supreme Court decision must have been on the books at "the time the state court render[ed] its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks and emphasis omitted); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted). As the Supreme Court has repeatedly pointed out, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Kernan v. Cuero*, 138 S. Ct. 4, 8 (2017) (per curiam) (quoting *Glebe v. Frost*, 574 U.S. 21, 23 (2014)) (per curiam). Likewise, neither do "state-court decisions, treatises, or law review articles" constitute clearly

14

established Federal law as determined by the Supreme Court. *Cuero*, 138 S. Ct. at 8.

And federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 63 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 574 U.S. 1, 6 (2014) (providing that absent a decision by the Supreme Court addressing "the specific question presented by [a] case" a federal court cannot reject a state court's assessment of claim).

Under § 2254(d)(2), the "unreasonable determination" subsection, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Wood v. Allen*, 558 U.S. 290, 293 (2010). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks and citation omitted).

15

The Supreme Court has also instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme Court of California's summary denial of Hinojosa's petition was therefore on the merits.").

Finally, Upshaw's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

I. **Upshaw's claims related to his alibi witnesses are meritless. The state appellate court reasonably determined that counsel was not ineffective and that the trial court did not deny Upshaw due process by refusing to grant an adjournment.**

In his first habeas claim, Upshaw argues that his trial counsel was ineffective for failing to investigate two alibi witnesses and present their testimony. He also argues, in his second habeas claim, that the trial court should have granted his request for an adjournment to allow counsel to investigate the alibi defense. But Upshaw presented flawed affidavits in the state court, and the witnesses' purported testimony would not have made a difference at trial. Therefore, counsel was not ineffective, and the trial court did not deny Upshaw due process. Because the state appellate court's determination was not contrary to or an unreasonable application of clearly established federal law, this Court should deny habeas relief.

## A. Review of Upshaw's ineffective-assistance claim is doubly deferential.

A claim of ineffective assistance of counsel is governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668

17

(1984).  "Surmounting *Strickland's* high bar is never an easy task."
*Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Even under *de novo*
review, the standard for judging counsel's representation is a most
deferential one."  *Richter*, 562 U.S. at 105.

To establish that he received ineffective assistance of counsel, a
petitioner must show, first, that counsel's performance was deficient
and, second, that he was prejudiced by counsel's action or inaction.
*Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (citing *Strickland,*
466 U.S. at 687–88).

Regarding the first *Strickland* prong, deficient performance,
review of counsel's performance is "highly deferential."  *Strickland*, 46
U.S. at 689.  "Because of the difficulties inherent in making the
evaluation, a court must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance."  *Id.*  "*Strickland* . . . calls for an inquiry into the objective
reasonableness of counsel's performance, not counsel's subjective state
of mind."  *Richter*, 562 U.S. at 110.

Further, the reviewing court is required not simply to give the
attorney the benefit of the doubt, but to affirmatively entertain the

range of possible reasons counsel may have had for proceeding as he did. *Pinholster*, 563 U.S. at 196. "Reliance on the harsh light of hindsight to cast doubt on a trial that took place . . . years ago is precisely what *Strickland* and AEDPA seek to prevent." *Richter*, 562 U.S. at 107 (quotations and citations omitted).

The second *Strickland* prong, prejudice, requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather " 'that they worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimension.' " *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The defendant must "affirmatively prove," not just allege, prejudice. *Strickland*, 466 U.S. at 693. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir.

19

2011) (quoting *Richter*, 562 U.S. at 112). *See further United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995) ("[A]ll that the Defendant urges is speculation, not a reasonable probability that the outcome would have been different. Accordingly, he cannot establish prejudice.").

To demonstrate prejudice in a case where a petitioner was convicted after a jury or bench trial, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

Because both prongs must be satisfied to establish ineffective assistance, if a petitioner cannot satisfy one prong, the other need not be considered. *Id.* at 697.

Additionally, on habeas review, review is even further limited because this Court must give deference to both the trial counsel and the state appellate court reviewing their performance. The Supreme Court has stressed that the "standards created by *Strickland* and § 2254(d)

20

are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted).  Thus, a state prisoner seeking a federal writ of habeas corpus on the ground that he was denied effective assistance of counsel "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002); *Durr v. Mitchell*, 487 F.3d 423, 435 (6th Cir. 2007).  On habeas review, the question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)) (internal quotation marks omitted).  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 556 U.S. at 123.

**B.    The state court's decision was not contrary to or an unreasonable application of clearly established federal law.**

Upshaw cannot show that counsel was ineffective, and he certainly cannot overcome the highly deferential standard of review applicable to this habeas action.  The Michigan Court of Appeals addressed this claim and denied it on the merits:

> Next, Upshaw contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel, where counsel failed to investigate potential alibi witnesses and failed to file the required notice of intent to present an alibi defense, MCL 768.20.[4] At trial, Upshaw called to the stand the manager of a restaurant where Upshaw was employed at the time of the robbery, and the manager testified that he drove Upshaw home at the end of his shift, dropping him off about 15 minutes before the robbery was committed. The manager, however, did not know Upshaw's whereabouts at the exact time of the robbery. On appeal, Upshaw argues that he remained home after being dropped off by the manager and that his aunt, grandmother, and girlfriend were also present at the home at the time. Upshaw attached his own affidavit to his appellate brief in an attempt to support his contention, merely implying that these three individuals could have provided him an alibi defense. However, Upshaw did not attach any affidavits from his aunt, grandmother, or girlfriend attesting to the claims, nor is there anything in the lower court record pertaining to alibis given by these individuals. In a second motion to remand filed with this Court, Upshaw had attached a document purportedly signed by his aunt, which did not meet the requirements of an affidavit, MCR 2.119(B), but his aunt merely asserted, "I was a alibi witness to some events that happened on May." This nonsensical statement

did not provide an alibi. Upshaw had further attached a document purportedly signed by his grandmother, which also did not meet the requirements of an affidavit, MCR 2.119(B), and his grandmother asserted that Upshaw had arrived home around the same time as claimed by Upshaw's manager or a few minutes later. The document implied or suggested that Upshaw remained at the home for several hours, but it did not expressly provide so, nor did his grandmother state that she observed him at the exact time of the robbery. Assuming that it is even proper to consider these flawed documents, Upshaw has simply failed to show that counsel's performance fell below an objective standard of reasonableness relative to alibi witnesses and a notice of alibi, and he has not established the requisite prejudice.

---

[4] Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v. LeBlanc,* 465 Mich. 575, 579; 640 NW2d 246 (2002). In *People v. Carbin,* 463 Mich. 590, 599–600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, stated:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668; 104 S Ct 2052; 80 L.Ed.2d 674 (1984). See *People v. Pickens,* 446 Mich. 298, 302–303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690.

23

"Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v. Hoag,* 460 Mich. 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v. Toma,* 462 Mich. 281, 302; 613 NW2d 694 (2000).

*Walker*, 2016 WL 2942215, at *6. This determination was not contrary to or an unreasonable application of clearly established federal law.

Upshaw first notes that, even if the Michigan Court of Appeals correctly discounted the "affidavits" from his two purported alibi witnesses, the decision to reject his ineffective-assistance claim was unreasonable because Upshaw's own affidavit was enough to show that counsel was ineffective for failing to investigate the alibi witnesses. But Upshaw's own self-serving affidavit cannot overcome the high presumption that counsel performed reasonably. *Cuppett v. Duckworth,*

8 F.3d 1132, 1139 (7th Cir. 1993) ("[W]e have repeatedly held that self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.").  Moreover, an ineffective-assistance-of-counsel claim for failure to investigate must be based upon more than mere speculation that further investigation would have been beneficial.  *Hodge v. Haeberlin*, 579 F.3d 627, 650 (6th Cir. 2009).  By asking the state court to rely only on his affidavit without any evidence as to how the purported alibi witnesses would have testified, Upshaw's claim for relief rests on mere speculation that further investigation would have been helpful to his defense.

Upshaw then goes on to argue that the state appellate court unreasonably determined the facts when it ruled that the purported alibi witness affidavits did not meet the requirements of an affidavit under Michigan court rules.  Noting that the court did not explain why the affidavits did not meet the requirements, Upshaw analyzes the rule and—after conceding that one of the affidavits was "[p]lainly. . . insufficient under the rule"—he argues that the other affidavit met the requirements.  (9/18/20 Mem. in Supp., ECF No. 2, PageID.56–57.)  But

in doing so, Upshaw ignores the alternative reason why the state court

disregarded the affidavits: they were not made part of the record.  As

the Michigan Court of Appeals pointed out, the affidavits were not

attached to Upshaw's brief on appeal; instead, they were attached only

to Upshaw's second motion for remand.  Indeed, in his brief, Upshaw

did not make any argument regarding the testimony of his purported

alibi witnesses—he relied only on his own affidavit, along with an

affidavit from his co-defendant.  (*See* Def.-Appellant's Br. on Appeal at

10, Mich. Ct. App. File No. 325195 PDF p. 115.)  Thus, the state

appellate court did not consider the affidavits because they were not

part of Upshaw's claim and not part of the record.

And even if they were part of the record, the court properly

determined that the documents were not proper affidavits.  In fact,

Upshaw's analysis of the relevant rule is irrelevant—the documents

from the purported alibi witnesses were not even intended to be

affidavits.  Rather, the documents were letters that the purported alibi

witnesses sent to the Michigan Court of Appeals, which the court

declined to submit to the judges because they were not formal

pleadings.  (*See* 4/21/15 Letter from Assistant Clerk John Lowe to

JoAnn Green, Toya Green and Crystal Holloway, Mich. Ct. App. File No. 325195 PDF p. 92; *see also* letters from JoAnn Green and Crystal Holloway, PDF pp. 88, 91.)  That counsel subsequently attached these letters to a second motion to remand and labeled them affidavits does not somehow transform them into actual affidavits.

And perhaps that is why Upshaw now ignores the third requirement when he analyzes Michigan Court Rule 2.119(B)(1)(b), which requires an affidavit to "show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit."  Nowhere in her letter does JoAnn Green ever state that she was willing and able to testify at trial to the facts she provides. Instead, she merely avers that she thought that she was going to be called as a witness.  (11/30/14 Letter from JoAnn Green, Mich. Ct. App. File No. 325195 PDF pp. 88.)

Therefore, the Michigan Court of Appeals' decision not to rely on the affidavits was not an unreasonable determination of the facts.

And, regardless, the court alternatively discussed the substance of the purported affidavits and determined that they did not show that counsel was ineffective.  Notably, Crystal Holloway's purported affidavit

said nothing other than that she was a witness "to some events that happened." (2/15/15 Letter from Crystal Holloway, Mich. Ct. App. File No. 325195 PDF p. 91.) That vague statement certainly did not show that counsel was deficient for failing to investigate her or that Upshaw was prejudiced as a result. And JoAnn Green's purported affidavit was not much better. She stated that she woke up between 3:20 and 3:30 a.m. on the night of the crime when Upshaw entered the house and that he later left the house at around 7:45 a.m. (11/30/14 Letter from JoAnn Green, Mich. Ct. App. File No. 325195, PDF pp. 88.) But she did not state that Upshaw remained at the house the entire night. In other words, Green's statement provided no more of an alibi than the testimony of Upshaw's manager, who explained at trial that he dropped Upshaw off at his house at around 3:15 a.m.[3] (10/16/14 Trial Tr. at 10.)

---

[3] Additionally, Holloway is Upshaw's aunt, while Green is his grandmother. Counsel could have reasonably determined that the jury would not have found alibi testimony from Upshaw's relatives credible. *See United States ex. rel. Emerson v. Gramley*, 883 F. Supp. 225, 236–37 (N.D. Ill. 1995) (counsel not ineffective for failing to call petitioner's mother and ex-wife as alibi witnesses because they were "patently interested witnesses" who would have added little value to the case), aff'd, 91 F.3d 898 (7th Cir. 1996); s*ee also Lewis v. Cain*, No. 09–2848, 2009 WL 3367055, at *11 (E.D. La. Oct. 16, 2009) (noting that petitioner's "grandmother's testimony would have been of limited value

Therefore, a different result at trial was not reasonably probable with the testimony from either witness.

Finally, although Upshaw contends that this implausible alibi evidence is particularly relevant in this case given the evidence implicating him, he wholly ignores most of the critical evidence. Putting aside that there is no evidence that the victim had any motive to falsely identify Upshaw and that she identified him in a six-person photographic lineup (10/14/14 Trial Tr. at 50–51), Upshaw fails to mention that he was arrested less than five hours later (10/15/14 at 52, 60) committing a home invasion.  He was arrested with his co-defendant (*id.* at 55–56, 61–62), whose face was captured on surveillance video during the gas-station robbery (*id.* at 46–49).  In sum, the testimony from Upshaw's alibi witnesses would not have made a different result at trial reasonably probable given the evidence against him.

And even if this Court would have decided differently had it heard the case on direct appeal, the Michigan Court of Appeals' decision was

---

because her close familial relationship to the petitioner would have made her testimony inherently suspect").

29

not contrary to or an unreasonable application of clearly established

federal law.  Habeas relief should therefore be denied.

### C.   Upshaw was not denied due process when the trial court denied an adjournment request.

Upshaw also claims that he was denied due process when the trial

court denied his request for an adjournment.  But the prejudice he

argues that he suffered was that his counsel did not have the

opportunity to adequately investigate the alibi defense discussed above.

The Michigan Court of Appeals addressed this claim and denied it on

the merits:

> Upshaw next contends that the trial court abused its
> discretion when it denied his request for an adjournment to
> accommodate his newly-retained attorney. This argument is
> premised on the claimed need for time so that new counsel
> could have investigated and properly presented an alibi
> defense. Given our previous discussion, the alibi claims are
> unavailing. Upshaw has not shown that good cause existed
> as was necessary to grant a continuance or adjournment,
> and the trial court did not abuse its discretion in denying the
> adjournment request. *People v. Coy,* 258 Mich.App 1, 17–18;
> 669 NW2d 831 (2003).

*Walker*, 2016 WL 2942215, at *6.  Because Upshaw has failed to

demonstrate that the alibi witnesses' testimony would have affected the

outcome of the case, Upshaw was not denied due process.  The state

appellate court's decision denying relief on the claim was not contrary
to or an unreasonable application of clearly established federal law, and
habeas relief should be denied.

## II.    Upshaw's *Batson* claim is meritless, and the Michigan Court of Appeals' decision denying relief was not contrary to or an unreasonable application of clearly established federal law.

Next, Upshaw argues that the prosecution violated the Equal
Protection Clause by using discriminatory reasons for dismissing black
jurors.  But he has failed to demonstrate that he is entitled to habeas
relief.

Upshaw's counsel first raised a challenge under *Batson v.
Kentucky*, 476 U.S. 79 (1986), arguing that the prosecution had used six
of its eight peremptory challenges to dismiss potential black jurors.
(10/9/14 Trial Tr. at 97–98.)  The trial court then asked the prosecution
for its explanation as to why the jurors were challenged, without first
determining whether Upshaw had shown a prima facie case of
discriminatory intent.  (*Id.* at 98.)  The prosecution provided race-
neutral reasons for four of the challenged jurors before the trial court
interrupted and asked for a response from Upshaw's counsel.  (*Id.* at

99.) Counsel challenged two of the prosecution's race-neutral reasons as pretextual, but counsel gave no further argument regarding any aspect of the *Batson* challenge. (*Id.* at 99–101.) The trial court ultimately denied the challenge. (*Id.* at 99–100.)

On appeal, the Michigan Court of Appeals determined that the trial court—to the extent that it determined that Upshaw had shown a prima facie case of discriminatory extent—had erred. Because there was no evidence that the prosecution's challenges were discriminatory, there was no need for the trial court to make any other determination under *Batson*. This determination was not contrary to or an unreasonable application of clearly established federal law.

And even if Upshaw is correct that the state appellate court could not revisit the prima facie case issue (he is not correct, see below) the *Batson* claim nevertheless should be denied. Because there is no record evidence as to any other circumstances that would show that the prosecution's race-neutral reasons were pretextual, Upshaw has failed to meet the requirements to show an equal-protection violation outlined in *Batson*. Therefore, habeas relief should be denied.

## A.     Clearly established law regarding *Batson* claims.

"Equal justice under law requires a criminal trial free of racial discrimination in the jury selection process."  *Flowers v. Mississippi*, 139 S. Ct. 2228, 2242 (2019).  In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court outlined a three-step process for a trial court to use when determining whether a decision to strike a juror was based on race:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race.  Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question.  Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328 (2003) (citing *Batson*) (internal citations omitted).

The *Batson* Court explained that the first step requires a defendant to show that "the totality of the relevant facts gives rise to an inference of discriminatory purpose."  *Batson*, 476 U.S. at 93–94.  The Court elaborated:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances.  For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise

33

to an inference of discrimination.  Similarly, the prosecutor's
questions and statements during *voir dire* examination and
in exercising his challenges may support or refute an
inference of discriminatory purpose.  These examples are
merely illustrative.  We have confidence that trial judges,
experienced in supervising *voir dire*, will be able to decide if
the circumstances concerning the prosecutor's use of
peremptory challenges creates a prima facie case of
discrimination against black jurors.

*Id.* at 96–97.

During the second step, the race-neutral explanation need only be

facially valid.  *Hernandez v. New York*, 500 U.S. 352, 360 (1991).

"Unless a discriminatory intent is inherent in the prosecutor's

explanation, the reason offered will be deemed race neutral."  *Id.*

Once the prosecutor offers a race-neutral basis for his exercise of

peremptory challenges, "[t]he trial court then [has] the duty to

determine if the defendant has established purposeful discrimination."

*Id.* (internal quotation marks omitted).  "Since the trial judge's findings

in the context under consideration here largely turn on evaluation of

credibility, a reviewing court ordinarily should give those findings great

deference."  *Batson*, 476 U.S. at 98 n.21.

"The defendant ultimately carries the burden of persuasion to

prove the existence of purposeful discrimination."  *Johnson v.*

*California*, 545 U.S. 162, 170–71 (2005) (internal quotation marks and citations omitted).  "This burden of persuasion rests with, and never shifts from, the opponent of the strike."  *Id.* (internal quotation marks and citations omitted).

### B. The state court reasonably determined that Upshaw did not make a prima facie case of discrimination.

The state court addressed Upshaw's claim and ultimately determined that he failed to meet *Batson*'s first requirement:

> Upshaw additionally argues that the prosecutor improperly exercised peremptory challenges, dismissing African–American members of the jury pool in violation of *Batson v. Kentucky,* 476 U.S. 79; 106 S Ct 1712; 90 L.Ed.2d 69 (1986). "Under the Equal Protection Clause of the Fourteenth Amendment, a party may not exercise a peremptory challenge to remove a prospective juror solely on the basis of the person's race." *People v. Knight,* 473 Mich. 324, 335–336; 701 NW2d 715 (2005) (citations omitted). Our Supreme Court in *Knight* stated that *Batson* "announced a three-step process for determining the constitutional propriety of a peremptory challenge." *Knight,* 473 Mich. at 336. "First, the opponent of the peremptory challenge must make a prima facie showing of discrimination." *Id.* With respect to this first step, we review for clear error any underlying factual findings, while related questions of law are subject to de novo review. *Id.* at 343. "Second, if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike." *Id.* at 337. "[T]he de novo standard governs appellate review of ... [this] second step." *Id.* at 344. "Finally, if the

proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination." *Id.* at 337–338. "[T]he clear error standard governs appellate review of a trial court's resolution of ... [this] third step." *Id.* at 345.

In the instant case, after the prosecutor exercised multiple peremptory challenges, Upshaw's attorney informed the trial court that he had a motion to make. The trial court excused the veniremembers and those remaining in the jury pool. Upshaw's counsel then presented a *Batson* challenge, arguing that six of the eight peremptory challenges exercised by the prosecutor pertained to African–Americans; both defendants are African–American. Walker's attorney indicated that he would join in the motion. Other than noting the number of peremptory challenges exercised by the prosecutor and the race of those excused veniremembers, the defense attorneys did not provide any additional argument in support of making a prima facie case of discrimination. The trial court, failing to indicate whether defendants had made the required prima facie showing of discrimination, asked the prosecutor whether she had any response as to why the African–American veniremembers were excused. The prosecutor then provided race-neutral explanations for the strikes in regard to four of the African–American veniremembers. Before the prosecutor could continue with her explanations concerning the remaining two African–American veniremembers, the trial court interjected, asking Upshaw's counsel whether he had any response. Upshaw's attorney then began addressing and challenging the race-neutral explanation given by the prosecutor in regard to one of the stricken veniremembers. The trial court quickly chimed in, "Yes, but are you saying that's a pretext to get her off the jury because she's black?" Upshaw's counsel replied in the affirmative, at which point the trial court queried, "Anything else?" Upshaw's attorney

36

replied, "No, your Honor." Walker's attorney also indicated that he had nothing to add.

Next, the trial court ruled:

Well, the [p]rosecutor has given some explanation other than race being challenged. I don't think the *Batson* motion can be sustained. I don't have any further comments on whether it's good or bad.....

After some further discussion on the matter, Upshaw's attorney began challenging the race-neutral explanation given by the prosecutor regarding another veniremember, but the trial court interrupted, making clear that it had denied the *Batson* motion.

In *Knight,* 473 Mich. at 339, our Supreme Court counseled the bench with respect to *Batson* challenges, stating that "trial courts must meticulously follow *Batson's* three-step test, and we *strongly* urge our courts to *clearly* articulate their findings and conclusions on the record." The Court further noted that "[w]hen a trial court methodically adheres to *Batson's* three-step test and clearly articulates its findings on the record, issues concerning what the trial court has ruled are significantly ameliorated." *Id.* at 338–339. Here, unfortunately, the trial court failed to adhere to the directive announced by the *Knight* Court a decade earlier.

With respect to the first step, i.e., whether defendants made a prima facie showing of discrimination, actual proof of discrimination is not required. *Id.* at 336. And, given that there is no dispute that the veniremembers at issue in this case were members of a cognizable racial group and that peremptory challenges were exercised to exclude them from the jury, the question in regard to step one becomes whether all of the relevant circumstances raised *an inference* that the

prosecutor struck the excluded veniremembers on the basis
of race. *Id.* The trial court's statements on the bench failed to
expressly indicate whether it found that defendants had
made a prima facie case of discrimination. Although such a
finding might be implied because the court asked the
prosecutor to articulate explanations for why veniremembers
were stricken, the court's ruling is ultimately unclear and
muddled on the matter. We cannot conclude, on the existing
record, that defendants made a prima facie showing or case
of racial discrimination. While not binding precedent, we
find persuasive the following discussion by the United States
Court of Appeals for the Eleventh Circuit in *United States v.
Ochoa–Vasquez,* 428 F3d 1015, 1044 (CA 11, 2005):

> In order to determine whether
> a *Batson* objector ... has established a prima facie
> case of discrimination, courts must consider all
> relevant circumstances. This Court has cautioned
> that the mere fact of striking a juror or a set of
> jurors of a particular race does not necessarily
> create an inference of racial discrimination. While
> statistical evidence may support an inference of
> discrimination, it can do so only when placed in
> context. For example, the number of persons
> struck takes on meaning *only* when coupled with
> other information such as the racial composition
> of the venire, the race of others struck, or the voir
> dire answers of those who were struck compared
> to the answers of those who were not struck .....
> [Citations and quotation marks omitted.]

The Eleventh Circuit observed that pertinent
circumstances to consider include the racial composition of
remaining potential jurors, "the percentage of jurors of a
particular race or ethnicity struck and the percentage of
their representation on the venire," whether members of the
relevant racial group served unchallenged on the jury, and
whether the prosecutor used all or nearly all of his or her

challenges to strike veniremembers of a particular race. *Id*
. at 1044–1045. Here, the only argument posed by defense
counsel during voir dire was that six of eight peremptory
challenges exercised by the prosecutor concerned
veniremembers of the same race as defendants. Neither
Walker nor Upshaw's attorney made a record regarding any
other surrounding circumstance, such as those alluded to
in *Ochoa–Vasquez,* nor are we able to discern from the
existing record whether additional relevant facts or
circumstances were present, e.g., information regarding the
percentage of African–American jurors on the venire.
Assuming that the trial court found that defendants had
made a prima facie case of discrimination, it erred in that
part of its analysis. Absent a prima facie showing of
discrimination, the remaining two steps in
the *Batson* analysis are rendered moot.[5] Reversal is
unwarranted.

---

[5] That said, we do note that the prosecutor provided race-
neutral explanations with respect to four of the struck
African–American veniremembers before being cut off by the
trial court, and the defense attorneys only spoke in regard to
one or two of those veniremembers for purposes of claiming
pretext.

---

*Walker*, 2016 WL 2942215, at *6. This determination was not contrary

to or an unreasonable application of clearly established federal law.

Upshaw argues that the state appellate court's determination was

unreasonable for two reasons. Neither are persuasive.

First, he contends that his counsel's allegation that the

prosecution used six of its first eight peremptory challenges to strike

potential black jurors is enough evidence in itself to make a prima facie

showing of discriminatory intent and satisfy *Batson*'s first requirement. Notably, however, Upshaw's cites no authority in support of this proposition. Rather, Upshaw cites cases in which the prosecution used peremptory challenges to strike all or most of the members of a minority race that are a part of the entire jury venire. But, here, there is no evidence in the record as to the racial make-up of the venire. In other words, that the prosecution used six challenges to strike potential black jurors means nothing absent other evidence.[4]

Second, Upshaw cites *Lancaster v. Adams*, 324 F.3d 423, 434–35 (6th Cir. 2003), and argues that the first requirement of *Batson* becomes moot after the prosecutor offers race-neutral explanations for the strikes and the trial court makes an ultimate ruling on whether the intentional discrimination was shown. The *Lancaster* Court held that a state appellate court that rests its decision on the mooted issue

---

[4] At least 52 people were members of the jury venire. Assuming the racial make-up of the panel closely resembled the racial make-up of the county, over 20 were black. *See* Quick Facts, Wayne County, Michigan, United States Census Bureau, available at https://www.census.gov/ quickfacts/fact/table/waynecountymichigan,US/RHI225219 (showing that 38.7% of responding persons identified as black) (last accessed March 22, 2021). Challenging six of 20 potential black jurors does not, without more, create an inference of discrimination.

contravenes *Hernandez*, 500 U.S. at 359, and thus is contrary to clearly established federal law.  But *Hernandez* is not clearly established Supreme Court precedent under AEDPA.  Rather, the lead opinion in *Hernandez* was only signed by four justices, making it a plurality opinion.  Justices O'Conner and Scalia separately concurred in the judgment and did not say anything approving of the language from the majority opinion about a prima facie showing becoming moot upon a prosecutor's mentioning non-racial reasons for a peremptory challenge. Thus, the four-justice pronouncement in *Hernandez* was not clearly established law.  *See United States v. Stewart*, 65 F.3d 918, 924 (11th Cir. 1995) (refusing to follow *Hernandez* to find that the prima-facie case issue was moot, reasoning that *Hernandez* was a plurality opinion and the relevant language was dicta).

With no clearly established law prohibiting an appellate court from analyzing the prima-facie case issue anew, the Michigan Court of Appeals' decision here was reasonable.  Upshaw's counsel did not make a record of any other circumstances during jury voir dire that would have been relevant to his claim.  As discussed above, there is no evidence of the racial make-up of the jury venire, and moving to strike

41

six black members—without any additional facts—does not create an inference of discrimination.  The state appellate court's decision was not contrary to or an unreasonable application of clearly established federal law, and habeas relief should be denied.

### C.    Even if the prima-facie step is moot, Upshaw failed to show that the prosecutor's challenges were discriminatory.

Although *Hernandez* was not clearly established federal law, even if it was, Upshaw's claim would fail under *Batson*'s second and third requirements.

The prosecution offered a facially valid race-neutral explanation for the challenges.  The prosecution explained that juror Stinson was dismissed because she was older and her responses to questions were delayed.  (10/9/14 Trial Tr. at 98.)  Juror Williams had been convicted of a felony.  (*Id.* at 99.)  Juror Smith had relatives that were in prison. (*Id.*)  And juror Jones was dismissed because she was young and appeared distracted.  (*Id.*)  None of these reasons advanced by the prosecution are facially discriminatory.  They are race-neutral explanations.

Then, the trial court correctly determined that the prosecution's explanations were not pretextual and that the challenges were not based on a discriminatory intent.  Notably, the record supported the prosecution's explanations.  Juror Williams stated that she had a prior conviction for carrying a concealed weapon.  (*Id.* at 89–90.)  Juror Smith indicated that his brother was in prison for armed robbery and his nephew was in prison for home invasions.  (*Id.* at 89.)  Juror Stinson could not remember whether her jury service 30 years ago was criminal or civil, and she was asked to repeat herself multiple times.  (*Id.* at 92, 93, 94.)  And at one point when questioning juror Jones, she was asked whether she was a "natural pauser," to which she responded, "I'm tired. I'm sleepy."  (*Id.* at 79, 82.)  The record supports the prosecution's assertion that there were race-neutral reasons for the challenges.

Moreover, Upshaw's counsel only challenged two of those explanations as pretextual.  Counsel first argued that the prosecution's explanation that juror Jones was too young was not a valid reason.  But counsel did not explain why age cannot be a valid race-neutral reason, and counsel did not challenge the prosecution's other reason for dismissing her.  Counsel also argued that juror Stinson's responses

were "clear and concise," but counsel admitted that her responses "weren't rapid speed." (*Id.* at 100.) None of counsel's explanations overcame the great deference that must be afforded the trial court's determination that the prosecution's explanations were not pretextual.

And, despite the trial court asking whether counsel had anything else to add to his *Batson* challenge, counsel gave no further argument. (*Id.* at 99, 101.) Because the burden of persuasion always remained with Upshaw, and because he failed to argue that the remaining challenged jurors were dismissed for discriminatory reasons, he has failed to meet his burden to succeed on his *Batson* claim.[5] Therefore, the state trial court's decision rejecting Upshaw's claim was not contrary to or an unreasonable application of clearly established federal law.

---

[5] Several times throughout his petition, Upshaw urges this Court to reject the prosecution's claims as pretextual because other white jurors were empaneled despite giving similar responses or having similar characteristics as the dismissed black jurors. Notably, however, other than counsel's reference to six of the dismissed jurors being black, there is no record as to the race of any of the jurors. Upshaw's comparative discussions, then, are based on pure speculation and are not useful in analyzing the *Batson* claim.

**III.   Upshaw's judicial-factfinding claim with respect to offense variable 14 is technically exhausted but procedurally defaulted, and appellate counsel was not ineffective for failing to request an inapplicable remedy.**

In his fourth habeas claim, Upshaw argues that the trial court used unconstitutional judicial factfinding to increase his guidelines minimum sentence range.  But, whatever the merits of this claim, he is not entitled to relief because he never raised it in the state courts.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To fulfill the exhaustion requirement, the prisoner must have fairly presented the federal claims to all levels of the state appellate system. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

If the prisoner fails to present his claims to the state courts, but has no remaining state-court remedy, the claims are considered exhausted, but procedurally defaulted.  *See Gray v. Netherland*, 518

U.S. 152, 161–62 (1996); *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010).

Here, Upshaw never presented his offense variable (OV) 14 judicial-factfinding claim to any level of the state appellate court system.  On direct review, Upshaw did challenge OV 14, but he alleged only that the variable was scored incorrectly under Michigan law. (1/26/16 Supplemental Br. on Appeal at 15–20, Mich. Ct. App. File No. 325195 PDF pp. 166–171.)  He never raised the constitutional claim at issue here.  Upshaw, however, has no remaining state-court remedy. *See* Mich. Ct. R. 6.502(G) (allowing only one motion for relief from judgment, absent special allegations).  Therefore, the claims are considered exhausted, but procedurally defaulted.  *See Gray*, 518 U.S. at 161–62; *Landrum*, 625 F.3d at 918.[6]

---

[6] On collateral review in the state court, Upshaw raised only the second part to this claim—*i.e.*, that counsel was ineffective for failing to request a *Crosby* remand.  (7/10/18 Mot. for Relief from J. at 10–15.)  He never raised the underlying judicial factfinding claim.  In fact, his motion suffered from the same flaw that this petition does—it assumed that the judicial-factfinding claim was already raised, not recognizing that the claim actually raised was a challenge to the variable's scoring under Michigan law.

A State prisoner who fails to comply with a State's procedural rule waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 748–50 (1991); *Sutton v. Carpenter*, 745 F.3d 787, 789–90 (6th Cir. 2014).

To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690–91 (6th Cir. 2007). A petitioner must present a substantial reason to excuse the default. *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *see also Amadeo v. Zant*, 486 U.S. 214, 222–23 (1988) (reviewing a claim that a document was concealed by officials).

One recognized reason includes attorney error rising to the level of ineffective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991). In his fifth claim on habeas review, Upshaw argues that his appellate counsel was constitutionally ineffective by failing to request a remand

procedure pursuant to *United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005), the appropriate remedy for judicial-factfinding violations in Michigan.  According to Upshaw, the Michigan Court of Appeals would have granted the judicial-factfinding claim if counsel had made the appropriate request.  But, while the state appellate court did note that a *Crosby* proceeding was never requested, it did so because Upshaw cited Michigan's seminal case on judicial-factfinding, *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), within his claim that the variable was incorrectly scored.  The court—just like Upshaw in his brief—said nothing about a constitutional issue.  The court adequately addressed the scoring error that Upshaw did raise.  Ultimately, counsel was not ineffective for failing to request a remedy that did not pertain to the claim at issue.  Thus, Upshaw's fifth habeas claim (ineffective assistance of appellate counsel) is meritless, and he has not shown cause to excuse the procedural default to his fourth claim (ineffective assistance of trial counsel).

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent

48

of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004);

*Carrier*, 477 U.S. at 496.  A claim of actual innocence "requires [the]

petitioner to support his allegations of constitutional error with new

reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that

was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

To show that his case is the "extraordinary" one warranting

application of this exception, Upshaw must demonstrate "that it is more

likely than not that no reasonable juror would have convicted him in

the light of the new evidence."  *Schlup*, 513 U.S. at 321, 327.  Upshaw

has not presented any new, reliable evidence in support of a claim of

actual innocence.  Therefore, a miscarriage of justice will not occur as a

result of the Court's failure to consider the substantive merits of

Upshaw's claim.

Unexcused procedural defaults can—and should—be the reason a

habeas court declines to grant a prisoner relief.  The Sixth Circuit has

noted that "[c]omity and federalism demand nothing less." *Benton v.*

*Brewer*, 942 F.3d 305, 307 (6th Cir. 2019).  Moreover, in a recent

unpublished opinion, a panel of the Sixth Circuit stressed the

importance of considering a state's assertion of a procedural default

defense. *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018)

("[W]here a straightforward analysis of settled state procedural default

law is possible, federal courts cannot justify bypassing the procedural

default issue.").  Indeed, the Sixth Circuit continues to enforce

procedural defaults, including when the district court skips over the

default entirely.  *See Theriot v. Vashaw*, 982 F.3d 999, 1002 (6th Cir.

2020); *McKinney v. Horton*, 826 F. App'x 468, 478 (6th Cir. 2020);

*Strong v. Nagy*, 825 F. App'x 239, 241 (6th Cir. 2020); *Williams v. Burt*,

949 F.3d 966, 970–71 (6th Cir. 2020); and *Stalling v. Burt*, 772 F. App'x

296, 297 (6th Cir. 2019).

Claim IV is procedurally defaulted, and habeas relief is barred.

*See Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).  Claim V is meritless.[7]

---

[7] The analysis of this claim is ultimately moot given the State's position
below in section V.  Because Upshaw is entitled to a *Crosby* proceeding,
any unconstitutional judicial factfinding with respect to OV 14 will be
remedied.

**IV.  Upshaw is entitled to partial habeas relief on his judicial factfinding claim with respect to offense variables 1, 4, and 9.**

In his sixth habeas claim, Upshaw argues again that his sentence was subject to unconstitutional judicial factfinding.  He is correct.  And although the claim was procedurally defaulted by the state trial court, Upshaw has demonstrated cause and prejudice to excuse the default.  This Court should therefore remand this case to the state sentencing court to conduct the appropriate Michigan remedy—a *Crosby* proceeding.

**A.  Under *Robinson v. Woods* and *Chase v. MaCauley*, Upshaw is entitled to habeas relief on his judicial-factfinding claim.**

Upshaw's minimum sentence range was calculated using judge-found facts.  The facts used to score offense variables 1, 4, and 9 were not submitted to the jury and found beyond a reasonable doubt, nor did Upshaw admit to them.  The State does not dispute this.

Before Upshaw was convicted and sentenced, the Supreme Court held in *Alleyne v. United States*, 570 U.S. 99, 103 (2013), that any fact that increases the penalty for a crime must be submitted to the jury and found beyond a reasonable doubt.  The Court stated that "[f]acts that

increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 108.

In July 2015, the Michigan Supreme Court decided *People v. Lockridge*, 870 N.W.2d 502, 519 (Mich. 2015), which held that the holding in *Alleyne* rendered Michigan's sentencing scheme unconstitutional because it used judge-found facts to increase the guidelines range that criminal defendants were subject to. To remedy the violation, the court severed the Michigan statute that *required* a sentencing court to impose a minimum sentence within the calculated guidelines minimum sentence range, rendering the guidelines now advisory only. *Id.* at 520–21. Thus, post-*Lockridge*, Michigan's sentence scheme does not use judge found facts to *mandatorily* increase a defendant's minimum sentence.

Upshaw, though, did not raise a judicial-factfinding claim on direct appeal. He tried to seek retroactive relief by filing a motion for relief from judgment. But the state trial court held that *Lockridge* did not apply retroactively, that appellate counsel was not ineffective for failing to raise a judicial-factfinding claim on direct review, and that

Upshaw could not meet the requirements of Michigan Court Rule 6.508(D)(3)(a) and (b).  (11/27/18 Wayne Cir. Ct. Op. at 5–6.)  The court denied Upshaw relief.  (*Id.*)

But two cases from the Sixth Circuit undermine that determination.  First, the Sixth Circuit has held that it was already clearly established law that Michigan's pre-*Lockridge* sentencing scheme was an unconstitutional violation of the Sixth Amendment's jury guarantee.  *Robinson v. Woods*, 901 F.3d 710, 716–17 (6th Cir. 2018).  According to the *Robinson* Court, "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences."  *Id.* at 716.  Because Upshaw was sentenced after *Alleyne*, the use of judge-found facts to increase his guidelines range was unconstitutional.  The state trial court's decision to deny relief, then, was contrary to clearly established federal law. Second, the Sixth Circuit has found that appellate counsel's failure to raise a judicial-factfinding claim on direct review in a similar case excused the procedural default.  *Chase v. MaCauley*, 971 F.3d 582, 591– 97 (6th Cir. 2020).  Thus, Upshaw has demonstrated cause and prejudice to excuse the default that the state trial court relied on.

Therefore, Upshaw is entitled to partial habeas relief on this claim. The State agrees that this Court should remand the case to the state sentencing court using the same language that the Court used in *Robinson*, 901 F.3d at 718 (instructing the district court to "remand to the state sentencing court for sentencing proceedings consistent with this opinion and the Constitution").

### B.  Upshaw is not entitled to a full resentencing.

Although the State and Upshaw agree that he is entitled to relief using the same language that the Sixth Circuit used in *Robinson*, it is important to note that this Court should *not* order the state sentencing court to conduct a full resentencing.[8] Rather, Michigan already has a well-established procedure for remedying judicial-factfinding violations.

In *Lockridge*, the Michigan Supreme Court highlighted its agreement with the analysis from *United States v. Crosby*, 397 F.3d

---

[8] At least two decisions in this Court have afforded a full resentencing in similar cases. *See Morrell v. Burton*, No. 2:17-cv-10961, 2020 WL 746954 (E.D. Mich. Feb. 14, 2020); *see also* Op. and Order, *Edmonds v. Rewerts*, No. 18-11691 (E.D. Mich. Feb. 27, 2020), ECF No. 21. The State has appealed these decisions, which are pending in the Sixth Circuit. *See Morrell v. Burton*, No. 20-1238 (6th Cir.); *see also Edmonds v. Rewerts*, No. 20-1347 (6th Cir.).

103, 117–18 (2d Cir. 2005), which outlined a procedure whereby a remand to determine *whether* to resentence is the appropriate remedy when a procedural error occurs at sentencing. *Lockridge*, 870 N.W.2d at 523 (quoting *Crosby*, 397 F.3d at 117–18). The Michigan Supreme Court directed that "in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id.* at 523. A full resentencing hearing is required only if the court answers yes to that question. *Id.* at 523–24. During a *Crosby* proceeding, the sentencing court must treat the guidelines as advisory, *see id.* at 520–21, obviating the constitutional violation that occurred under the sentencing scheme that required mandatory adherence to the guidelines.

In *Chase v. MaCauley*, 971 F.3d 582, 589–90 (6th Cir. 2020), the Sixth Circuit noted the Michigan Supreme Court's practice, after it had issued *Lockridge*, of reversing lower court decisions that had previously denied judicial-factfinding claims. In each one of the "slew of cases"

55

cited by the Sixth Circuit, the ordered remedy was a *Crosby* proceeding. *See People v. Cutter*, 878 N.W.2d 286 (Mich. 2016); *People v. Horn*, 870 N.W.2d 896 (Mich. 2015); *People v. Young*, 870 N.W.2d 722 (Mich. 2015); *People v. Haggard*, 870 N.W.2d 899 (Mich. 2015); *People v. Parker*, 870 N.W.2d 912 (Mich. 2015).  The Court also highlighted other cases that reached the Michigan Supreme Court, *Chase*, 971 F.3d at 588–90, all of which ended with *Crosby* proceedings.  *See People v. Minor*, 870 N.W.2d 915 (Mich. 2015); *People v. Matsey*, 870 N.W.2d 565 (Mich. 2015); *People v. Johnson*, 873 N.W.2d 565 (Mich. 2016); *People v. Charleston*, 870 N.W.2d 690 (Mich. 2015).  In short, the all-but universally accepted and well-established procedure for remedying judicial-factfinding violations in Michigan is a *Crosby* proceeding.

And a full resentencing is not narrowly tailored and unnecessarily infringes on competing interests.  " 'Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.' " *Mapes v. Tate,* 388 F.3d 187, 194–95 (6th Cir. 2004) (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)).  "[A] remedy must neutralize the taint of a constitutional

violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Lafler v. Cooper*, 566 U.S. 156, 179 (2012) (quotation and citations omitted).

And further, on habeas review, "[b]oth the historic nature of the writ and principles of federalism preclude a federal court's direct interference with a state court's conduct of state litigation." *Barry v. Brower*, 864 F.2d 294, 300 (3d Cir. 1988). Conditional writs must, indeed, ensure that the constitutional violation is cured, but "federal courts have most often granted the relief in habeas cases that has required the least intervention into the state criminal process." *Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998).

A full resentencing is not narrowly tailored and unnecessarily competes with the State's interest in crafting its own remedy. "[T]he remedy a state court chooses to provide its citizens for violations of the Federal Constitution is primarily a question of state law." *Danforth v. Minnesota*, 552 U.S. 264, 288 (2008). Michigan's highest court has already addressed the precise remedy to afford criminal defendants for constitutional violations just like the one that occurred in Upshaw's

case.  And that remedy—a *Crosby* proceeding—adequately neutralizes the taint of the judicial-factfinding violation.  To order *additional* relief grants a windfall to Upshaw and unnecessarily interferes in Michigan's judicial process.

Finally, a full resentencing vastly interferes with the State's judicial process and is far more cumbersome than a limited *Crosby* proceeding.

Within the two competing remedies (both of which adequately remedy the constitutional violation, as discussed above) it is easy to see why one is preferred over the other—and why it was adopted by the Michigan courts.

A full resentencing hearing requires a plethora of resources from the criminal justice system; indeed, the Michigan Department of Corrections must conduct an entirely new presentence investigation. *See People v. Triplett*, 287 N.W.2d 165, 166–67 (Mich. 1980) (holding that resentencing requires an updated presentence investigation report).  Those investigations examine nearly every aspect of a prisoner's life, including childhood and family history, education, work history, any drug or alcohol abuse, and criminal history, as well as an

examination of the case at hand.  *See* Mich. Ct. R. 6.425(A).  Further,

given that Upshaw has been incarcerated, a new presentence

investigation in this case will also examine his activities and

disciplinary history for his time in prison.  *See Triplett*, 287 N.W.2d at

157 ("[A] defendant's conduct while in prison may shed considerable

light on the prospect of rehabilitation.") (internal quotation and citation

omitted).  This all requires one or more agents to conduct interviews

and seek out the information from a variety of sources.

The presentence investigation would take a toll on the victims in

the underlying criminal case as well.  Part of the investigation includes

speaking with the victims and obtaining impact statements from them.

Mich. Comp. Laws § 780.764.  In this case, that would entail the victim

reliving a horrific attack in which she was shot toward at least six times

and once thought she had been struck.  (*See* 10/14/14 Trial Tr. at 38,

44.)  This could have a significant—and harmful—psychological impact.

Once the investigation is completed and a report is generated, the

parties must be hailed into court, which demands the use of even more

resources: officers to transport Upshaw from the prison to the

courthouse, prosecutors to present the state's position at sentencing,

and the court and its staff.  The parties must then address the accuracy of the presentence investigation report, resolve any disputes in the guidelines scores, and allow the victim and Upshaw to give any statements.

On the other hand, a *Crosby* proceeding is significantly less straining on the system.  The trial court must inquire from the defendant whether he wishes to seek resentencing and, if so, the court should obtain views from the defendant's counsel (all of which can be conducted by written pleadings); the court may, but need not, hold a hearing on the matter, at which the defendant's presence is not required (thereby saving significant transportation resources); and, finally, the court must determine whether it would have imposed a materially different sentence had it not been constrained by the previously mandatory guidelines (which could be accomplished with an order or a brief statement on the record).  *See Lockridge*, 870 N.W.2d at 524.  The trial court's decision must be limited to the circumstances existing at the time it initially imposed sentence, saving any need for a new presentence investigation.  *Id.*  Only if the court determines that it

would have imposed a materially different sentence is a full resentencing hearing then triggered.  *Id.* at 525.

In sum, a full resentencing will interfere with the criminal justice system far more significantly than the remedy adopted by Michigan's own courts.

Michigan's chosen remedy is narrowly tailored, adequately neutralizes the taint of the judicial-factfinding violation, and involves far less interference with the state judicial system.  The law of remedies and the principles underlying habeas review counsel that the correct relief here is a *Crosby* proceeding.  Such a limited proceeding "avoids unnecessarily interfering with [Michigan]'s interest in correcting its own errors."  *Mapes* at 194.

Accordingly, this Court should remand this case to the state sentencing court so that they may remedy the constitutional violation according to Michigan law—by affording him a *Crosby* proceeding.

## V.   Upshaw's ineffective-assistance-of-trial-counsel claim with respect to prior record variable 5 is procedurally defaulted and meritless, and his ineffective-assistance-of-appellate-counsel claim is meritless.

In his last habeas claim, Upshaw argues that his trial counsel was ineffective for failing to challenge the scoring of prior record variable 5 and that his appellate counsel was ineffective for failing to raise a corresponding ineffective-assistance-of-trial-counsel claim on direct review.  But the ineffective-assistance-of-trial-counsel claim is procedurally defaulted because Upshaw failed to raise the claim on direct review.  Moreover, neither claim has merit because Upshaw cannot demonstrate prejudice.  And because his ineffective-assistance-of-appellate-counsel claim is meritless, Upshaw cannot show cause to excuse the default of his ineffective-assistance-of-trial-counsel claim.  All told, habeas relief should be denied.

### A.   Upshaw's ineffective-assistance-of-trial-counsel claim is procedurally defaulted.

To the extent a petitioner deprives the state court of the opportunity to review his claims by failing to follow reasonable state-court procedures, review of the claims is barred.  Procedural default results where three elements are satisfied:  "(1) the petitioner failed to

62

comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an adequate and independent state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (internal quotation marks omitted). In this case, Upshaw's ineffective-assistance-of-trial counsel claim is procedurally defaulted because he failed to raise it on direct appeal.

Upshaw failed to comply with a state procedural rule that requires defendants to raise all claims on direct appeal. Mich. Ct. R. 6.508(D)(3). This determination is made by looking at the last state court to issue a reasoned decision on the claim. *Amos v. Renico*, 683 F.3d 720, 726 (6th Cir. 2012). Here, that was the Wayne County Circuit Court, which denied relief because Upshaw failed to demonstrate good cause for failing to raise the claim on direct review and actual prejudice as a result, citing Michigan Court Rule 6.508(D)(3)(a) and (b). (11/27/18 Wayne Circuit Court Op. and 4–5.) This reason for denying relief constitutes a procedural default. Rule 6.508(D)(3) constitutes "an independent and adequate state ground sufficient for procedural

default." *Amos v. Renico*, 683 F.3d at 733; *see also Jackson v. Lafler*, 453 F. App'x 620, 623 n.1 (6th Cir. 2011); *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc) (describing Mich. Ct. R. 6.508(D)(3) as a "procedural-default rule.")

A State prisoner who fails to comply with a State's procedural rule waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 748–50 (1991); *Sutton v. Carpenter*, 745 F.3d 787, 789–90 (6th Cir. 2014).

Notably, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284–85 (6th Cir. 1989)). For example, plain error review does not constitute a waiver of state procedural default rules. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). Nor does a State court fail to sufficiently rely upon a procedural default by otherwise ruling on the merits in the alternative. *See Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001).

To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690–91 (6th Cir. 2007). A petitioner must present a substantial reason to excuse the default. *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *see also Amadeo v. Zant*, 486 U.S. 214, 222–23 (1988) (reviewing a claim that a document was concealed by officials). One recognized reason includes attorney error rising to the level of ineffective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991). This procedural default is not excused by the ineffective-assistance-of-appellate-counsel claim as explained below.

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

65

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

To show that his case is the "extraordinary" one warranting application of this exception, Upshaw must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 321, 327. Upshaw has not presented any new, reliable evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Upshaw's claim.

Unexcused procedural defaults can—and should—be the reason a habeas court declines to grant a prisoner relief. The Sixth Circuit has noted that "[c]omity and federalism demand nothing less." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Moreover, in a recent unpublished opinion, a panel of the Sixth Circuit stressed the importance of considering a state's assertion of a procedural default defense. *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018) ("[W]here a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural

default issue.").  Indeed, the Sixth Circuit continues to enforce procedural defaults, including when the district court skips over the default entirely.  *See Theriot v. Vashaw*, 982 F.3d 999, 1002 (6th Cir. 2020); *McKinney v. Horton*, 826 F. App'x 468, 478 (6th Cir. 2020); *Strong v. Nagy*, 825 F. App'x 239, 241 (6th Cir. 2020); *Williams v. Burt*, 949 F.3d 966, 970–71 (6th Cir. 2020); and *Stalling v. Burt*, 772 F. App'x 296, 297 (6th Cir. 2019).

Upshaw's ineffective-assistance-of-trial-counsel claim with respect to prior record variable 5 is procedurally defaulted, and habeas relief is barred.  *See Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

## B.   Both of Upshaw's ineffective-assistance claims are meritless.

To demonstrate a claim of ineffective assistance of counsel, as outlined above in section I.A, Upshaw must show, first, that counsel's performance was deficient and, second, that he was prejudiced by counsel's action or inaction.  *Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (citing *Strickland,* 466 U.S. at 687–88).  And as with an ineffective-assistance-of-trial-counsel claim, an ineffective-assistance-of-appellate-counsel claim requires a petitioner to show deficient

performance and resulting prejudice.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), (applying *Strickland* framework to appellate counsel claim).  *See also Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding petitioner who argued his appellate counsel rendered ineffective assistance by failing to file a merits brief must satisfy both prongs of *Strickland*).

Here, the Wayne County Circuit Court—in addition to procedurally defaulting the claim—addressed Upshaw's claim on the merits and determined that he was not entitled to relief.  The court reasoned that Upshaw's trial counsel *did* object to prior record variable 5 and that, in any event, the guidelines were unaffected because prior record variable 3 should have been scored at 50 points, not 25. (11/27/18 Wayne Cir. Ct. Op. and 3–4.)  Upshaw correctly notes that the state court's reasoning is flawed: trial counsel did not object to prior record variable 5, and prior record variable 3 was correctly scored.  But the trial court thought that prior record variable 3 could be scored at 50 points based on Upshaw's two felony-firearm convictions as a juvenile. While Upshaw correctly notes that those convictions could not be scored under prior record variable 3, they *could* be scored under prior record

68

variable 4.  *See* Mich. Comp. Laws § 777.54 (scoring 5 points for 2 prior low severity juvenile adjudications, which include felonies that are punishable by maximum terms of less than 10 years' imprisonment); *see also* § 750.227b(1) (proscribing a punishment of 2 years' imprisonment for a first offense).  Therefore, even if prior record variable 5 was incorrectly scored at 10 points instead of 5, the overall scoring of Upshaw's prior record variable was unaffected and his guidelines minimum sentence range would have remained the same.

Because Upshaw cannot demonstrate prejudice, his ineffective-assistance claims are meritless.  And, in any event, the Wayne County Circuit Court's determination was not contrary to or an unreasonable application of clearly established federal law.  This Court should deny habeas relief.

## CONCLUSION

Upshaw procedurally defaulted claims IV and VII.  He has not shown cause and prejudice to excuse the default.  In addition, he has not shown failure to review the claims would result in a fundamental miscarriage of justice.  Accordingly, as detailed above, habeas review of claims IV and VII should be barred.

In any event, the state courts' rejection of Upshaw's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Upshaw was entitled to a fair trial but "not a perfect one."  *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *see also United States v. Hasting*, 461 U.S. 499, 508–09 (1983) ("[T]here can be no such thing as an error-free, perfect trial" and the Constitution "does not guarantee such a trial.").  The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Richter*, 562 U.S. at 103.  The formidable threshold for granting habeas relief has not been met because fair-minded jurists could disagree on the correctness of the state court's decision.

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. And the State asserts that Upshaw is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter.  *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

The State also contends that Upshaw has not demonstrated entitlement to discovery.  Unlike typical civil litigants, "[h]abeas petitioners have no right to automatic discovery."  *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)).  Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause."  R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a).  "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.' "

*Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.' " *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)); Habeas Rule 6(a). "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974 (internal quotation marks and citation omitted). Upshaw has not met this burden.

If this Court denies the petition, the State asserts that Upshaw is also not entitled to a certificate of appealability (COA) so as to proceed further. In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling

standard, a petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483–84, *see also Dufresne v. Palmer*, 876 F.3d 248, 254 (6th Cir. 2017) ("To meet *Slack*'s standard, it is not enough for a petitioner to allege claims that are arguably *constitutional*; those claims must also be arguably *valid* or *meritorious*.")

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find

it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*, *see also Dufresne*, 876 F.3d at 254.

"At the end of the day, 'the gate keeping function of certificates of appealability [is to] separate the constitutional claims that merit the close attention of . . . this court from those claims that have little or no viability.'" *Dufresne*, 876 F.3d at 254 (quoting *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). Here, this Court should deny Upshaw a COA on all of his claims. The claims simply "have little or no viability."

## RELIEF

For the reasons stated above, this Court should deny the petition. The Court should also deny Upshaw any requested discovery, evidentiary hearings, bond, oral argument, and any other relief he seeks in this action, including a certificate of appealability.

Respectfully submitted,

Dana Nessel
Attorney General

s/Jared D. Schultz

Assistant Attorney General
Criminal Trials and Appeals
Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7650
SchultzJ15@michigan.gov
P80198

Dated: March 23, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2021, I electronically filed the

foregoing papers with the Clerk of the Court using the ECF system

which will send notification of such filing to the following:

>HONORABLE LINDA V. PARKER
>MAGISTRATE JUDGE PATRICIA T. MORRIS
>DAVID L. MOFFITT – ATTORNEY FOR PETITIONER

Respectfully submitted,

Dana Nessel
Attorney General

s/Jared D. Schultz

Assistant Attorney General
Criminal Trials and Appeals
Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7650
SchultzJ15@michigan.gov
P80198