UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAFAYETTE DESHAWN
UPSHAW,

               Petitioner,

v.                                         Case No. 20-cv-12560
                                         Honorable Linda V. Parker

GEORGE STEPHENSON,

               Respondent.

_____/

## OPINION AND ORDER GRANTING AN EVIDENTIARY HEARING AND PETITIONER'S MOTION FOR SUMMARY JUDGMENT [8]

Petitioner, Lafayette Deshawn Upshaw, is currently serving between twenty and forty-two years in state prison for convictions arising out of an armed robbery and a home invasion in May of 2014. In September 2020, Upshaw filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). His Petition [1] raises seven grounds for relief, all of which relate solely to the armed robbery case. Respondent agrees that partial habeas relief is warranted on at least one of these claims. (ECF No. 5, PageID.193). Upshaw has moved for summary judgment on that claim. (ECF No. 8).

For the reasons articulated below, the Court will **ORDER** an evidentiary hearing on Upshaw's first and second claims, and **GRANT** his Motion for Summary Judgment [8].

BACKGROUND

## I.   Upshaw's Crimes and Sentence

Shortly after 8:00 AM on May 28, 2014, Upshaw and Darrell Miles Walker "were arrested in the process of committing a home invasion at a residence" located at 19475 Washburn Street in Detroit. (ECF No. 6-9, PageID.623; ECF No. 6-14, PageID.863). They "were caught as they exited separate windows of the house," from which they "had attempted to steal several items of jewelry." (ECF No. 6-14, PageID.863). Upshaw was charged with second-degree home invasion, in violation of MICH. COMP. LAWS § 750.110a(3); larceny in a building, in violation of MICH. COMP. LAWS § 750.360; and resisting and obstructing, in violation of MICH. COMP. LAWS § 750.81d(1). (ECF No. 6-6, PageID.327).

Several hours before Upshaw and Walker were arrested, an armed robbery took place at 1920 West Fischer Service Drive, a gas station approximately ten miles south of the invaded home. (ECF No. 6-2, PageID.231-32; ECF No. 6-14, PageID.862-63).[1] Tina Williams was the only employee working at the time. (ECF No. 6-8, PageID.523). She reported that around 3:30 AM, just after she had returned to her bullet-proof cashier booth from attempting to help a strangely behaving man

---

[1] The distance between the house and the gas station is a fact of which the Court may take judicial notice. *See Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1008 (6th Cir. 2017); *see also, e.g.*, *Hund v. Hund*, No. 334313, 2017 Mich. App. LEXIS 1082, at *14 (Ct. App. July 6, 2017) (taking judicial notice of distance and extrapolating travel time).

with the gas station's coffee machine, another man entered the station and robbed a female customer at gunpoint. (ECF No. 6-14, PageID.863). The second man then demanded that Williams give him the money in her cash register. (*Id.*). When Williams refused, the man tried to kick open the door of the cashier booth and fired several shots in her direction, which were blocked by the bullet-proof glass. (*Id.*). The first man "shouted at her to open the access door, indicating that . . . [she] should do so in order to simply end the situation and get [the shooter] out of the gas station," but Williams "stood her ground and did not comply." (*Id.*). The shooter eventually "gave up and ran out of the gas station." (*Id.*). After the altercation, the first man, who had remained at the coffee machine and had not run when the shooter's gun was pointed in his direction, approached the booth and told Williams that she should call the police. (*Id.*). He "then fled in the same direction as the shooter." (*Id.*).

On June 3, 2014, Williams identified Walker as the coffee machine man and Upshaw as the shooter. (*Id.*; ECF No. 6-8, PageID.500-04). Upshaw was charged with five additional crimes: armed robbery, in violation of MICH. COMP. LAWS § 750.529; carrying a dangerous weapon with unlawful intent, in violation of MICH. COMP. LAWS § 750.226; possession of a firearm during the commission of a felony ("felony-firearm"), in violation of MICH. COMP. LAWS § 750.227b; assault with intent to commit murder, in violation of MICH. COMP. LAWS § 750.83; and assault

with intent to do great bodily harm less than murder, in violation of MICH. COMP. LAWS § 750.84. (ECF No. 6-2, PageID.229).

Upshaw ultimately pleaded guilty to second-degree home invasion but elected to go to trial on the gas station robbery charges. (ECF No. 6-7, PageID.340-41; ECF No. 6-11, PageID.757). At a motion hearing on October 2, 2014, one week before trial, Upshaw requested an adjournment. (ECF No. 6-5, PageID.322). He explained to the Honorable Michael J. Callahan that he had been dissatisfied with his attorney, Ray Paige, who had failed to appear at an August 5, 2014, motion hearing,[2] and had just retained a new attorney, Wright Blake. (ECF No. 6-4, PageID.314-15; ECF No. 6-5, PageID.322). The full colloquy proceeded as follows:

> MR. BLAKE: And we're going to talk some more. Mr. Upshaw wants an adjournment. He doesn't feel that we're quite ready. I told him that I would bring myself up to speed by the time for the trial date. Is that correct, Mr. Upshaw?
>
> MR. UPSHAW: Yes, but as you can see, your Honor, I have retained a new lawyer because of my insufficient counsel for not showing up and not coming and telling me the information. So I feel like my lawyer hasn't, my lawyer hasn't saw the DVD. He hasn't retained the transcript or anything and I feel like it's best grounds of adjournment right there, your Honor, just to get him caught up on what's going on with the case cause I just retained him like a week and a half ago, probably not even that.
>
> THE COURT: Well, I'm not granting an adjournment at this point. We'll see what happens. Okay.

---

[2] In a letter to the State of Michigan's Attorney Grievance Commission, Upshaw's mother, Toya Greene, alleged that Paige had, in fact, failed to appear on *four* separate occasions. (ECF No. 6-14, PageID.950).

4

MR. BLAKE: Thank you, your Honor.

(ECF No. 6-5, PageID.321-22).

The trial lasted three days, and on October 16, 2014, Upshaw was found guilty of armed robbery, carrying a dangerous weapon with unlawful intent, and felony-firearm. (ECF No. 6-10, PageID.743). He was acquitted of the assault charges. (*Id.*).

On November 14, 2014, Judge Callahan sentenced Upshaw to a two-year term of imprisonment for felony-firearm followed by concurrent sentences of eighteen to forty years imprisonment for armed robbery, one to five years imprisonment for carrying a dangerous weapon, and one to fifteen years imprisonment for second-degree home invasion. (ECF No. 6-11, PageID.756-57).

## II.    Upshaw's State Appellate and Post-Conviction Efforts

On December 17, 2014, Upshaw commenced an appeal as of right. (ECF No. 6-14, PageID.905). Jonathan B.D. Simon was appointed to represent Upshaw in his appeal. (*Id.*). On April 6, 2015, Simon filed a brief arguing 1) that "the trial court abused its discretion in granting the prosecutor's motion to endorse a key witnesses [sic] on the second day of trial over [Upshaw's] timely objection;" 2) that "the trial court denied [Upshaw] a fair trial by admitting irrelevant and unduly prejudicial testimony that he refused to participate in a lineup;" and 3) that "[Upshaw] was denied his Sixth Amendment right to the effective assistance of counsel [because] his trial attorney failed to investigate potential alibi witnesses, . . . failed to file the

5

required notice of intent to present an alibi defense[,] and [failed to] present . . . alibi witnesses." (*Id.* at 970, 973, 975) (capitalization omitted).

Simon also moved to remand for an evidentiary hearing pursuant to Mich. Ct. R. 7.211(C)(1) and *People v. Ginther*, 390 Mich. 436 (1973). (*Id.* at 895-96). In support of the Motion, Simon attached an affidavit in which Upshaw stated, among other things, that on May 28, 2014, his aunt, grandmother, and significant other "heard [him] preparing a meal in the kitchen of the home" shortly after 3:30 AM, and that his trial attorney was unable to establish these facts due to inadequate time to prepare a defense. (*Id.* at 897) (capitalization omitted). Also attached was an affidavit from Upshaw's co-defendant, Walker. (*Id.* at 898). On May 6, 2015, the Court of Appeals denied Upshaw's Motion to Remand. (*Id.* at 894).

Upshaw thereafter retained new appellate counsel, Neil J. Leithauser. (*Id.* at 984). On January 25, 2016, Leithauser filed a successive Motion to Remand and moved for leave to file a supplemental brief. (*Id.* at 912-14). In support of the Motion to Remand, Leithauser attached a new affidavit signed by Upshaw and notarized statements from his grandmother, JoAnn Green, and his aunt, Crystal Holloway. (*Id.* at 878-84). Holloway averred:

> I was a alibi witness to some events that happened on May [sic]. [Upshaw's] lawyer knew about me being a witness but he choose not to call on me to give my testimony. . . . I am writing this letter in hopes that [Upshaw] will be granted a new trial in which he will be able to have his witness called to the stand to testify on his behalf.

6

(*Id.* at 882). Green, meanwhile, stated that she lived with Upshaw at 6390 Colfax Avenue, and that on May 28, she had fallen asleep while "watching one of [her] programs and . . . woke up from [Upshaw] knock[ing] on the door." (*Id.* at 884). She explained that "[she] was mad after seeing what time it was [on the cable box] and let . . . Upshaw know it." (*Id.*). She "thought [Wright] would call [her] as a witness, because [she] knew [Upshaw] . . . could not have been anywhere else . . . between 3:20 and 3:30 [because] he was getting blessed out by [her for waking her] up." (*Id.*). "[L]ater, when [she saw Upshaw] le[ave] around 7:45, [she] was still upset . . . ." (*Id.*). The Court of Appeals denied Upshaw's successive Motion to Remand, holding that Upshaw failed to "demonstrate[] that further factual development of the record or an initial ruling by the trial court [was] necessary." (*Id.* at 874).[3]

Nevertheless, the Court of Appeals permitted filing of a supplemental brief. (*Id.* at 911). Leithauser's supplemental brief made three new arguments on Upshaw's behalf: 1) that "the trial court abused its discretion when it denied [Upshaw's] request for a brief adjournment;" 2) that "Upshaw was denied a fair trial and due process of law [because] the prosecutor improperly dismissed minority venire members" and gave "insufficient [race-neutral reasons] to avoid a finding of purposeful discrimination;" and 3) that "the trial court's scoring of . . . offense

---

[3] Presiding Judge Cynthia Diane Stephens disagreed, and would have granted the motion to remand. (*Id.*).

variable 14 [offender's role] was error which placed . . . Upshaw in a higher grid than supported by the record" and resulted in "an unsupported departure from the guidelines' range, an abuse of discretion, and an unreasonable sentence." (*Id.* at 927, 930, 937) (capitalization omitted) (final alteration in original).

On May 19, 2016, the Court of Appeals rejected all six of these arguments and affirmed Upshaw's convictions and sentence. (*Id.* at 866-72). On April 4, 2017, the Michigan Supreme Court denied leave to appeal. (ECF No. 6-16, PageID.1196). The United States Supreme Court denied certiorari on November 6, 2017. (*Id.* at 1315).

On July 10, 2018, Upshaw filed a *pro se* Motion for Relief From Judgment, arguing 1) that "he was denied his Sixth Amendment right to effective . . . counsel" because his "trial attorney failed to object to the invalid, inaccurate scoring of prior record variable (PRV) five" and his "appellate counsel[] . . . fail[ed] to raise [the issue on] direct appeal;" 2) that he "was denied his Sixth Amendment right to effective assistance of counsel when his appellate attorney . . . fail[ed] to file a motion for a *Crosby* hearing;" 3) that his Sixth Amendment rights were violated by the trial court's use of judicially found facts to score offense variables one, four, and nine (which increased his mandatory minimum and guidelines range), as well as his appellate counsel's failure to raise this issue; and 4) that the Michigan Court of Appeals unreasonably applied the Supreme Court's precedent in *Batson*, in violation

of the Fourteenth Amendment. (ECF No. 6-12, PageID.760, 778, 791, 796, 806) (capitalization omitted).

On November 27, 2018, the Honorable Wanda A. Evans denied Upshaw's Motion. (ECF No. 6-13, PageID.855). Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal. (ECF No. 6-15, PageID.1057; ECF No. 6-17, PageID.1316).

### III.   Upshaw's Habeas Petition [1]

On September 18, 2020, Upshaw filed a Petition for a Writ of Habeas Corpus. (ECF No. 1). Upshaw's Petition [1] raises seven grounds for relief: 1) that his "trial counsel was constitutionally ineffective for failing to investigate potential alibi witnesses and failing to file an alibi notice;" 2) that "the trial court denied [his] motion for a brief adjournment . . . in violation of due process;" 3) that "the prosecutor dismissed African-American potential jurors in a discriminatory manner, in violation of the Equal Protection Clause;" 4) that "the trial court found facts that were not found by the jury to score offense variable 14, which increased the mandatory minimum sentence, in violation of the Sixth and Fourteenth Amendments;" 5) that "appellate counsel was constitutionally ineffective for failing to request a '*Crosby* remand' as the remedy for [the offense variable 14] claim;" 6) that "the trial court found facts that were not found by the jury to score offense variables 1, 4, and 9, which increased the mandatory minimum sentence, in violation

of the Sixth and Fourteenth Amendments, and [that] appellate counsel was constitutionally ineffective for failing to raise this claim on direct appeal;" and 7) that "trial and appellate counsel were constitutionally ineffective for failing to argue that prior record variable 5 was [inappropriately] []scored." (*Id.* at 6-11) (capitalization omitted).

After Respondent conceded that "Upshaw is entitled to partial habeas relief on his judicial factfinding claim with respect to offense variables 1, 4, and 9," (ECF No. 5, PageID.193), Upshaw filed a Motion for Summary Judgment. (ECF No. 8).

**ANALYSIS**

Upshaw's Petition [1] is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, which provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

I.    **Claims I and II: Trial Counsel's Failure to Investigate Alibi Witnesses/File an Alibi Notice and the Trial Court's Denial of an Adjournment**

   **A. Adjudication on the Merits**

   Because Upshaw's first two claims are closely related, the Court addresses them together. The first question is whether these claims were "adjudicated on the merits in State court proceedings." *Id.*; *see Harrington v. Richter*, 562 U.S. 86, 99 (2011). In answering this question, the Court must scrutinize the May 19, 2016, decision of the Michigan Court of Appeals ("COA"), which was "the last . . . reasoned opinion on thes[se claims]." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)).

   The COA rejected Upshaw's ineffective assistance of counsel and adjournment claims as follows:

> Next, Upshaw contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel, where counsel failed to investigate potential alibi witnesses and failed to file the required notice of intent to present an alibi defense, MCL 768.20. At trial, Upshaw called to the stand the manager of a restaurant where Upshaw was employed at the time of the robbery, and the manager testified that he drove Upshaw home at the end of his shift, dropping him off about 15 minutes before the robbery was committed. The manager, however, did not know Upshaw's whereabouts at the exact time of the robbery. On appeal, Upshaw argues that he remained home after being dropped off by the manager and that his aunt, grandmother, and girlfriend were also present at the home at the time. Upshaw attached his own affidavit to his appellate brief in an attempt to support his contention, merely implying that these three individuals could have provided him an alibi defense. However, Upshaw did not attach any affidavits from his aunt, grandmother, or girlfriend attesting to the claims, nor is there anything

11

in the lower court record pertaining to alibis given by these individuals. In a second motion to remand filed with this Court, Upshaw had attached a document purportedly signed by his aunt, which did not meet the requirements of an affidavit, MCR 2.119(B), but his aunt merely asserted, "I was a alibi witness to some events that happened on May." This nonsensical statement did not provide an alibi. Upshaw had further attached a document purportedly signed by his grandmother, which also did not meet the requirements of an affidavit, MCR 2.119(B), and his grandmother asserted that Upshaw had arrived home around the same time as claimed by Upshaw's manager or a few minutes later. The document implied or suggested that Upshaw remained at the home for several hours, but it did not expressly provide so, nor did his grandmother state that she observed him at the exact time of the robbery. Assuming that it is even proper to consider these flawed documents, Upshaw has simply failed to show that counsel's performance fell below an objective standard of reasonableness relative to alibi witnesses and a notice of alibi, and he has not established the requisite prejudice.

Upshaw next contends that the trial court abused its discretion when it denied his request for an adjournment to accommodate his newly-retained attorney. This argument is premised on the claimed need for time so that new counsel could have investigated and properly presented an alibi defense. Given our previous discussion, the alibi claims are unavailing. Upshaw has not shown that good cause existed as was necessary to grant a continuance or adjournment, and the trial court did not abuse its discretion in denying the adjournment request. *People v Coy*, 258 Mich App 1, 17-18; 669 NW2d 831 (2003).

(ECF No. 6-14, PageID.868-69) (footnote omitted).

The Court agrees with the parties that both of these claims were adjudicated on the merits. (ECF No. 2, PageID.34; ECF No. 5, PageID.172). With respect to Upshaw's ineffective assistance of counsel claim, the COA concluded that Upshaw "failed to show [his] counsel's performance fell below an objective standard of reasonableness relative to alibi witnesses and a notice of alibi, and [that] he has not

established the requisite prejudice." (ECF No. 6-14, PageID.869). And with respect to Upshaw's adjournment claim, the COA's determination that there was no abuse of discretion goes to the heart of the due process claim presently before the Court. *See Mackey v. Dutton*, 217 F.3d 399, 408 (6th Cir. 2000) ("When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." (quoting *Brown v. O'Dea*, 187 F.3d 572, 580 (6th Cir. 1999)). Consequently, although the version of the adjournment claim before the COA was couched in terms of an abuse of discretion, rather than a denial of due process,[4] the Court agrees with the parties that it was also adjudicated on the merits. *See Smith v. Warden*, No. 20-3472/3496, 2022 U.S. App. LEXIS 5654, at *10 (6th Cir. Mar. 1, 2022) ("Nothing requires a state court to conduct its analysis under the heading of a specific federal

---

[4] Although parties' briefing failed to acknowledge this distinction, the Court finds that Respondent has expressly waived any exhaustion or procedural default arguments as to Upshaw's second claim by explicitly stating that "[t]he Michigan Court of Appeals addressed this claim and denied it on the merits." (ECF No. 5, PageID.172); *see, e.g.*, *Pirkel v. Burton*, 970 F.3d 684, 693 n.2 (6th Cir. 2020) (noting that "other circuits have held that a state's concession of exhaustion before the district court is an express waiver of the exhaustion requirement under § 2254(b)(3)" and collecting cases); *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) ("[T]he Warden has not raised the issue of procedural default and has thereby waived it." (citing *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006))). Accordingly, the Court will not raise these defenses for Respondent *sua sponte*. *See Wood v. Milyard*, 566 U.S. 463, 466 (2012) (holding that courts are "not at liberty . . . to bypass, override, or excuse" defenses that are deliberately waived by a State). Critically, however, even if Respondent had not waived these arguments, the Court would still find that Upshaw's due process claim had been fairly presented to the COA because, as discussed above, the abuse of discretion analysis is a necessary subset of a due process claim.

13

constitutional right to adjudicate it on the merits. When the substance of a right that the court addresses is 'generally coextensive' with another right under the Federal Constitution, that discussion is 'sufficient' to be a merits decision of the 'related federal right.'" (citations omitted) (citing *Bennett v. Brewer*, 940 F.3d 279, 290-91 (6th Cir. 2019)) (quoting *Johnson v. Williams*, 568 U.S. 289, 299 (2013))).

### B. AEDPA Deference

Because claims one and two were adjudicated on the merits, the Court next examines whether the COA's decision "was contrary to, or involved an unreasonable application of, clearly established federal law," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts." *Id.* § 2254(d)(2).

A state-court decision satisfies the "contrary to" clause if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Likewise, where a state court "'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case,' or . . . 'either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context,'" its decision satisfies the "unreasonable application" clause. *Murphy v. Ohio*, 551 F.3d 485, 494 (6th Cir. 2009) (citations omitted) (first quoting *Williams*, 529 U.S. at

407-08; then quoting *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000)). The Supreme Court has cautioned, however, that "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). Thus, where, as here, "a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.*

Finally, with respect to the "unreasonable determination" clause, 28 U.S.C. § 2254(d)(2), "the question . . . 'is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.' [And] 'the petitioner must show that the resulting state court decision was "based on" that unreasonable determination.'" *Hill v. Shoop*, 11 F.4th 373, 384 (6th Cir. 2021) (citations omitted) (first quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); then quoting *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011)); *see also* 28 U.S.C. § 2254(e)(1) (explaining that "determination[s] of . . . factual issue[s] made by a State court shall be presumed to be correct" but that "th[is] presumption of correctness [can be rebutted] by clear and convincing evidence").[5]

---

[5] The Sixth Circuit has, on occasion, stacked the requirements imposed by subsections (d)(2) and (e)(1). *See, e.g.*, *Cassano v. Shoop*, 1 F.4th 458, 466 (6th Cir. 2021) ("A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' *only if* it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." (emphasis added) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007))). The Supreme Court,

In conducting the § 2254(d) analysis, courts must be mindful "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Rather, under AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### 1. Claim I: Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To prove ineffective assistance of counsel, Upshaw must satisfy *Strickland*'s familiar two-prong test. *See, e.g.*, *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

> The first prong assesses counsel's performance. Under this prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. In other words, a court assessing an ineffective assistance claim must "determine whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. When making this assessment, "counsel is strongly presumed to have rendered adequate assistance and

---

however, has explicitly rejected this view. *See Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) ("It was incorrect for the Court of Appeals, when looking at the merits, to merge the independent requirements of §§ 2254(d)(2) and (e)(1). AEDPA does not require petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence. The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather than decisions.").

made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Second, in order to amount to a constitutional violation, the error by counsel must have been prejudicial to the defendant. *Id.* at 691-92. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12.

*Stermer v. Warren*, 959 F.3d 704, 736 (6th Cir. 2020) (alterations in original). In addition, because "'[b]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact[,]' [t]hey are . . . not findings of 'historical facts' that are subject to the [§] 2254(e)(1) presumption of correctness for state court factual findings." *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (first alteration in original) (citation omitted) (first quoting *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000); then quoting *McGhee v. Yukins*, 229 F.3d 506, 513 (6th Cir. 2000)).

Here, although the COA correctly identified *Strickland* as the proper standard, its application of *Strickland* was unreasonable, 28 U.S.C. § 2254(d)(1), as were its factual determinations regarding Upshaw's alibi defenses and counsel's performance. *Id.* § 2254(d)(2). Because the COA's analysis focused exclusively on the form and strength of Holloway and Green's statements—or put another way,

whether Upshaw was prejudiced by counsel's failure to present one or both women as alibi witnesses—the Court addresses *Strickland*'s prongs in reverse order. (ECF No. 6-14, PageID.868-69).

### a. Prejudice

The COA described Holloway's statement as "nonsensical" and found that it "did not provide an alibi." (*Id.* at 868). Upshaw does not challenge this determination, but instead argues that the COA's factual determinations as to Green's statement were unreasonable. (ECF No. 2, PageID.56). The Court agrees.

The COA discounted Green's statement on both technical and substantive grounds. (ECF No. 6-14, PageID.868-69). First, the COA determined that Green's statement did not meet the requirements of an affidavit under the Michigan Court Rules. (ECF No. 6-14, PageID.868). These Rules require affidavits to "(a) be made on personal knowledge; (b) state with particularity the facts admissible as evidence establishing or denying the grounds stated in the motion; and (c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit." MCR 2.119(B)(1). No fairminded jurist could find that Green's statement failed to satisfy any of these requirements.

Green "state[d] with particularity" two facts "made on personal knowledge." *Id.* First, that she was with Upshaw between 3:20 and 3:30 AM; second, that she saw him leave the house around 7:45 AM. (ECF No. 6-14, PageID.884). And her

statement "show[ed] affirmatively" that she would be able to testify competently to each of these facts. MCR 2.119(B)(1)(c).[6] The COA's unexplained determination to the contrary was an objectively unreasonable reading of Green's statement. *See* 28 U.S.C. § 2254(d)(2). Moreover, although the COA ultimately rejected Upshaw's ineffective assistance claim after "assuming it [was] . . . proper to consider" Green's statement, its unreasonable determination necessarily impacted the weight it accorded to Green's proffered testimony and its conclusion that Upshaw was not prejudiced. (ECF No. 6-14, PageID.869); *see Hill*, 11 F.4th at 384.

The COA also defied common-sense in failing to consider travel time when evaluating the substance of Green's statement. Indeed, a plain reading of the COA's analysis makes clear that it unreasonably assumed Upshaw could have traveled instantaneously between his home and the gas station.

The uncontradicted testimony at trial established that Walker entered the gas station at 3:35 AM and that the person believed to be Upshaw approached seconds before 3:37 AM. (ECF No. 6-8, PageID.516-17). Both men came to the gas station on foot. (*Id.* at 517). However, the gas station is approximately three-and-a-half miles from Upshaw's home. (ECF No. 6-2, PageID.231-32; ECF No. 6-14,

---

[6] Respondent's contention that Green's statement was deficient under MCR 2.119(B)(1)(c) because she did not explicitly "state that she was willing and able to testify at trial to the facts she provide[d]," is erroneous. (ECF No. 5, PageID.169). The Michigan Court of Appeals has made clear that "no court rule or statute require[s] specific language" to satisfy the requirements of MCR 2.119(B)(1)(c). *Sova v. Advisacare Healthcare Sols., Inc.*, No. 353912, 2021 Mich. App. LEXIS 4971, at *19-20 (Ct. App. Aug. 19, 2021).

PageID.884); *see supra* note 1. And Green's statement put Upshaw in her immediate presence at home until 3:30 AM. (ECF No. 6-14, PageID.884). Against this backdrop, the COA's focus on whether Green visually "observed [Upshaw] at the exact time of the robbery" was illogical. (ECF No. 6-14, PageID.869). Contrary to the COA's determination, a witness can provide an alibi so long as their testimony, if believed, "plac[es] the defendant elsewhere than at the scene of the crime." *People v. Watkins*, 54 Mich. App. 576, 580 (1974). When travel time is considered, it is highly improbable, if not impossible, that Upshaw could have both been at home at 3:30 AM and arrived on foot at the gas station between 3:35 and 3:37 AM. Accordingly, it was objectively unreasonable for the COA to accord significance to the fact that Green's statement "did not expressly provide" that Upshaw remained home after 3:30 AM. (ECF No. 6-14, PageID.869); *see* 28 U.S.C. § 2254(d)(2).[7]

### b. Performance

The COA's decision offered no substantive analysis of *Strickland*'s performance prong and merely stated, in a conclusory fashion, that "Upshaw has simply failed to show that counsel's performance fell below an objective standard

---

[7] To illustrate the unreasonableness of the COA's determination, the Court offers the following hypothetical: Defendant D is charged with a crime that took place in City One at 2:00 PM. D offers the affidavit of Alibi Witness A, which states that D was with A in City Two, several hundred miles away from City One, between 12:00 and 1:00 PM that same day. Although A cannot account for D's presence at exactly 2:00 PM, A's testimony, if believed, demonstrates that D could not have been in City One at the time of the crime. It would be objectively unreasonable for any jurist to discount A's alibi testimony merely because A did not observe D at the exact time of the crime. That is what the COA did here.

of reasonableness relative to alibi witnesses and a notice of alibi." (ECF No. 6-14, PageID.869). Accordingly, this "[C]ourt must determine what arguments or theories . . . could have supported, the state court's decision; and then . . . ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Richter*, 562 U.S. at 102. Here, as set forth below, even under AEDPA's "doubly deferential" standard of review for the performance of trial counsel, *Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013) (quoting *Jackson v. Houk*, 687 F.3d 723, 741 (6th Cir. 2012)), no fairminded jurist could find counsel's failure to even attempt to call alibi witnesses reasonable.

"It is well established that 'the failure to call a known alibi witness generally . . . constitute[s] ineffective assistance of counsel.'" *McQueen v. Winn*, No. 19-2212, 2020 U.S. App. LEXIS 14373, at *17 (6th Cir. May 5, 2020) (quoting *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004)); *see, e.g.*, *Stewart v. Wolfenbarger*, 468 F.3d 338, 355 (6th Cir. 2006) (finding, despite AEDPA deference, that trial counsel's failure to file alibi notice was objectively unreasonable, and granting habeas); *Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (finding, despite AEDPA deference, that trial counsel's failure "to present potential alibi witnesses, whose testimony would have been quite useful, even if not conclusive" was unreasonable, and granting habeas); *see also, e.g.*, *Clinkscale v. Carter*, 375 F.3d

430, 443 (6th Cir. 2004) (noting that "a number of courts have found ineffective assistance of counsel in violation of the Sixth Amendment where . . . a defendant's trial counsel fails to file a timely alibi notice and/or fails adequately to investigate potential alibi witnesses" (citing *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987); *Johns v. Perini*, 462 F.2d 1308 (6th Cir. 1972); *Brown v. Myers*, 137 F.3d 1154 (9th Cir. 1998); *Bryant v. Scott*, 28 F.3d 1411 (5th Cir. 1994))).

In this case, the record shows that Upshaw retained his trial counsel about two-and-a-half weeks before trial—after his first attorney failed to appear at one or more proceedings. (ECF No. 6-4, PageID.314-15; ECF No. 6-5, PageID.322; ECF No. 6-14, PageID.950). At trial, counsel called only one witness: Jeffrey Haugabook, the manager at Tony's Bar and Grill, where Upshaw worked. (ECF No. 6-10, PageID.680-81). Haugabook testified that after work on the morning of the robbery, he gave Upshaw a ride home and dropped him off around 3:15 or 3:20 AM. (*Id.* at 684). Haugabook also described the shoes Upshaw was wearing at the time, which were different from those worn by the armed robber. (ECF No. 6-8, PageID.542; ECF No. 6-10, PageID.682). But as the COA noted, Haugabook's testimony did not provide Upshaw with an alibi. (ECF No. 6-14, PageID.868). Indeed, his testimony was largely consistent with the State's theory of the case. (ECF No. 6-10, PageID.683).

Upshaw had informed his attorney that Green, among others, could provide a true alibi. (ECF No. 6-14, PageID.879, 897). But with only a week remaining before trial, counsel had engaged in little, if any, investigation. (ECF No. 6-5, PageID.322). For example, he had not reviewed the video of the robbery, nor the transcript of Upshaw's preliminary examination. (*Id.*). And although at that point, he had missed the deadline for filing an alibi notice, *see* MICH. COMP. LAWS § 768.20(1), he pushed back against Upshaw's request for an adjournment to the trial court. (ECF No. 6-5, PageID.322). He stressed that it was Upshaw who wanted the adjournment and asserted that he could "bring [himself] up to speed by the time for the trial date." (*Id.*).

In light of the value an alibi would have added to Upshaw's defense that he was elsewhere at the time of the robbery, counsel's complete failure to even attempt to introduce alibi testimony was objectively unreasonable. *See Stewart*, 468 F.3d at 355; *Bigelow*, 367 F.3d at 570; *Clinkscale*, 375 F.3d at 443; *Matthews*, 319 F.3d at 789. As explained above, Haugabook's testimony was simply not a replacement for Green's or Holloway's. *See Stewart*, 468 F.3d at 357-59 (finding similar testimony not cumulative).

Only one witness, Williams, had positively identified Upshaw as the shooter. And her testimony made clear that she had only seen about a quarter of the shooter's face. (ECF No. 6-2, PageID.254). Accordingly, like in *Blackburn*, counsel's

23

"deficiencies left the only credible identifying witness's testimony virtually unchallenged" and "foreclosed the jury from hearing valuable countervailing evidence." 828 F.2d at 1186; *see Caldwell v. Lewis*, 414 F. App'x 809, 818 (6th Cir. 2011) ("[W]hen trial counsel fails to present an alibi witness, '[t]he difference between the case that was and the case that should have been is undeniable.'" (alteration in original) (quoting *Stewart*, 468 F.3d at 361)); *see also Avery v. Prelesnik*, 548 F.3d 434, 439 (6th Cir. 2008) ("[T]he availability of willing alibi witnesses must . . . be considered in light of . . . otherwise flimsy evidence supporting [a petitioner's] conviction." (citing *Strickland*, 446 U.S. at 696)).

The COA's failure to acknowledge these issues was attributable to its unreasonable application of *Strickland*. The COA collapsed *Strickland*'s two-prong inquiry into a single question focused on the strength of Upshaw's alibi testimony. It analyzed Green's and Holloway's statements, and after determining that neither had much value, concluded that counsel's failure to introduce the two women as alibi witnesses was reasonable. (ECF No. 6-14, PageID.868-69). But in doing so, the COA conflated the question of prejudice with the question of performance. *Cf. Wiggins v. Smith*, 539 U.S. 510, 527-28 (2003) (holding that state court unreasonably applied *Strickland*'s performance prong where it failed to actually "consider the reasonableness of [counsel's] investigation" and instead rested its decision on an "assumption that the investigation was adequate"). To find counsel's performance

24

adequate, the COA would have had to determine 1) that counsel had properly investigated Upshaw's alibi witnesses, and 2) that counsel's decision not to call any of those witnesses was sound trial strategy. *See Stewart*, 468 F.3d at 356 ("Where counsel fails to investigate and interview promising witnesses, . . . [their] inaction constitutes negligence, not trial strategy." (quoting *Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir. 1992))). The COA did not grapple with these questions at all, nor could it have, given its repeated denials of Upshaw's requests for an evidentiary hearing. (ECF No. 6-14, PageID.874, 894).

Without such a hearing, the COA had no way of determining whether trial counsel adequately investigated Green and Holloway. (ECF No. 6-14, PageID.882, 884). True, there is "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, but given Upshaw's affidavit claiming failure to investigate and counsel's delay in investigating other aspects of Upshaw's case, it seems likely that counsel's investigation into Upshaw's witnesses (to the extent there was any) did not begin until at least a week before trial, after the deadline for filing an alibi notice. *See Williams*, 529 U.S. at 395 (failure to begin mitigation investigation until a week before trial was unreasonable); *see also, e.g.*, *Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (requiring "a *prompt* investigation" (emphasis added) (quoting 1 STANDARDS FOR CRIMINAL JUSTICE § 4-4.1 (AM. BAR ASS'N 2d ed. Supp. 1982))). Moreover,

25

even assuming that counsel did promptly investigate and nevertheless chose not to pursue an alibi defense, *Strickland* would still have required the COA to determine that counsel's reasons for doing so were reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." (citing *Strickland*, 466 U.S. at 688)).

The COA, however, did not offer, and this Court cannot conceive, of any sound purpose in counsel's failure to call a single alibi witness under these circumstances.[8] Simply put, "there would have been nothing to lose, yet everything to gain, from filing the alibi notice." *Clinkscale*, 375 F.3d at 443. And without any explanation from counsel, there is no way the COA could have properly "evaluate[d] [counsel's] conduct from [his] perspective at the time," as *Strickland* demands. 466 U.S. at 689; *see Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) (holding that AEDPA deference does not apply where "the factfinding procedures upon which the court relied were 'not adequate for reaching reasonably correct results' or, at a minimum, resulted in a process that appeared to be 'seriously inadequate for the ascertainment of the truth'" (quoting *Ford v. Wainwright*, 477 U.S. 399, 423-24 (1986) (Powell, J., concurring in part and concurring in judgment))); *cf. Stermer*, 959 F.3d at 721 ("[W]here a state court makes factual findings without an

---

[8] Respondent's argument that "[c]ounsel could have reasonably determined that the jury would not have found alibi testimony from Upshaw's relatives credible" has been rejected by the Sixth Circuit. (ECF No. 5, PageID.170); *see Clinkscale*, 375 F.3d at 444 & n.9.

evidentiary hearing or other opportunity for the petitioner to present evidence, 'the fact-finding process itself is deficient' and not entitled to deference." (quoting *Hurles v. Ryan*, 752 F.3d 768, 790-91 (9th Cir. 2014))).

In sum, not only was the COA's application of *Strickland* unreasonable, 28 U.S.C. § 2254(d)(1), but the record before the COA makes clear that its decision as to counsel's performance necessarily relied on unreasonably assumed facts. *Id.* § 2254(d)(2). AEDPA deference is thus inappropriate.

## 2. Claim II: Denial of an Adjournment

The Supreme Court has cautioned that "broad discretion must be granted [to] trial courts on matters of continuances." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Nevertheless, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (citing *Chandler v. Fretag*, 348 U.S. 3 (1954)). To warrant habeas relief under due process principles, the "petitioner must show that [the trial court's] error was so egregious as to deprive him of a fundamentally fair adjudication" and that "the denial of his request resulted in actual prejudice to his defense. Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefited the defense." *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003) (citations omitted)

27

(first citing *United States v. Moreno*, 933 F.2d 362, 372 (6th Cir. 1991); then citing *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984)).

Here, a week before trial, Upshaw requested an adjournment. He explained to Judge Callahan that he recently had to replace his lawyer and that he wanted his new attorney, who had neither reviewed the video of the incident nor acquired the preliminary examination transcript, to have more time to prepare for trial. (ECF No. 6-5, PageID.322). Judge Callahan denied this request without explanation, stating, "I'm not granting an adjournment at this point. We'll see what happens." (*Id.*).

The COA's conclusion that Upshaw failed to show that the trial court abused its discretion was predicated solely on the same flawed assessment of Upshaw's alibi claims discussed above. (ECF No. 6-14, PageID.869). Accordingly, this aspect of the COA's decision is also not entitled to AEDPA deference.

## C. Evidentiary Hearing

Once a petitioner satisfies the 28 U.S.C. § 2254(d) inquiry, *Pinholster*'s limitations on taking new evidence cease to apply. *See Harris v. Haeberlin*, 752 F.3d 1054, 1058 (6th Cir. 2014). Under such circumstances, "a habeas petitioner "is generally entitled to [an evidentiary] hearing if he 'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.'" *Sawyer v. Hofbauer*, 299 F.3d 605, 610-11 (6th Cir. 2002)

(quoting *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001)); *see Townsend v. Sain*, 372 U.S. 293, 313 (1963).

As described above, Upshaw has met each of those requirements. An evidentiary hearing on claims one and two is necessary for the Court to reach the ultimate question of whether Upshaw is entitled to habeas relief under 28 U.S.C. § 2254(a). *See Paprocki v. Foltz*, 869 F.2d 281, 287 (6th Cir. 1989); *cf. Pinholster*, 563 U.S. at 205 (Breyer, J., concurring in part and dissenting in part) ("For example, if the state-court rejection assumed the habeas petitioner's facts (deciding that, even if those facts were true, federal law was not violated), then (after finding the state court wrong on a [§ 2254](d) ground) [a federal evidentiary] hearing might be needed to determine whether the facts alleged were indeed true.").

## II.   Claim III: *Batson*

In his third claim, Upshaw argues that the prosecution violated the Equal Protection Clause by using peremptory challenges on six of eight African American potential jurors. (ECF No. 1, PageID.8). Because the Court has ordered an evidentiary hearing on claims one and two, and because unlike claims one and two, this claim is not eligible for a hearing, given that Upshaw did not request such a hearing in state court, *see* 28 U.S.C. § 2254(e)(2) (prohibiting evidentiary hearings where "the applicant . . . failed to develop the factual basis of a claim in State court proceedings"), the Court will wait to address the merits of this claim.

29

## III.   Claims IV-VII and Upshaw's Motion for Summary Judgment [8]

Upshaw has also moved for summary judgment as to Claim VI. (ECF No. 8). The Supreme Court has long recognized the possibility that in some habeas cases, "it may appear that, as a matter of law, the [petitioner] is entitled to the writ" based solely "on the facts admitted" by the respondent. *Walker v. Johnston*, 312 U.S. 275, 284 (1941); *see also Browder v. Dir.*, 434 U.S. 257, 266 n.10 (1978) (acknowledging the power of "federal district court[s] to discharge a habeas corpus petitioner from state custody . . . when the facts are undisputed and establish a denial of petitioner's constitutional rights"). And courts in the Sixth Circuit have confirmed the continuing applicability of summary judgment motions even after AEDPA. *See, e.g.*, *Redmond v. Jackson*, 295 F. Supp. 2d 767, 770 (E.D. Mich. 2003) ("The summary judgment rule applies to habeas proceedings." (citing *Harris v. Stegall*, 157 F. Supp. 2d 743, 746 (E.D. Mich. 2001)).[9]

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could

---

[9] Its application in such cases, however, must be consistent with the Rules Governing Proceedings in the United States District Courts under 28 U.S.C. § 2254 ("Habeas R.") and AEDPA. *See* Habeas R. 12.

return a verdict in his favor." *Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

With respect to Claim VI, the parties agree on three major points: First, that "[t]he facts [Judge Callahan] used to score offense variables 1, 4, and 9 were not submitted to the jury and found beyond a reasonable doubt, nor [admitted by] Upshaw." (ECF No. 5, PageID.193).[10] Second, that this clearly violated Upshaw's Sixth Amendment rights for the reasons stated in *Alleyne v. United States*, 570 U.S. 99, 103 (2013)—*i.e.*, because any fact which increases the mandatory minimum penalty for a crime must be submitted to a jury. *See Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018); *People v. Lockridge*, 498 Mich. 358, 374 (2015). And third, that Upshaw is entitled to some form of habeas relief even though he did not explicitly raise this claim on direct appeal. *See Chase v. MaCauley*, 971 F.3d 582, 591-97 (6th Cir. 2020) (holding that, even prior to *Lockridge*, appellate counsel was constitutionally ineffective for failing to raise an *Alleyne* claim).[11] Where the parties disagree, however, is on the nature of relief to which Upshaw is entitled.

---

[10] "[OV one] is aggravated use of a weapon." MICH. COMP. LAWS § 777.31(1). Judge Callahan found that "a firearm was discharged at or toward a human being," *id.* § 777.31(1)(a), and scored OV one at twenty-five points. (ECF No. 6-12, PageID.779). "[OV four] is psychological injury to a victim." MICH. COMP. LAWS § 777.34(1). Judge Callahan found that there was "[s]erious psychological injury . . . to a victim" that required, or might require, "professional treatment," *id.* § 777.34(1)(a), (2), and scored OV four at ten points. (ECF No. 6-12, PageID.779). "[OV nine] is number of victims." MICH. COMP. LAWS § 777.39(1). Judge Callahan found that "[t]here were 2 to 9 victims who were placed in danger of physical injury or death," *id.* § 777.39(1)(c), and scored OV nine at ten points. (ECF No. 6-12, PageID.779).

[11] The Court agrees with each of these conclusions.

According to Upshaw, the remedy for an *Alleyne* violation of this nature is a full resentencing within a reasonable period. (ECF No. 8, PageID.1442-45). According to Respondent, the proper form of relief is a more limited remand to the trial court for a determination of whether Upshaw warrants a full resentencing. (ECF No. 5, PageID.197).

In *Lockridge*, the Michigan Supreme Court held that Michigan's sentencing guidelines were "constitutionally deficient" because they "require[d] judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase[d] the floor of the guidelines minimum sentence range." 498 Mich. at364 (2015) (emphasis omitted). The *Lockridge* court remedied this deficiency by "*Booker*-iz[ing] the Michigan sentencing guidelines, i.e., render[ing] them advisory only." 498 Mich. at 391. *See generally United States v. Booker*, 543 U.S. 220, 245 (2005). Its decision made clear that OVs could still be "scored on the basis of facts not admitted by the defendant or found beyond a reasonable doubt by the jury," but that sentencing courts were no longer required to "articulat[e] substantial and compelling reasons for" departing from the guidelines. *Lockridge*, 498 Mich. at 391-92 (footnote omitted).

For defendants like Upshaw, whose sentences were imposed prior to July 29, 2015, the *Lockridge* court expressed a preference for "remand[] to the trial court [for a] determin[ation] [of] whether that court would have imposed a materially different

32

sentence but for the constitutional error." *Id.* at 397. In these "*Crosby* remands,"
resentencing would be required only when the trial court determined that it would
have imposed a different sentence had the guidelines been advisory. *Id.* (citing
*United States v. Crosby*, 397 F.3d 103, 118 (2d Cir. 2005)).

Respondent argues that the Court should remand for a *Crosby* hearing using
the language from *Robinson*. (ECF No. 9, PageID.1448). *See Robinson*, 901 F.3d at
718 (instructing the district court to "remand to the state sentencing court for
sentencing proceedings consistent with this opinion and the Constitution"). "[A] full
resentencing hearing," according to Respondent, would not be "narrowly tailored
and [would] unnecessarily infringe[] on the State's interest in imposing its own
remedy—a *Crosby* proceeding—when violations of this nature occur." (ECF No. 9,
PageID.1449).

However, the Sixth Circuit recently clarified that district courts "are not bound
by the Michigan Supreme Court's choice of remedy in *Lockridge*." *Morrell v.
Wardens*, 12 F.4th 626, 633 (6th Cir. 2021) (citing *Robinson*, 901 F.3d at 716).
*Morrell* was a consolidated appeal of district court decisions by Judges Cox,
Edmunds, Berg, and Steeh, all of whom granted habeas conditioned upon
resentencing rather than a *Crosby* proceeding. *Id.* at 627. The Sixth Circuit noted
that "[t]here are valid reasons why a court may decide that a full resentencing
hearing, which allows a defendant to appear in court and make new arguments based

on the advisory guideline range, more effectively cures the constitutional violation than a more limited *Crosby* hearing." *Id.* at 634 (citing *Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("[B]y depriving him of a full resentencing hearing, the sentencing court deprived [the petitioner] of the chance to make an argument that the court should depart from the guidelines under a sentencing scheme where such departures were more likely.")). The *Morrell* court also rejected arguments similar to those made by Respondent regarding the increased burden of a full resentencing on the State's judicial resources. *See id.*

Against this backdrop of judicial discretion, the Court concludes that a full resentencing would best cure the *Alleyne* violation detailed in Upshaw's sixth claim. *See Edmonds v. Rewerts*, No. 2:18-CV-11691, 2020 U.S. Dist. LEXIS 258192, at *7 (E.D. Mich. Feb. 27, 2020) (noting that "the *Crosby* remand procedure is increasingly 'unpopular' with the federal courts" (citing *Morrell v. Burton*, No. 2:17-CV-10961, 2020 U.S. Dist. LEXIS 25744, at *5-6 (E.D. Mich. Feb. 14, 2020))); *accord Reign v. Gidley*, 929 F.3d 777, 783 (6th Cir. 2019) (acknowledging the "unpopularity of the *Crosby* remand"); *see also, e.g.*, *United States v. Milan*, 398 F.3d 445 (6th Cir. 2005) (explicitly rejecting *Crosby* in the context of *Booker* violations and concluding that the proper remedy is remand to the district court for resentencing); *United States v. Fagans*, 406 F.3d 138, 140-41 (2d Cir. 2005) (rejecting *Crosby* remands for preserved errors). In addition, because the Court

34

concludes that resentencing is warranted on claim six, it need not address claims IV, V, or VII of Upshaw's Petition [1], all of which allege sentencing-related errors and become moot in light of resentencing. *See, e.g.*, *Thompson v. Winn*, No. 2:18-cv-13959, 2020 U.S. Dist. LEXIS 64065, at *13-14 (E.D. Mich. Apr. 13, 2020) (granting resentencing pursuant to *Alleyne* and declining to reach the petitioner's ineffective assistance of counsel claims related to sentencing).

Nevertheless, just because the Court has concluded that a remand for resentencing is appropriate does not mean the case needs to be remanded before Upshaw's other claims are resolved. *See* FED. R. CIV. P. 54(b). Indeed, because Upshaw may require a new trial if successful on one or more of his other claims, the Court agrees with Respondent that it would be judicially inefficient to remand prior to resolving those other claims. (ECF No. 9, PageID.1451).

Instead, the Court will hold relief on Upshaw's sixth claim in abeyance pending the evidentiary hearing on claims one and two. If, following that hearing, Upshaw has failed to demonstrate that he is entitled to relief on any of his other claims, the Court will issue a Writ conditioned upon a resentencing in accordance with this opinion.

## CONCLUSION

**IT IS ORDERED** that an evidentiary hearing will be held on claims one and two of the Petition [1] at a time suitable for the Court.

**IT IS FURTHER ORDERED** that Upshaw's Motion for Summary Judgment [8] is **GRANTED**. Relief will be held in abeyance pending the resolution of Upshaw's remaining claims.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: May 2, 2022